IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ETHYPHARM S.A. FRANCE & ETHYPHARM S.A. SPAIN, | ) ) ) | |
| Plaintiffs | ) ) | C.A. No. 04-1300 (SLR) |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| BENTLEY PHARMACEUTICALS, INC. | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT BENTLEY PHARMACEUTICALS, INC.'S
SUPPLEMENTAL REPLY MEMORANDUM REGARDING
NEW FACTS RELEVANT TO BENTLEY'S MOTION TO DISMISS**

OF COUNSEL:
Craig E. Stewart
Marc J. Goldstein
PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA 02199
Telephone: (617) 239-0100

Richard L. Horwitz (#2246)
David E. Moore (#3898)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
Telephone: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*

Dated: July 25, 2005

## TABLE OF CONTENTS

|  | Page |
|---|---|
| ARGUMENT | 1 |
| I. ETHYPHARM HAS AN ADEQUATE REMEDY IN SPAIN | 1 |
| II. THERE IS A HIGH RISK OF INCONSISTENT JUDGMENTS AND MULTIPLE OBLIGATIONS | 3 |
| III. BOTH BENTLEY AND BELMAC WOULD BE PREJUDICED IF THIS ACTION IS NOT DISMISSED | 4 |
| CONCLUSION | 5 |

## TABLE OF CITATIONS

                                                                                                               Page

### CASES

*General Elec. Co. v. Deutz AG*, 270 F.3d 144 (3d Cir. 2001) ................................................. 4

*Guthrie Clinic, Ltd. v. Travelers Indem. Co.*,
       104 Fed. Appx. 218 (3d Cir. 2004) ................................................................................ 2

*Japan Petroleum Co. (Nigeria), Ltd. v. Ashland Oil, Co.*,
       456 F. Supp. 831 (D. Del. 1978) ............................................................................. 2, 3

*Jurimex Kommerz Transit G.m.b.H. v. Case Corp.*, 201 F.R.D. 337 (D. Del. 2001), *rev'd
      on other grounds by* 65 Fed. Appx. 803 (3d Cir. 2003) ................................................ 2

*Kaneko Shoji, Ltd. v. Katsura Enter., Inc.*, 91 F.3d 152 (9th Cir. 1996) ................................. 2

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369
      F.3d 645 (2d Cir. 2004) ................................................................................................ 5

### STATUES

Del. Stat. 6 § 2001(4) ............................................................................................................... 3

## ARGUMENT

On page two of its Response to Defendant's Supplemental Memorandum ("Supp. Response Br."), Ethypharm argues that the Spanish Action[1] "provides absolutely no support for dismissal of this U.S. action under Rule 19" because Bentley is not a party to the Action and the "claims brought in the U.S. are separate and distinct from the patent infringement claim in Spain." This argument collapses under scrutiny. Far from "obscur[ing] the only relevant issue presented," *Id.* at 6, the Spanish Action demonstrates: (1) that Ethypharm can obtain adequate relief in Spain; (2) that the pursuit of the simultaneous suits creates a high risk of inconsistent judgments and multiple obligations; and (3) that both Bentley and Belmac would be prejudiced if the U.S. action is not dismissed.

### I.     ETHYPHARM HAS AN ADEQUATE REMEDY IN SPAIN.

Ethypharm argues that the Spanish Action does not support dismissal of the U.S. Action because it is Ethypharm, "not the defendant, who has the choice of where to bring suit." *Id.* at 4. This argument is wrong as a matter of law and fact, and misses the point.

Bentley has demonstrated that its subsidiary Belmac is a "necessary party" whom the plaintiffs should have joined in this action. Rule 19(b) provides that if a necessary party cannot be joined, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Among the four factors to be considered by the court in making that determination is "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Where the plaintiff has an adequate remedy, courts will typically dismiss the action rather than allow it to proceed to the prejudice of the existing party or of the party who should

---

[1] Attached as Exhibit A is the English translation of the complaint in the Spanish Action. The certified translation is identical to that which was previously filed except for the addition of page numbers.

have been joined. *See Guthrie Clinic, Ltd. v. Travelers Indem. Co.*, 104 Fed. Appx. 218, 222-23 (3d Cir. 2004) (unpublished) (Ex. B hereto); *Kaneko Shoji, Ltd. v. Katsura Enter., Inc.*, 91 F.3d 152, *2 (9th Cir. 1996) (unpublished) (Ex. C hereto); *Jurimex Kommerz Transit G.m.b.H. v. Case Corp.*, 201 F.R.D. 337, 340-41 (D. Del. 2001), *rev'd on other grounds by* 65 Fed. Appx. 803 (3d Cir. 2003); *Japan Petroleum Co. (Nigeria), Ltd. v. Ashland Oil, Co.*, 456 F. Supp. 831, 847 (D. Del. 1978).[2]

As the Spanish Action demonstrates, Ethypharm can bring an action in Spain to enforce its intellectual property rights over the production of omeprazole. Indeed, Ethypharm could easily add a claim of misappropriation of trade secrets to its existing patent infringement claim against Belmac in Spain, particularly since the claims arise out of the same common nucleus of operative facts – namely, Belmac's continued manufacture of omeprazole in Spain after the termination of Ethypharm's relationship with Belmac in March 2002. *See* Decl. of Rafael García-Palencia, App. A-4, ¶ 11. Since the core of Ethypharm's U.S. claim against Bentley is that *Belmac* committed wrongdoing as Bentley's agent, any damages sought by Ethypharm against Bentley could be obtained against Belmac in Spain. There is no question that Belmac has adequate resources to respond to any judgment. As a result, it is clear that Ethypharm could obtain adequate relief for its claims in Spain.

Instead, however, Ethypharm has decided "to pursue its separate causes of action against different parties in different Courts." Supp. Response Br. at 4. Its deliberate decision to do so certainly does not mean that Ethypharm lacks an alternate forum or adequate remedy; it means that Ethypharm has chosen to forgo seeking redress for all of its alleged wrongs in one forum in

---

[2] Ethypharm again repeats its argument that *Japan Petroleum* and *Jurimex* support its request for costly and time consuming discovery on the issue of agency. Supp. Response Br. at 7-8. Ethypharm mischaracterizes those cases. As explained on pages 2-4 of Bentley's Reply Memorandum In Support of Its Motion to Dismiss, Ethypharm's conclusory allegations of agency are insufficient to warrant discovery on that issue and distinguish this case from precedents allowing such discovery.

2

favor of suing Bentley in the U.S., knowing that Belmac is an indispensable party. *See Japan Petroleum*, 456 F. Supp. at 847 (plaintiff has an alternate forum if nothing prevents it from seeking redress in a foreign tribunal).

## II.   THERE IS A HIGH RISK OF INCONSISTENT JUDGMENTS AND MULTIPLE OBLIGATIONS.

Contrary to Ethypharm's argument that the "claims brought in the U.S. are separate and distinct from the patent infringement claim in Spain," there is an inherent overlap between the claims, which creates a high risk that inconsistent judgments will ensue. As Ethypharm admits, its U.S. trade secret misappropriation claim cannot be based upon technology covered by Ethypharm's Spanish patent ES 9301319 ("'319 patent"), because the patented technology was disclosed and therefore "cannot be a trade secret." Supp. Response Br. at 3 n.2; Del. Stat. 6 § 2001(4). Should this Court reach the merits of Ethypharm's trade secret misappropriation claim, however, Bentley would argue that the technology which allegedly constitutes Ethypharm's trade secrets[3] is disclosed by the '319 patent. In order to determine whether Ethypharm's technology is "secret," this Court would be asked to construe the claims of the '319 patent and to determine what technology is covered by those claims. See Ex. A. at 5-6.

The ensuing claim construction of the foreign patent would create a high risk of inconsistent judgments and multiple, conflicting obligations being imposed on Bentley and Belmac. For instance, this Court could construe the claims of the '319 patent to exclude the technology that Ethypharm claims as trade secrets and theoretically hold Bentley liable for Belmac's alleged misappropriation of that technology. Meanwhile, the Spanish court could construe the claims of Ethypharm's Spanish patent broadly to cover the technology that Ethypharm alleges is secret and also find that the '319 patent was not infringed. In this perverse

---

[3] Ethypharm has not, to this day, provided any specific information regarding what technology constitutes its alleged trade secrets.

3

but plausible scenario, Bentley would be held liable for Belmac's misappropriation of "trade secrets" which a Spanish court has adjudicated are disclosed in a Spanish patent[4] and which Belmac did not infringe.

Moreover, as explained on pages 6-7 of Bentley's Supplemental Memorandum, several conflicting multiple obligations could result from the simultaneous litigation in the U.S. and in Spain of Ethypharm's grievances against Belmac.

### III. BOTH BENTLEY AND BELMAC WOULD BE PREJUDICED IF THIS ACTION IS NOT DISMISSED.

Bentley and Belmac would both be prejudiced within the meaning of Rule 19(b) if this action were allowed to proceed. Bentley could be held liable in the U.S. for Belmac's misappropriation of trade secrets that are later determined by the Spanish court to have been disclosed by the '319 patent. Belmac would be prejudiced because its ability to market omeprazole in Spain would be adjudicated in the U.S. action to which it is not a party. Moreover, any judgment this Court enters against Bentley could effectively compel Belmac to stop marketing omeprazole in Spain, even if the Spanish court rules that Belmac has the right to do so under Spanish law.[5] Finally, Bentley and Belmac would be prejudiced by being forced to incur

---

[4] Principles of judicial economy and comity also counsel against allowing the suit against Bentley to go forward in this Court. This Court could expend significant resources and time construing the claims of a Spanish patent in order to determine whether Ethypharm's technology is indeed "secret" only to find out that a Spanish court has construed the patent claims differently. Moreover, the principle of comity for a foreign tribunal favors allowing the Spanish court to construe the claims of the Spanish patent. *See Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 160 (3d Cir. 2001) (noting that "proper exercise of comity demonstrates confidence in the foreign court's ability to adjudicate a dispute fairly and efficiently."). Ethypharm would not be prejudiced by such a result because it has failed to set forth any reason why it cannot assert its trade secret misappropriation claim in Spain.

[5] Contrary to Ethypharm's conclusory arguments that the principles of "collateral estoppel and res judicata exist to protect Bentley" from inconsistent judgments and multiple obligations, it is far from certain that these doctrines would apply between a U.S. and a Spanish court. *See Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 654 (2d Cir. 2004).

the double costs of defending against Ethypharm's bifurcated grievance in both Spain and the U.S.

## CONCLUSION

Ethypharm should not be allowed to embark on a fishing expedition based on its conclusory allegations that Belmac acted as Bentley's agent. This is particularly true because Spain is not only an adequate forum, as demonstrated by the Spanish Action, but also the most appropriate forum for resolving the entire dispute. Ethypharm's deliberate decision to assert only a patent infringement claim against Belmac in Spain does not undermine the adequacy of that forum. Because the Spanish court is capable of providing adequate relief for all of the plaintiffs' claims, there is no reason to subject Bentley to a groundless lawsuit where its rights and the rights of its subsidiary are prejudiced by the plaintiffs' decision to split their cause of action between two courts on two continents.

Respectfully Submitted,

POTTER ANDERSON & CORROON LLP

By: _____

OF COUNSEL:

Craig E. Stewart
Marc J. Goldstein
PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA 02199
Telephone: (617) 239-0100

Dated: July 25, 2005
692000

Richard L. Horwitz (#2246)
David E. Moore (#3898)
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
Telephone: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*

5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on July 25, 2005, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

Francis J. Murphy, Jr.
Murphy, Spadaro & Landon
1011 Centre Road
Suite 210
Wilmington, DE 19805

I hereby certify that on July 25, 2005, I have Federal Expressed the documents to the following non-registered participants:

Dwight P. Bostwick
Bruce R. Grace
Baach, Robinson & Lewis PLLC
1201 F Street, NW
Suite 500
Washington, DC 20004

By: _____
Richard L. Horwitz
David E. Moore
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

688783