IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


ETHYPHARM S.A. FRANCE and       )
ETHYPHARM S.A. SPAIN,           )
                                )
          Plaintiffs,           )
                                )
     v.                         )   Civ. No. 04-1300-SLR
                                )
BENTLEY PHARMACEUTICALS, INC.,)
                                )
          Defendant.            )

---

Francis J. Murphy, Esquire, of Murphy Spadaro & Landon,
Wilmington, Delaware. Counsel for Plaintiffs. Of Counsel: Dwight
P. Bostwick, Esquire, of Baach Robinson & Lewis, Washington, DC.

Richard L. Horwitz, Esquire, and David E. Moore, Esquire, of
Potter Anderson & Corroon, Wilmington, Delaware.  Counsel for
Defendant.  Of Counsel: Craig E. Stewart, Esquire, and Marc J.
Goldstein, Esquire, of Palmer & Dodge, Boston, Massachusetts.

---

**MEMORANDUM OPINION**


Dated: September 26, 2005
Wilmington, Delaware

ROBINSON, Chief Judge

## I.    INTRODUCTION

On September 27, 2004, plaintiffs Ethypharm S.A. France and

Ethypharm S.A. Spain filed this suit against defendant Bentley

Pharmaceuticals, Inc. alleging fraud, violation of the Delaware

Uniform Trade Secret Act ("DUTSA"), unjust enrichment and

intentional interference with actual and prospective business

relationships.  (D.I. 1)

The court has jurisdiction over this action pursuant to 28

U.S.C. § 1332.  Pending before the court is defendant's motion to

dismiss for failure to join an indispensable party, pursuant to

Fed. Rule Civ. P. 19(a) and (b), and to dismiss counts one, three

and four as preempted by the DUTSA.  (D.I. 9)

## II.   BACKGROUND

Plaintiff Ethypharm S.A. France is a French corporation with

its principal office in France.  (D.I. 1 at ¶ 27)  Plaintiff

Ethypharm S.A. Spain is a majority owned subsidiary of Ethypharm

S.A. France organized under the laws of Spain with its principal

office in Madrid.  (D.I. 1 at ¶ 28)  Plaintiffs are engaged in

developing proprietary drug delivery systems and formulating,

clinically testing, registering, manufacturing, marketing and

licensing pharmaceutical products based on their drug delivery

systems.  (Id.)  Defendant Bentley Pharmaceuticals, Inc. is a

Delaware corporation in the pharmaceutical industry.  (D.I. 1 at

¶ 4)  Belmac S.A. ("Belmac") is a wholly-owned Spanish subsidiary

of defendant.   (D.I. 1 at ¶ 5)

According to plaintiffs, in the early 1990's, they entered into an arrangement with defendant Bentley "directly and through Bentley's agent . . . Belmac."   (D.I. 1 ¶ 5)   According to the arrangement, plaintiffs supplied access to intellectual property and trade secrets regarding the production, manufacture and sale of Omeprozole and other products.[1]   (D.I. at ¶ 6)   According to the complaint, in exchange for plaintiffs' information and

---

[1]According to plaintiffs, the intellectual property and trade secrets include:

   (a)   The process, know-how and machinery necessary for the manufacture of Omeprozole and other products including Lansoprazole;

   (b)   Specifications, trade secrets, and technical, analytical know-how associated with quality assurance, production and improvements of Omeprazole and other products including Lansoprazole;

   (c)   Know-how and trade secrets including procedure, studies and instructions necessary for Bentley and its agents, Belmac S.A., to obtain full compliance with GMP regulations relating to the manufacture of Omeprazole and other products such as Lansporazole;

   (d)   Know-how and trade secrets relating to the confidential formulae and analytic procedures necessary for Bentley and its agent, Belmac S.A., to obtain registration with the requisite health authorities for Omeprazole and other products such as Lansoprazole; and

   (e)   Know-how and trade secrets relating to marketing approval techniques, customer contacts/lists and pricing information for Omeprazole and other products such as Lansoprazole.

(D.I. 1 at ¶ 6)   Omeprazole is a medication used in the treatment of heart burn and acid reflux.   (D.I. 1 at ¶ 1)   Plaintiffs include Lansoprazole sporadically in the complaint, but Omeprazole is the product mentioned with specificity.

machinery, Omeprozole was manufactured exclusively for plaintiffs at Belmac's facilities in Spain. (D.I. 1 at ¶ 54, 53, 59) Plaintiffs allege this arrangement was negotiated by defendant "directly and through its agent, Belmac." (D.I. 1 at ¶ 53) Specifically, plaintiffs allege James Murphy, as an officer of defendant, visited Spain and France to meet with plaintiffs' representatives to discuss the arrangement. (D.I. 1 at ¶ 49) Plaintiffs assert that Belmac entered into the arrangement at defendant's direction and as part of a unified business strategy developed by defendant. (D.I. 1 at ¶ 63) Plaintiffs assert that "[a]t all times relevant to this complaint, Belmac S.A. has acted as Bentley's agent with actual and/or apparent authority in its interactions and communications with Ethypharm." (D.I. 1 at ¶ 63)

    In its motion to dismiss, defendant argues the arrangement with plaintiffs was negotiated completely by Belmac and Belmac was not acting on defendant's behalf. (D.I. 10 at 3) According to defendant, at the time of the relationship between Belmac and plaintiffs, defendant had no role in the day-to-day operations of Belmac and did not participate in the business relationship between Belmac and plaintiffs. (D.I. 10 at 3) In support of this assertion, defendant attached to its motion declarations by Adolfo Herrera, the general manager of Belmac, and James Murphy, chairman, president, chief executive officer and a director of

defendant.  (D.I. 11 at A-42, A-101)  Defendant further asserts
that the contracts and negotiations between Belmac and plaintiffs
were conducted on behalf of Belmac by its general manager, Adolfo
Herrera, and his predecessors.  (D.I. 10 at 3)  According to
defendant, it had no rights, obligations, or duties under any
agreements executed by Belmac with plaintiffs.  (D.I. 11 at 3)
Furthermore, defendant asserts "Belmac never acted on Bentley's
behalf during these negotiations or during contracting with
Ethypharm."  (Id.)

Belmac manufactured Omeprazole for plaintiffs from 1992
through 2002.[2]  (D.I. 1 at ¶ 10, 84)  Plaintiffs assert that
during this time, "Bentley and its agent, Belmac S.A., clearly
and repeatedly confirmed and acknowledged that the machinery,
know-how, processes, and technology used in the manufacturing of
Omeprazole were proprietary to Ethypharm."  (D.I. 1 at ¶ 62)  For
example, plaintiffs state that Belmac employees were required to
sign confidentiality statements to that effect.  (Id.)
Plaintiffs assert that "Bentley has been lying to the public and
to Bentley's shareholders to create the false and misleading
impression that Bentley, rather than Ethypharm, holds a
proprietary interest in the technology, trade secrets, know-how .
. . relating to the manufacture and sale of Omeprazole."  (D.I. 1

---

[2]The terms of the agreement have not been made a part of the
record to date.

4

at ¶ 68)  Plaintiffs assert that "Bentley and its agent, Belmac
S.A., embarked on a bold scheme to steal Ethypharm's machinery,
know-how, trade secrets, technology, . . . processes, formulae,
and analytical methods."  (D.I. 1 at ¶ 84)

Defendant counters, by way of declaration, that shortly
after Belmac began to manufacture Omeprazole, Belmac discovered
that plaintiffs' patented process was not adequate and, thus,
"proceeded to develop its own manufacturing process, utilizing
its own funds, including conducting all necessary clinical
trials."  (D.I. 11 at 4)  Furthermore, defendant asserts it had
no involvement in these efforts by Belmac.  (Id.)  Defendant
states that Belmac eventually developed a successful organic
process and formulation for manufacturing Omeprazole.  (Id.)

## III. STANDARD OF REVIEW

Because the parties have referred to matters outside the
pleadings, defendant's motion to dismiss shall be treated as a
motion for summary judgment.  See Fed. R. Civ. P. 12(b)(6).  A
court shall grant summary judgment only if "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c).  The moving party bears the burden of proving that no
genuine issue of material fact exists.  See Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986).
"Facts that could alter the outcome are 'material,' and disputes
are 'genuine' if evidence exists from which a rational person
could conclude that the position of the person with the burden of
proof on the disputed issue is correct." Horowitz v. Fed. Kemper
Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal
citations omitted).  If the moving party has demonstrated an
absence of material fact, the nonmoving party then "must come
forward with 'specific facts showing that there is a genuine
issue for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R.
Civ. P. 56(e)).  The court will "view the underlying facts and
all reasonable inferences therefrom in the light most favorable
to the party opposing the motion."  Pa. Coal Ass'n v. Babbitt, 63
F.3d 231, 236 (3d Cir. 1995).  The mere existence of some
evidence in support of the nonmoving party, however, will not be
sufficient for denial of a motion for summary judgment; there
must be enough evidence to enable a jury reasonably to find for
the nonmoving party on that issue.  See Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 249 (1986).  If the nonmoving party
fails to make a sufficient showing on an essential element of its
case with respect to which it has the burden of proof, the moving
party is entitled to judgment as a matter of law.  See Celotex
Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**IV.  DISCUSSION**

6

If Belmac is deemed a necessary and indispensable party
under Fed. R. Civ. P. 19, diversity jurisdiction would be
extinguished and the case dismissed.[3]   To avoid dismissal,
plaintiffs have asserted an agency theory.   If plaintiffs can
establish that Belmac acted as an agent of defendant, defendant
would be held vicariously liable for Belmac's acts.   Plaintiffs,
in their briefs, do not contest that Belmac is a necessary and
indispensable party under a Rule 19 analysis.   Rather, plaintiffs
assert that Belmac is the agent of defendant and, therefore, need
not be joined.   The court concludes discovery is necessary to
develop this claim.

### A. Joinder of Indispensable Parties

Federal Rule of Civil Procedure 19 dictates when potential
parties to an action must be joined.   The rule requires a two-
step process.   First, a court must determine whether a party is
"necessary."   See Fed. R. Civ. P. 19(a).   A party is necessary
when,

> in the person's absence complete relief

---

[3]Joining Belmac would eliminate the basis of the court's
diversity jurisdiction and warrant dismissal of the action under
Rule 12(b)(1).   See Karazanos v. Madison Two Assocs., 147 F.3d
624, 626-27 (7th Cir. 1998) (citing cases for the principle that
diversity does not exist when a resident of the United States and
a foreign entity constitute one party and the opposing party is
all foreign entities); Dresser Industries, Inc. v. Underwriters
at Lloyd's of London, et al., 106 F.3d 494, 499 (3d Cir. 1997)
(concluding applying complete diversity rule in suits between
alien on one side and aliens and citizens on the other "makes
sense").

7

> cannot be accorded among those already
> parties, or . . . the person claims an
> interest relating to the subject of the
> action and is so situated that the
> disposition of the action in the person's
> absence may . . . impede the person's ability
> to protect that interest or . . . leave any
> of the persons already parties subject to
> substantial risk of incurring . . .
> inconsistent obligations by reason of the
> claimed interest.

Fed. R. Civ. P. 19(a).  Second, if diversity jurisdiction would

be destroyed by the joinder of a necessary party, the court must

determine if the potential party is an indispensable party.  See

Fed. R. Civ. P. 19(b).  When deciding whether a party is

indispensable, a court should consider four factors:

> [F]irst, to what extent a judgment rendered in the
> person's absence might be prejudicial to . . . those
> already parties; second, the extent to which, by
> protective provisions in the judgment, by the shaping
> of relief or other measures, the prejudice can be
> lessened or avoided; third, whether a judgment rendered
> in the person's absence will be adequate; fourth,
> whether the plaintiff will have an adequate remedy if
> the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

### 1. Rule 19 Joinder

Under a Rule 19 analysis, Belmac is a necessary and

indispensable party.  Belmac is a necessary party because

plaintiffs' interactions were almost entirely with Belmac and not

with defendant.  Belmac will possess the necessary witnesses and

information pertinent to determining what acts were performed, by

whom, and whether the acts were wrongful.  Because of its

conduct, Belmac may be the only party liable for the obligations under the agreement.  Therefore, complete relief cannot be afforded among the present parties.[4]  See Japan Petroleum Co. (Nigeria), Ltd. v. Ashland Oil, Inc., 456 F.Supp. 831, 836 (D. Del. 1978) (holding that when subsidiary, not parent, signed a contract, the subsidiary may be the only party liable for the obligations under the contract and is therefore a necessary party under Rule 19(a)); Freeman v. Northwest Acceptance Corp., 754 F.2d 553 (5th Cir. 1985) (holding joinder of subsidiary necessary when subsidiary was key participant in alleged conversion); Johnson & Johnson v. Coopervision, Inc., 720 F.Supp. 1116, 1128 (D. Del. 1989) (finding a wholly owned subsidiary was an indispensable party to parent's fraud and breach of contract action).

### 2. Agency

To avoid dismissal, plaintiffs assert an agency theory. Plaintiffs argue that defendant is vicariously liable for the acts of Belmac because Belmac acted as defendant's agent and, therefore, Belmac need not be joined.[5]  (D.I. 13 at 13-14)

---

[4]In April of 2005, Ethypharm S.A. Spain filed suit in the Mercantile Court of Madrid against Belmac alleging infringement of its Spanish Omeprazole patents.  (D.I. 23 at 2)  Plaintiffs would not be prejudiced by a dismissal because an alternative forum exists for them to seek judgment against Belmac.

[5]Plaintiffs also advance the theory of liability based on defendant's role as a joint tortfeasor.  However, the briefs focus solely on the agency relationship.

9

A parent company is not liable for the actions of a
subsidiary solely because of the parent-subsidiary relationship.
See United States v. Bestfoods, 524 U.S. 51, 61 (1998).  A
finding of liability requires piercing the corporate veil.  Id.
Prior case law establishes two distinct tests for determining
when piercing the corporate veil is appropriate: (1) the alter
ego test; or (2) the agency test.  See, e.g., Pearson v.
Component Tech. Corp., 247 F.3d 471, 484-486 (3d Cir. 2001); C.R.
Bard Inc. v. Guidant Corp., 997 F. Supp. 556, 559-560 (D. Del.
1998); Mobil Oil Corp. v. Linear Films, Inc., 718 F. Supp. 260,
265-272 (D. Del. 1989).  Plaintiffs assert only the agency
approach.

If a parent corporation directs the allegedly infringing
activity of a subsidiary, the parent can be liable for its
subsidiary's infringement.  The focus of this test is on "the
arrangement between the parent and the subsidiary, the authority
given in that arrangement, and the relevance of that arrangement
to the plaintiff's claim."  C.R. Bard, Inc., 997 F. Supp. at 560.
In order for the parent corporation to be liable under this test,
there must be "a close connection between the relationship of the
corporations and the cause of action."  Id.

Because it is unclear what the relationship is between
defendant and Belmac, it is unclear how much control defendant
has over Belmac.  It is undisputed that defendant has some

10

control over Belmac because it has oversight obligations for
Belmac.  (D.I. 11 at A-105 ¶ 12)  At some point, it must be able
to direct Belmac's activities to fulfill these obligations.
However, it is unclear whether it directed the alleged infringing
activities at issue.  Plaintiffs are entitled to discovery on
this issue.  Manchak v. Rollins Enviornmental Services, Inc.,
1996 WL 790100, *4 (D. Del. 1996) (concluding discovery on the
issue of agency is warranted).

Defendant asserts that plaintiffs have not sufficiently
alleged an agency relationship in the complaint.  (D.I. 17 at 2)
In federal civil cases, "a claimant does not have to set out in
detail the facts upon which a claim is based, but must merely
provide a statement sufficient to put the opposing party on
notice of the claim."  Weston v. Pennsylvania, 251 F.3d 420, 428
(3d Cir. 2001).  "All the Rules require is a short and plain
statement of the claim that will give the defendant fair notice
of what the plaintiff's claim is and the grounds upon which it
rests."  Conley v. Gibson, 355 U.S. 41, 47 (1957) (citations
omitted); see, e.g., Lear v. Equitable Life Assurance Co. of
U.S., 798 F.2d 1128, 1131 n.4 (8th Cir. 1986) (concluding that a
statement in a complaint that person was an insurance agent
employed by defendant with either actual or apparent authority to
transact defendant's business is sufficient to plead agency in
compliance with Fed. R. Civ. P. 8).  Plaintiffs' complaint

11

includes the language, "Bentley, directly and through its agent,
Belmac S.A." This language is sufficient to put defendant on
notice of plaintiffs' claim of vicarious liability for the acts
of its alleged agent, Belmac.

Therefore, defendant's motion to dismiss is denied without
prejudice to renew if, as discovery proceeds, it becomes evident
that defendant cannot be liable either as a joint tortfeasor or
under the agency test.

### B. Preemption of Common Law Claims By DUTSA

Plaintiff alleges fraud (count one), violation of 6 Del. C.
§ 2001 et seq (count two), unjust enrichment (count three) and
intentional interference with actual and prospective business
relationships (count four). Defendant moves to have counts one,
three and four dismissed as preempted by the DUTSA. The DUTSA
"displaces conflicting tort, restitutionary and other law of this
State providing civil remedies for misappropriation of a trade
secret." 6 Del. C. § 2007(a).[6] The court concludes that counts
one and three are preempted by the DUTSA, but count four cannot
be dismissed at this stage.

The court, in <u>Leucadia, Inc. v. Applied Extrusion</u>
<u>Technologies, Inc.</u>, 755 F.Supp. 635 (D. Del. 1991), addressed the

---

[6]Only a few case have interpreted the displacement provision
of the DUTSA, which was adopted from the Model Trade Secret Act.
However, several other jurisdictions, with identical provisions,
have analyzed the clause. This court considers some of those
cases as illustrative.

issue of common law preemption by the DUTSA.  In that case, the
court noted that the legislature's professed purpose in adopting
the DUTSA was to "make uniform the law with respect to" trade
secrets.  Id. at 637 (citing 6 Del. C. § 2008).  "Section 2007
was intended to preserve a single tort cause of action under
state law for misappropriation as defined in 6 Del. C. § 2001(2)
and thus to eliminate other tort causes of action founded on
allegations of trade secret misappropriation."  Id. at 637; see
also, Savor, Inc. v. FMR Corp., 2001 WL 541484, *4 (Del. Super.
2001) (holding the "displacement" of section 2007 applies to
claims "grounded in the same facts which purportedly support the
misappropriation of trade secrets claim").  Because all claims
stemming from the same acts as the alleged misappropriation are
intended to be displaced, a claim can be displaced even if the
information at issue is not a trade secret.  Thus, a
determination of whether the information at issue constitutes a
trade secret under the DUTSA need not be addressed prior to
making a determination of displacement.  Bliss Clearing Niagara,
Inc. v. Midwest Brake Bond Co., 270 F.Supp.2d 943, 948-49
(W.D.Mich. 2003) ("[T]he Court concludes that the disputed status
of information as a trade secret does not preclude a court from
determining whether a claim or claims are displaced by the
MUTSA."); Automed Technologies, Inc. v. Eller, 160 F.Supp.2d 915,
921-22 (N.D.Ill. 2001) (rejecting the reasoning that plaintiff

can plead in the alternative and the common law theories for
recovery would apply if the information is ultimately found not
to be a trade secret); Burbank Grease Services v. Sokolowski, 693
N.W.2d 89, 101-02 (Wis. Ct. App. 2005) (construing the
displacement provision to preempt common law claims for
unauthorized use of confidential information that does not meet
the statutory definition of trade secret as well as common law
claims based on allegations or evidence of misappropriation of a
trade secret).

The issue then becomes whether counts one, three and four of
plaintiffs' complaint are "founded on allegations of trade secret
misappropriation." Leucadia, 755 F.Supp. at 637.  The issue has
been stated as whether the failure of the misappropriation claim
would doom the common law claim.  Smithfield Ham and Products Co.
v. Portion Pac, Inc., 905 F.Supp. 346, 350 (E.D. Va. 1995).  If
so, the common law claim would be barred by the trade secret
statute.  Id.  A claim will be preempted if it is "grounded in
the same facts which purportedly support the Misappropriation of
Trade Secrets claim." Savor, 2001 WL 541484, *4 (Del. Super.
2001).  The court concludes that the claims for fraud and unjust
enrichment are preempted by the DUTSA.  However, the motion with
respect to the intentional interference count is denied, without
prejudice to renew if determined to be grounded only on the
misappropriation facts at the conclusion of discovery.

14

Count one of the complaint alleges fraud.  Plaintiffs assert
that defendant and Belmac wrongly used plaintiffs' intellectual
property and trade secrets and, while secretly doing so,
defendant and Belmac were outwardly assuring plaintiffs that they
would never do anything to harm plaintiffs' interests.
Plaintiffs assert that these false statements, assurances and
omissions resulted in plaintiffs permitting defendant and Belmac
continued access to plaintiffs' trade secrets and not taking
immediate legal proceedings in response to defendant and Belmac's
"theft, misuse and misappropriation" of plaintiffs' intellectual
property and trade secrets.  This claim is clearly grounded in
the same facts which support any misappropriation.  The DUTSA
specifically identifies misrepresentation as an improper means of
obtaining trade secrets.  6 Del. C. § 2001.  Thus, the claim must
be analyzed under the DUTSA.  See Auto Channel, Inc. v.
Speedvision Network, 144 F.Supp.2d 784, 793 (W. D. Ky. 2001)
(holding a claim of misrepresented facts to induce the production
of trade secrets must be analyzed under the KUTSA); Weins v.
Sporleder, 605 N.W.2d 488, (S.D. 2000) (finding a fraud claim was
necessarily a part of the misappropriation of a trade secret
claim).

The third count of the complaint alleges unjust enrichment.
Plaintiffs allege that Belmac's misappropriation of plaintiffs'
technology, trade secrets and other intellectual property allowed

15

Belmac to "enter the marketplace and compete on equal footing
with plaintiffs and others, without incurring the considerable
expense of developing an efficient and effective manufacturing
process of its own."  In addition, plaintiffs assert that
Belmac's actions deprived plaintiffs of the opportunity to
benefit from their own production process.  This claim is based
entirely on the same facts which purportedly support the
misappropriation of trade secrets and, thus, is displaced by the
DUTSA.[7]

The final count in the complaint alleges intentional
interference with actual and prospective business relationships.
This claim is not preempted by the DUTSA.  While some of the same
facts that support the misappropriation claim are alleged in the
intentional interference count, the intentional interference
claim is not necessarily "grounded" in those facts.  See, e.g.,
Smithfield Ham & Products Co., Inc. v. Portion Pac, Inc., 905
F.Supp. at 349.  In the Smithfield case, the court concluded that
plaintiff's intentional interference claim could stand on its own
regardless of whether the misappropriation claim succeeded.
Plaintiff in Smithfield alleged that defendant's imitation
product (a barbecue sauce) was a result of misappropriation of

---

[7]In Total Care Physicians v. O'Hara, the Superior Court of
Delaware dismissed an unjust enrichment claim based on the
finding that plaintiffs had an adequate remedy at law under the
DUTSA. Total Care Physicians v. O'Hara, 2002 WL 31667901, *10
(Del. Super. 2002).

16

trade secrets.  The court reasoned that even if the fact finder concluded the imitation sauce was independently made by defendant, the fact finder could still conclude that defendant intentionally interfered with plaintiff's contractual relationship by approaching a known customer of plaintiff with an offer to sell the imitation sauce.  <u>Id.</u> at 347.

The same holds true for plaintiffs in this case.  In Delaware, a claim of intentional interference with contractual relations requires a plaintiff to establish the following elements: "(1) a contract (2) about which defendant knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) which causes injury."  <u>Lipson v. Anesthesia Servs., P.A.</u>, 790 A.2d 1261, 1284 (Del. Super. 2001) (citing <u>Irwin & Leighton, Inc. v. W.M. Anderson Co.</u>, 532 A.2d 983, 992 (Del. Ch. 1987)).  A claim for intentional interference with prospective contractual relations requires a showing of: "(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with the opportunity, (c) proximate causation, and (d) damages, all of which must be considered in light of defendant's privilege to compete or protect his business interests in a fair and lawful manner . . . ."  <u>Lipson</u>, 790 A.2d at 1285 (citing <u>DeBonaventura v. Nationwide Mut. Ins.</u>, 419 A.2d 942, 947 (Del. Super. 1980)).  While plaintiffs have not yet fully developed the

17

claim at this early stage of the proceedings, it is too early to dismiss the claim as preempted.  Plaintiffs assert in the complaint that they worked to cultivate relationships with companies to sell Omeprazole and entered into economic relationships with customers who wished to purchase the drug. Plaintiffs assert that defendant knew of these relationships. Plaintiffs also assert that defendant interfered in these relationships by stealing and using certain information and this caused plaintiffs' injury.  Even if the theft of the information does not rise to the level of misappropriation of trade secrets, the acts may still satisfy the elements in an intentional interference claim.  Thus, count four is not dismissed.  However, if the claim, once developed, is grounded on the same facts as the misappropriation claim, it will be displaced by the DUTSA.

### V. CONCLUSION

For the above stated reasons, defendant's motion to dismiss for failure to join an indispensable party is denied pending discovery on the issue of agency.  Defendant's motion to dismiss counts one and three is granted, but defendant's motion to dismiss count four is denied.  An appropriate order shall issue.