UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

ETHYPHARM S.A. FRANCE AND
ETHYPHARM S.A. SPAIN,

                    Plaintiffs,

          v.                                              Civil Action No. 04-1300-SLR

BENTLEY PHARMACEUTICALS, INC.,

                    Defendant.

**APPENDIX TO DEFENDANT BENTLEY PHARMACEUTICALS, INC.'S**

**MOTION FOR SUMMARY JUDGMENT**

**VOLUME I**
**(PAGES A-1 – A-222)**

John L. Reed (I.D. 3023)
Denise Seastone Kraft (I.D. 2778)
Joseph B. Cicero (I.D. 4388)
**EDWARDS ANGELL PALMER & DODGE LLP**
919 N. Market Street, 15th Floor
Wilmington, DE 19801
(302) 777-7770
(302) 777-7263

*Attorneys for Defendant*

**OF COUNSEL:**

Craig E. Stewart
Joseph P. Mingolla
Veronica C. Abreu
**EDWARDS ANGELL PALMER & DODGE LLP**
111 Huntington Avenue
Boston, MA 02199
(617) 239-0100

**INDEX TO APPENDIX IN SUPPORT OF DEFENDANT
BENTLEY PHARMACEUTICALS, INC.'S
MOTION FOR SUMMARY JUDGMENT**

Page Nos.

I.  March 23, 2000 Agreements between Belmac
    and Ethypharm:

    a.  Contrato de Fabricacion                          A-1 – A-7
        (Manufacturing Agreement for omeprazole)

    b.  Carta de Compromise de Compra                    A-8 – A-12
        (Letter of Purchase Undertaking for omeprazole)

    c.  Contrato de Fabricacion – Indometacina           A-13 – A-20

    d.  Contrato de Fabricacion – Vincamina              A-21 – A-28

    e.  Contrato de Fabricacion – Aspirina               A-29 – A-36

    f.  Contrato de Fabricacion – Piroxicam              A-37 – A-44

II.  November 14, 2001 Notices                           A-45 – A-48

III.  Confidentiality Agreements between Belmac and Ethypharm    A-49 – A-68

IV.  Confidentiality Agreements between Bentley and Ethypharm    A-69 – A-74

V.  Draft Agreements concerning Belmac's manufacture,
    marketing and sale of omeprazole and other pellet
    drugs to and on behalf of Ethypharm                  A-75 – A-338

VI.  Agreements between Belmac and Ethypharm's
     Customers                                           A-339 – A-344

VII.  Correspondence and Other Documents                 A-345 – A-456

VIII.  Pleadings:

    a.  Complaint                                        A-457 – A-487

    b.  Memorandum Opinion dated September 26, 2005      A-488 – A-506

IX.  Declarations:

    a.  Declaration of Rafael Garcia-Palencia in Support of
        Defendant Bentley Pharmaceuticals, Inc.'s Motion
        to Dismiss                                       A-507 – A-547

b.    Declaration of Adolfo Herrera in Support of Defendant
Bentley Pharmaceuticals, Inc.'s Motion to Dismiss    A-548 – A-606

c.    Declaration of James R. Murphy in Support of Defendant
Bentley Pharmaceuticals, Inc.'s Motion to Dismiss    A-607 – A-615

d.    Supplemental Declaration of Adolfo Herrera in Support
of Defendant Bentley Pharmaceuticals, Inc.'s Motion
for Summary Judgment    A-616 – A-619

e.    Supplemental Declaration of James R. Murphy in Support
of Defendant Bentley Pharmaceuticals, Inc.'s Motion
for Summary Judgment    A-620 – A-623

X.    Juicio Ordinario, Juzgado de lo Mercantil de Mardrid
(Spanish lawsuit with translation)    A-624 – A-703

Redacted

## CONTRATO DE FABRICACIÓN

### REUNIDO

De una parte,

**LABORATORIOS BELMAC, S.A.** con domicilio en Montearagón 9, 28033 Madrid, representada por su Director General D. Adolfo Herrera

A partir de ahora **BELMAC**.

Y de otra parte,

**LABORATORIOS ETHYPHARM, S.A.** con domicilio en Marqués de la Ensenada 16, 28004 Madrid, representada por su Director General D. Adolfo de Basilio

A partir de ahora **ETHYPHARM**.

### MANIFIESTAN

1- Que **BELMAC** está registrado en la Agencia Española del Medicamento con el número 3.150-E para la fabricación y comercialización de productos farmacéuticos.

2- Que **ETHYPHARM** está registrado en la Agencia Española del Medicamento con el número 3.328-E como titular de autorizaciones de medicamentos.

3- Que ambas partes convienen en realizar el presente contrato de FABRICACIÓN, según lo estipulado en el Real Decreto 1564/1992 del 18 de Diciembre, en referencia al producto detallado en el Anexo, a partir de ahora PRODUCTO.

Ambas partes estando interesados en colaborar en este sentido y teniendo en cuenta la legislación vigente de aplicación en estos casos, libremente,

CONFIDENTIAL

EXHIBIT
TANNESSE
No. 11
1-20-06

BEL000548

A-1

**ACUERDAN**

A- **BELMAC** asume el compromiso de fabricar y entregar el PRODUCTO fabricado en sus instalaciones, detallado en el Anexo, previa orden de pedido por **ETHYPHARM**.

B- **BELMAC** conservará o pondrá a disposición de **ETHYPHARM** los protocolos de Producción, así como las muestras de referencia y todos los datos importantes a la hora de evaluar la calidad del PRODUCTO en caso de reclamación o sospecha de algún defecto o por necesidades propias de **ETHYPHARM**. Igualmente, ambas partes se obligan a guardar secreto de toda la información que puedan intercambiar en relación con esta fabricación.

C- **BELMAC** permitirá a **ETHYPHARM** a acceder a sus instalaciones cuando sea preciso para los temas relacionados con el presente contrato de acuerdo con la Ley, previa notificación, estando de acuerdo en la fecha ambas partes.

D- **BELMAC** fabrica actualmente el producto de acuerdo con las normas de buena fabricación, según la Ley 25/1990 del 20 de Diciembre (Ley del Medicamento) y el Real Decreto 1564/1992 del 18 de Diciembre.

E- Las partes podrán ceder a terceros los derechos y obligaciones del presente acuerdo mediante consentimiento escrito de la otra parte, en forma y condiciones que ambas partes determinen. Este contrato no limitará la fabricación del producto por parte de **BELMAC** para su propio mercado y el de sus clientes.

F- Las dos partes con renuncia expresa al fuero que pudiera corresponderles, acuerdan que los Tribunales de Madrid entenderán de cualquier litigio que no pudiera ser resuelto de forma amistosa.

G- El presente acuerdo tendrá duración de dos (2) año, prorrogable tácitamente por el mismo periodo, salvo que cualquiera de las partes lo denuncie por escrito antes de su vencimiento, con un preaviso de cuatro (4) meses.

H- Los precios de fabricación serán acordados en documento a parte, de mutuo acuerdo entre ambas empresas.

Y para que conste y surta a los efectos oportunos, se firman, dos ejemplares en Madrid, a 23 de Marzo de 2000.

Por Laboratorios Ethypharm, S.A.              Por Laboratorios Belmac, S.A.

CONFIDENTIAL

BEL000549

A-2

**ANEXO**

Microgránulos de OMEPRAZOL según patente No. 9207249

**BELMAC** podrá suministrar el PRODUCTO a **ETHYPHARM**, como producto semielaborado (microgránulos), a granel (cápsulas), producto envasado en frasco o aluminio y como producto terminado, siempre que previamente, se hayan obtenido las Autorizaciones Sanitarias necesarias.

CONFIDENTIAL

BEL 0002 50

A-3

## MANUFACTURING AGREEMENT

## BY AND BETWEEN

Of the first part,

**LABORATORIOS BELMAC, S.A.,** with registered office at C/Montearagón, 9 28033 Madrid, represented by its General Manager D. Adolfo Herrera Málaga

Hereinafter call **BELMAC**

And the second part,

**LABORATORIOS ETHYPHARM, S.A.** with registered office at Marqués de la Ensenada, 16 28004 Madrid and its General Manager Mr. Adolfo de Basilio

Hereinafter called **ETHYPHARM,**

## RECITALS

1. **BELMAC** is registered in the Medicine Spanish Agency with the number 3.150-E to manufacture and commercialize pharmaceutical products.

2. **ETHYPHARM** is registered in the Medicine Spanish Agency with the number 3.328-E as titular of medicines authorizations.

3. The parties agreed to carry out the present MANUFACTURING agreement, according to the stipulated in the Real Decree 1564/1992 of 18th December, in reference to the product detailed in the Annex, hereinafter PRODUCT.

The parties are interested in collaborating in this way and keeping in mind the legislation in force of application in these cases, freely.

1

CONFIDENTIAL

BEL000551

A-3A

**THEY AGREE**

A. **BELMAC** assumes the agreement to manufacture and delivery the PRODUCT manufactured in their facilities, detailed in the Annex, upon positive order by **ETHYPHARM**.

B. **BELMAC** will keep or it will put at the disposal of **ETHYPHARM** the Production protocols, as soon as the reference samples and all important when the quality of the PRODUCT is evaluated in case of claim or suspicion of some defect or by own necessities of **ETHYPHARM**. Equally, the parties are obligated to keep secret of all the information, which can interchange in relation with this manufacturing.

C. **BELMAC** will allow to ETHYPHARM to accede at their facilities when it is necessary for the subjects related with the present agreement in according with the Law, upon notification, and agreed in the date by both parts.

D. **BELMAC** manufactures the product actually agrees with good manufacturing guides, according to Law 25/1990 of 20th December (Medicine Law) and the Real Decree 1564/1992 of 18th December.

E. The parties will be able to cede at third parts the rights and obligations of the present agreement through written consent of the other part, in form and conditions that the parties determine. This agreement does not limit the manufacturing of the product by part for BELMAC for its own market and the own of its customers.

F. The parties with express waiver to the jurisdiction, which could correspond them, agree that the Courts of Madrid will understand about any lawsuit, which could not be resolved by friendly way.

G. The present agreement shall remain into effect for a period of two (2) years, and it will be renewed for the same period, except any of the parties denounce in written before the expiration date, notifying it, at least, four (4) months before.

H. The manufacturing prices will be agreed in another document, of mutual agreement between both companies.

In witness whereof, the parties sign this agreement by duplicate in Madrid, 23rd March 2000.

By Laboratorios Ethypharm, S.A.          By Laboratorios Belmac, S.A.

2

CONFIDENTIAL

BEL000552

A-3B

**ANNEX**

Micropellets of OMEPRAZOL in according to patent No. 9207249

**BELMAC** will be able to supply the PRODUCT to ETHYPHARM, as a semi elaborated product (micropellets), in bulk (capsules), packed product in flask or aluminum and as finished product, as long as previously, the Marketing Authorizations have been obtained.

3

CONFIDENTIAL

BEL000553

A-3C

Redacted

## Manufacturing Contract

Entered into
by and between

**LABORATORIOS BELMAC**, domiciled at Montearagón 9, 28033 Madrid, represented by its Chairman Mr. Adolfo Herrera

Hereinunder BELMAC,

And

**LABORATORIOS EHTYPHARM**, S. A. domiciled at Marqués de la Ensenada 16, 28004 Madrid, represented by its Chairman, Mr. Adolfo de Basilio

Hereinunder ETHPHARM,

WHO REPRESENT

1 – That Belmac is registered with the *Agencia Española del Medicamento* (Spanish Drug Administration) under number 3.150-E for the manufacture and sale/marketing of pharmaceutical products.

2 – That EHYPHARM is registered with *Agencia Española del Medicamento* (Spanish Drug Administration) under number 3.328-E as the holder of authorizations for medicines.

3- That the parties agree to undertake this MANUFACTURING contract, pursuant to Royal Decree 1564 of December 18, 1992 in reference to the product itemized in the Appendix hereto, hereinafter the PRODUCT.

Both parties have an interest is working together in this sense, and taking into account current applicable legislation for these circumstances, of their own free will, hereby agree that:

**BEL000548**

**A-4**

,

A – **BELMAC** shall undertake the commitment to manufacture and deliver the PRODUCT manufactured on its premises, as set forth under the Appendix, upon prior order request from **ETHYPHARM**.

B – **BELMAC** shall keep the Production protocols or shall make them available to **ETHYPHARM**, as well as the reference samples and all important data required for evaluating the quality of the PRODUCT in the event of a complaint, the suspicion of any product defect or for **ETHYPHARM**'s own requirements. Likewise, the parties agree to maintain secret all information that they might exchange with respect of this manufacturing.

C - **BELMAC**, shall allow **ETHYPHARM** to have access to its premises when necessary for reasons relating to this contract as set forth under the Law with advance notification, with both parties agreeing to a date therefore.

D - **BELMAC** is currently manufacturing the product according to best manufacturing practices as set forth under Law 25 of December 20, 1990 (Drug Law) and Royal Decree 1564 of December 18, 1992.

E- The parties may transfer their rights and obligations hereunder to third parties if the other party provides consent in writing therefore and in the form and pursuant to conditions that both shall determine. This contract shall not restrict the manufacture of the product by **BELMAC** to its own market and customers.

F- The parties agree to waive expressly the jurisdiction that might be theirs and agree that the Courts of Madrid shall hear any dispute that may not be resolved out of court.

G – This contract shall have a term of two (2) years, renewable tacitly for the same term unless either of the parties decides not to renew it in writing prior to expiration and with advance notice of four (4) months.

H – The manufacturing prices shall be given in a separate document and by mutual consent of both parties.

For all pertinent purposes that may arise hereunder and for the record, two originals are signed in Madrid, this 23 day of March 2000.

On behalf of **ETHYPHARM S. A.**          On behalf of **BELMAC S. A.**

[illegible signature]                                 [illegible signature]

CONFIDENTIAL

BEL000549

A-5

APPENDIX

Omeprazol Microgranules as per patent No. 9207249


BELMAC may supply the PRODUCT to **ETHYPHARM** in semi-finished form (microgranules), pellets (capsules), as a bottled product or in foil and as a finished product, as long as the necessary Health Authorizations have been obtained.

**BEL000550**

**A-6**

## TRANSLATION CERTIFICATION

I, Jane C. Lamb-Ruiz, MA, certify that the translation, from Spanish into English, of the Manufacturing Contract (BEL000548-BEL000550) attached hereto is a true and correct translation of the Spanish original (*Contrato de Fabricación*).


Jane C. Lamb-Ruiz
Professional Translator and Interpreter
B. S. in Languages and Linguistics, Georgetown University
Translation Degree and MA in Translation, *Ecole Supérieure d'interprétes et traducteurs Université de la Sorbonne* (Paris).

Signature: *Jane C. Lamb-Ruiz*

Notarization:


The Commonwealth of Massachusetts
Norfolk , s.s.
(county)
Date August 21, 2006
Then personally appeared the above named

Jane C. Lamb-Ruiz
and acknowledged the foregoing instrument
to be his/her free act and deed, before me,

Theodora K. Eaton
THEODORA K. EATON, Notary Public
My Commission Expires May 15  2009

A-7

 **ethypharm** 

## CARTA DE COMPROMISO DE COMPRA

**REUNIDOS**

De una parte,

**LABORATORATORIOS BELMAC, S.A.**, con domicilio en Montearagón, 9; 28033 Madrid, representada por su Director General D. Adolfo Herrera

A partir de ahora **BELMAC**.

Y de otra parte

**LABORATORIOS ETHYPHARM, S.A.**, con domicilio en Marqués de la Ensenada, 16; 28004 Madrid, representada por su Director General, D. Adolfo de Basilio

Apartir de ahora **ETHYPHARM**.

## ESPECIFICACIONES

1. BELMAC se compromete a comprar en exclusiva a ETHYPHARM sus necesidades y las de sus clientes, siempre y cuando ETHYPHARM garantice dicho suministro, en tiempo y forma establecidos en los pedidos, a precios competitivos de mercado y la fabricación del producto (microgránulos de OMEPRAZOL) se realice por BELMAC en sus instalaciones.

2. Los precios de suministro se fijarán de mutuo acuerdo.

3. Esta carta de compromiso de compra tiene validez de dos años renovable por el mismo periodo si ninguna de las partes lo denuncia con antelación de cuatro meses mediante notificación escrita.

Y para que conste y surta a los efectos oportunos, se firman dos ejemplares en Madrid, a 23 de Marzo de 2000.

Por ETHYPHARM, S.A.                    Por LABORATORIOS BELMAC, S.A.


EXHIBIT
JOANNESSE
13
2-20-06

EP 004863

A-8

 

Madrid, 26 de Enero del 2000

Adjunto los precios de fabricación y suministro para el año 2000, para su aceptación.

**Precios de Belmac para Ethypharm**

- Encapsulado ...........................................300 ptas/1000 dosis
- Exportación ........................................... 300 ptas/1000 dosis
- Costo fijo de fabricación (incluye dos turnos) ......... 2.666.666 ptas
  Este precio es para doce meses.
- Costo variable de fabricación por producto:
  - Omeprazol ...................... 500.000 ptas/1.250.000 dosis
  - Piroxicam ....................... 400.000 ptas/2.000.000 dosis
  - Vincamina ..................... 400.000 ptas/1.000.000 dosis
  - Aspirina ......................... 200.000 ptas/1.700.000 dosis
  - Indometacina ................. 400.000 ptas/1.500.000 dosis
  - Lansoprazol ................... 400.000 ptas/850.000 dosis
- Puesta en frasco todo incluido excepto pellets .....................90 ptas
- Trabajo fin de semana a doble turno ........................ 312.500 ptas
- Aumento coste fijo cuando incluyamos la nueva máquina 1.250.000 ptas.

**Precios de Ethypharm para Belmac**

- Suministro de microgránulos de Omeprazol ............... 33.500 ptas.
  (incluyendo el principio activo y para una riqueza de 85.5 mg/g)
  Este precio está comprendido para un precio de compra del ingrediente activo de 1.000 dólares.

Fdo.: D. Adolfo de Basilio
Director General
Ethypharm

Fdo.: D. Adolfo Herrera
Director General
Belmac

Marqués de la Encomada, 16 - Centro Corba - 28004 Madrid (España)
TEL: +34 913 085 581 - FAX : +34 913 199 159
Correo-e: ethypharm@ethypharm.es - Pag. Web: http://www.ethypharm.com

EP 004864

A-9



Madrid, 26 janvier 2000

*Ci-joint les prix de fabrication et de livraison pour l'an 2000, pour leur acceptation.*

### Prix de Belmac pour Ethypharm

- • Encapsulation ...................................................300 ptas/1000 doses
- • Exportation ......................................................300 ptas/1000 doses
- • Coût fixe de fabrication (deux équipes inclues) .......... 2.666.666 ptas
  Ce prix est valable pour douze mois.
- • Coût variable de fabrication par produit:
  - Oméprazole ................. 500.000 ptas/1.250.000 doses
  - Piroxicam ..................... 400.000 ptas/2.000.000 doses
  - Vincamine ................... 400.000 ptas/1.000.000 doses
  - Aspirine ....................... 200.000 ptas/1.700.000 doses
  - Indométacine .............. 400.000 ptas/1.500.000 doses
  - Lansoprazole .............. 400.000 ptas/850.000 doses

- • Mise en flacon tout inclu excepté les pellets ...................................... 90 ptas.
- • Travail week end avec deux équipes à tour de rôle ................. 312.500 ptas.
- • Augmentation coût fixe quand sera inclue la nouvelle machine 1.250.000 ptas.

### Prix d'Ethypharm pour Belmac

- • Livraison de microgranules d'Oméprazole ................................. 33.500 ptas.
(Principe actif inclu et pour une richesse de 85.5 mg/g)
Ce prix est compris pour un prix d'achat de l'ingrédient actif de 1.000 dollars.

Signé:    M. Adolfo de Basilio    Signé:    M. Adolfo Herrera
    Directeur Général    Directeur Général
    Ethypharm    Belmac

Marqués de la Ensenada, 16 - Centro Colón - 28004 Madrid (España)
TEL.: +34 913 085 681 - FAX : + 34 913 190 159
Correo-e: ethypharm@ethypharm.es - Pag. Web: http://www.ethypharm.com

EP 004865

A-10



## AFFIDAVIT OF ACCURACY

This is to certify the document, **Letter of Purchase Undertaking, March 23, 2000,** has been translated from Spanish into English by staff members of TransPerfect Translations familiar with both the Spanish and English languages and is to the best of our knowledge, ability and belief, a true and accurate translation.



Susan Christian
TransPerfect Translations, Inc.
15 Broad St., Suite 305
Boston, MA 02109

Sworn to before me this
5th day of November 2004

Signature, Notary Public
Commonwealth of Massachusetts
Commission Expires August 14, 2009

A-96

A-11

[logo] ethypharm

## LETTER OF PURCHASE UNDERTAKING

### PRESENT

On the first part,

LABORATORIOS BELMAC, S.A. domiciled at Montearagón 9, 28033 Madrid, represented by its General Director Mr. Adolfo Herrera

Hereinafter BELMAC

And on the second part,

LABORATORIOS ETHYPHARM, S.A. domiciled at Marqués de Ensenada 16, 28004 Madrid, represented by its General Director Mr. Adolfo de Basilio

Hereinafter ETHYPHARM.

### SPECIFICATIONS

1- BELMAC undertakes to exclusively purchase its own needs and that of its clients from ETHYPHARM, on the proviso that ETHYPHARM guarantees that said supply will occur in the time and manner established in purchase orders and at competitive market prices, and that the manufacture of the product (microgranules of OMEPRAZOLE) will be performed by BELMAC in its own installations.

2- The supply prices will be fixed by mutual agreement.

3- This letter of purchase undertaking is valid for two years and renewable for the same term provided neither of the two parties opposes this giving four months notice in writing.

And in witness of which and to due legal effect, signatures are affixed to two copies of this document at Madrid, March 23, 2000.

For Ethypharm, S.A.                        For Laboratorios Belmac, S.A.
[signature]                                [signature]

A-97

A-12

1 / 4

**CONTRATO DE FABRICACIÓN DE INDOMETACINA MIGROGRÁNULOS**

Entre :

**ETHYPHARM S.A.**
Centro Colon
Marqués de la Ensenada, 16
28004 MADRID

el *contratante*, representado por                **Don Adolfo de BASILIO**
actuando en calidad de                            **Director General**

Y :

**Laboratorios BELMAC**
Montearagón, 9
28033 MADRID

el *subcontratado o fabricante*, representado por    **Don Adolfo HERRERA**
actuando en calidad de                               **Director General**

Referente a los pedidos subcontratados de fabricación de *microgránulos* a granel a base de ingredientes activos farmacéuticos, efectuados por el *contratante* al *subcontratado*.

---

**ARTICULO 1: NATURALEZA DE LA PRESTACIÓN**

**1.1 - Productos**

El *contratante* confía al *subcontratado* las operaciones farmacéuticas de fabricación de los lotes de microgránulos farmacéuticos: los productos finales son productos semielaborados para especialidades farmacéuticas humanas.

Las operaciones de fabricación se realizarán en la fábrica de los laboratorios BELMAC - Polígono Malpica c/ C n° 4; 50016 – ZARAGOZA (España).

Los pedidos subcontratados conciernen de manera no exclusiva a los siguientes productos farmacéuticos:

-**INDOMETACINA** microgránulos a granel (para dosificaciones de 50 mg)

Cada nuevo producto deberá ser de antemano aceptado por el *subcontratado*.

El cliente final deberá disponer de una Autorización de Comercialización o licencia.

**1.2 Operaciones farmacéuticas**

El *contratante* delega al *subcontratado* las operaciones farmacéuticas siguientes:

INDOMETACINA 50 mg



CONFIDENTIAL
EP 008098

A-13

1.2.1 Identificación y control de las materias primas por el subcontratado

**Facilitados por el _contratante_**
- Identificación de las referencias de los artículos abastecidos por el _contratante_ en comparación con la lista de embarque.
- Verificación de la integridad de los recipientes que contienen los excipientes y los principios activos.

No se requiere la identificación de los lotes de excipientes y de principios activos a la recepción: los recipientes están herméticamente sellados por el _contratante_ con un precinto de inviolabilidad, debiéndose solo abrir cuando vaya a proceder a la fabricación.
El _subcontratado_ deberá hacer una toma de muestras en condiciones que eviten cualquier contaminación del producto.

**Facilitados por el _subcontratado_**
- Los excipientes necesarios deben estar descritos en protocolo de fabricación.
- El _subcontratado_ analiza estos excipientes que deberán ser conformes con las especificaciones de la Farmacopea y/o aportadas por el contratante.

1.2.2 Operaciones de fabricación :

- La fabricación se llevará a cabo según el protocolo titulado "Dossier de lote de Microgránulos": normalizado según procedimiento interno del **subcontratado**; y de acuerdo a la fórmula unitaria descrita en el protocolo de fabricación.

1.2.3 Acondicionamiento de microgranulos a granel

- Los microgránulos a granel serán acondicionadas en dos bolsas de polietileno.
- Presentación:
    - Doble bolsa de polietileno cerrada con un precinto
    - El peso neto de cada bidón, deberá ser indicado en cada pedido, y será alrededor de 45 Kg
    - En un bidón de plástico con una etiqueta BELMAC donde se describa:
        - Nombre del producto
        - Código producto
        - Fecha de fabricación
        - Numero de lote
        - Tara
        - Peso neto
        - Nombre y dirección del remitente
        - Nombre y dirección del destinatario

    - Bidón revestido y con precinto de inviolabilidad

    - Paletización según indicaciones del pedido.

1.2.4 Liberación del lote

- Los microgránulos deben cumplir con todas las etapas descritas en el procedimiento de fabricación.
- Liberación del lote; en lo que concierne a la fabricación de los microgranulos se hará en base al protocolo de fabricación y certificados analíticos firmados por el farmacéutico responsable del **subcontratado**.

INDOMETACINA 50 mg

CONFIDENTIAL
EP 008099

<u>1.2.5 Entregas al contratante</u>

Según las modalidades descritas en el pedido.

**1.3 Documentación**

El *contratante* proporcionará al *subcontratado* los documentos siguientes:

- Pedido mencionando los números de lote con los que se corresponderán los microgránulos,
- Boletines de análisis de los principios activos y de los excipientes provistos por el **contratante**
- Precauciones eventuales de limpieza
- Lista de embarque de las mercancías
- Métodos analíticos y especificaciones del producto semielaborado

El *subcontratado* proporcionará al *contratante* los documentos siguientes:

- Copia íntegra del dossier de fabricación de cada lote fabricado con un balance cuantitativo,
- Boletín de análisis del producto semielaborado de acuerdo con las especificaciones proporcionadas por el **contratante**, especificando la conformidad
- El **subcontratado** proporcionará al **contratante** el peso neto, peso bruto por bidón, nº de lote y referencias de los productos semielaborados entregados.

Esta documentación será remitida con la mercancía, o enviada donde lo solicite el **contratante**.

**1.4 Suministro de las mercancías**

- El contratante entrega las materias en contenedores sellados con cinta adhesiva o precinto.
- El **subcontratado** entregará el producto terminado, según las instrucciones de acondicionamiento. En caso de devolución excepcional (por ejemplo principio activo) el **subcontratado** especificará claramente la devolución con una etiqueta mencionando la referencia, la cantidad y el nº de lote y la razón de su devolución.
- Cualquier anomalía con la calidad o la cantidad de artículos deberá ser comunicada a la mayor brevedad posible, después de la entrega.
- El **subcontratado**, será el responsable del almacenamiento, se hará cargo de las mercancías, pertenecientes al contratante, en caso de robo, incendio, daños por inundaciones y otros percances debidos a las actividades de la fabrica
- El **subcontratado** nunca será responsable de la perdida de actividad de las mercancías, siempre y cuando se hayan respetado las condiciones de fabricación, conservación y almacenamiento indicadas por el **contratante**.
- El **subcontratado** será responsable de la fabricación siempre que el **subcontratado** incumpla con los protocolos de fabricación aportados por el **contratante**.

**ARTICULO 2: RESPONSABILIDADES**

- El *contratante,* después de efectuar los controles necesarios en el producto a entregar y de examinar el dossier de cada lote, compromete su responsabilidad farmacéutica en lo que se refiere a la liberación final del producto terminado.

El *subcontratado,* BELMAC, debe abastecer al *contratante,* ETHYPHARM, una copia de las certificado de cumplimiento de las "Good Manufacturing Practices" (GMPs).

INDOMETACINA 50 mg

CONFIDENTIAL
EP 008100

**A-15**

- El *subcontratado*, BELMAC, asume la responsabilidad de las operaciones listadas en el párrafo 1.2 y se compromete a realizarlas o a hacerlas realizar conforme:
- A las instrucciones del *contratante*:
- A las exigencias farmacéuticas surgiendo de las autoridades locales
- A las recomendaciones GMP vigente en Europa.

- El *subcontratado* se compromete a informar al *contratante* de las actividades de fabricación realizadas y de cualquier incidente que afecte al lote. Debiendo en ese caso reflejar en el dossier de fabricación del lote, la incidencia detectada.

- En caso de no-conformidad, el *subcontratado* informará al *contratante* y éste decidirá sobre las posibles soluciones. En caso de que el *subcontratado* cumpla el proceso y no se obtenga el rendimiento esperado las partes intentarán resolver el problema efectuando un análisis de las condiciones de producción para definir las responsabilidades.

- El *contratante* podrá realizar auditorias de calidad en los locales del *subcontratado* a fin de verificar in-situ las condiciones del subcontrato, a condición que anuncie su visita de antemano.

- El *subcontratado* se obliga a tener una póliza de seguro que cubra cualquier daño producido a la mercancía almacenada en sus instalaciones y que sea propiedad del *contratante*.

---

### ARTICULO 3 - CONDICIONES COMERCIALES

Los precios, condiciones de pago y plazos se fijarán en cada pedido emitido por el *contratante*.

Mensualmente el **subcontratado** emitirá un planning de entregas conforme a un programa de fabricación en base a los pedidos que el **contratante** solicite. **Contratante** y **subcontratado** ajustarán dicho plan en base a las capacidades de producción y prioridades de entrega.

El *subcontratado* emitirá, a la recepción de cada pedido, un acuse de recibo del pedido indicando la fecha estimada de entrega.

Ambas partes se comprometen a guardar confidencialidad de toda la información que se pueda intercambiar en relación con esta fabricación.

El presente contrato está sometido al Derecho Español. Cualquier litigio derivado de este contrato se someterá a los Tribunales de Justicia Españoles.

Cualquier modificación del presente contrato deberá ser objeto de un acuerdo previo escrito, entre las dos partes.

Este será valido durante dos años a partir de la fecha de emisión, y siendo renovable tácitamente por el mismo período si ninguna de las partes indica lo contrario por escrito. Ambas partes se reservan el derecho de rescindir este contrato si una de las partes no cumple con las responsabilidades definidas en este contrato.

Por ETHYPHARM S.A.                          Por los Laboratorios BELMAC

En MADRID, a 23 de Mayo de 2000 (dos copias).
INDOMETACINA 50 mg

CONFIDENTIAL
EP 008101



**MANUFACTURING AGREEMENT OF INDOMETACINE MICROGRANULES**

Between:
**ETHYPHARM S.A.**
Centro Colón
Marqués de la Ensenada, 16
28004 MADRID

hereinafter, *Contractor*, represented by          **Mr. Adolfo de BASILIO**
acting in his capacity as                                   **General Director**

sii
And:

**Laboratorios BELMAC**
Montearagón, 9
28033 MADRID

hereinafter *Subcontracted Party* or *Manufacturer*, represented by     **Mr. Adolfo HERRERA**
acting in his capacity as                                                              **General Director**

Regarding the subcontracted manufacturing orders of bulk microgranules composed of pharmaceutical active ingredients, made by *Contractor* to *Subcontracted Party*.

| SECTION 1: NATURE OF THE SERVICE |

**1.1. Products**

*Contractor* entrusts *Subcontracted Party* the pharmaceutical operations of the manufacturing of pharmaceutical microgranules; final products are products semi-elaborated for pharmaceutical companies for human services.

Manufacturing operations shall be performed in the plant of Laboratorios BELMAC- Polígono Malpica c/ C n° 4; 50016- ZARAGOZA (Spain).

Subcontracted orders include, but are not limited to, the following pharmaceutical products:

                    -**INDOMETACINE** bulk microgranules (for dosages of 50 mg)

Every new product shall be previously accepted by *Subcontracted Party*.

The final client shall have a Commercialization Permit or Authorization.

**1.2. Pharmaceutical Operations**

*Contractor* delegates *Subcontracted Party* the following pharmaceutical operations:



INDOMETACINE 50 mg

                          CONFIDENTIAL
                          EP 008098
          Rough Translation for use by Attorneys During Depositions
May not be Submitted to Court without Permission of Edwards Angell Palmer & Dodge, LLP

A-17

### 1.2.1 Identification and Control of Raw Materials made by Subcontracted Party

Provided by *Contractor*
- Reference identification of the goods provided by *Contractor* in comparison with packing list.
- Verification of the integrity of containers for excipients and active ingredients.

The identification of lots of excipients and active ingredients is not necessary at the moment of reception; containers are hermetically sealed by *Contractor* with a security seal, which must be opened only at the moment of manufacturing.
*Subcontracted Party* shall take samples under conditions that prevent any product contamination.

Provided by *Subcontracted Party*
- Necessary excipients shall be detailed on the Manufacturing Protocol
- *Subcontracted Party* evaluates these excipients which shall comply with Pharmacopeial specifications and/ or specifications established by *Contractor*.

### 1.2.2 Manufacturing Operations:
Manufacturing shall be performed according to the protocol entitled "Dossier of Microgranule Lot," standardized pursuant to the internal procedure of *Subcontracted Party* and pursuant to the unit formula detailed in the Manufacturing Protocol.

### 1.2.3 Preparation of Bulk Microgranules

- Bulk microgranules shall be prepared in two polyethylene sacks.
- Presentation:
     - Two polyethylene sacks closed with a seal
     - Net weight of each drum shall be indicated for each order and shall be approximately 45 kg.
          - The plastic drum shall have a BELMAC label indicating:
               - Product Name
               - Product Code
               - Date of Manufacture
               - Lot Number
               - Name and Address of Sender
               - Name and Address of Consignee

     - Coated drum with security seal
     - Palletization according to order indications



### 1.2.4 Lot Release

- The microgranules shall comply with all the stages detailed in the manufacturing procedure.
- Lot Release; manufacturing of microgranules shall be performed according to the Manufacturing Protocol and the certificates of analysis signed by the pharmacist representing *Subcontracted Party*.

INDOMETACINE 50 mg

CONFIDENTIAL
EP 008099
Rough Translation for use by Attorneys During Depositions
May not be Submitted to Court without Permission of Edwards Angell Palmer & Dodge, LLP

A-18

<u>1.2.5 Deliveries to **Contractor**</u>

Pursuant to specifications detailed on the order.

**1.3 Documentation**

**Contractor** shall give the following documents to **Subcontracted Party**:

- Order indicating lot numbers for the respective microgranules.
- Analysis bulletins of active ingredients and excipients provided by **Contractor**
- Temporary cleaning precautions
- Packing list of goods
- Analytical methods and specifications of semi-elaborated products

**Subcontracted Party** shall provide the following documents to **Contractor**:

- Complete copy of the manufacturing dossier of each lot manufactured with a quantitative balance
- Analysis bulletin of the product semi-elaborated pursuant to specifications provided by **Contractor**, indicating its conformity.
- **Subcontracted Party** shall give **Contractor** the information about net weight, gross weight per drum, lot number, and references of the delivered semi-elaborated products.

This documentation shall be delivered along with the goods or to the place determined by **Contractor**.

**1.4 Provision of Goods**

- *Contractor* delivers goods in containers sealed with adhesive tape or a security seal.
- **Subcontracted Party** shall deliver the finished product according to the instructions for preparation.
In case of exceptional return (e.g. active ingredient), **Subcontracted Party** shall clearly detail the return with a label indicating reference, quantity, lot number, and reason for return.
- Any irregularity regarding quality or quantity of goods must be informed of as soon as possible, after the delivery.
- **Subcontracted Party** shall be liable for the storage, the goods belonging to *Contractor* in case of robbery, fire, damages resulting from floods and other incidents resulting from manufacturing activities.
- **Subcontracted Party** shall never be liable for the activity loss of goods as long as manufacturing, maintenance and storage conditions established by **Contractor** have been complied with.
- **Subcontracted Party** shall be liable for the manufacturing if it does not comply with the Manufacturing Protocols provided by Contractor.

| **SECTION 2: RESPONSIBILITIES** |

• **Contractor**, after performing the necessary controls on the product to be delivered and after examining the dossier for each lot, becomes pharmaceutically liable for the final release of the finished product.
**Subcontracted Party**, BELMAC, shall provide to **Contractor**, ETHYPHARM, a copy of the certificate of conformity with the "Good Manufacturing Practices" (GMPs).

DOMETACINE 50 mg

CONFIDENTIAL
EP 008100 Rough Translation for use by Attorneys During Depositions
May not be Submitted to Court without Permission of Edwards Angell Palmer & Dodge, LLP

A-19

- **Subcontracted Party**, BELMAC, shall be liable for the operations mentioned in Paragraph 1.2 and agrees to perform them pursuant to:
  - **Contractor**'s instructions
  - Pharmaceutical requirements from local authorities
  - Current GMP recommendations in Europe.

- **Subcontracted Party** agrees to give notice to **Contractor** of the manufacturing activities performed and of any incident affecting the lot. For this reason, the dossier of lot manufacturing shall indicate the detected incident.

- In case of non-conformity, **Subcontracted Party** shall give notice to **Contractor** and **Contractor** shall determine the possible solutions. If **Subcontracted Party** complies with the process, and the expected performance is not achieved, the parties shall try to solve the problem by means of an analysis of production conditions in order to determine the responsibilities.

- Contractor, after giving notice of the visit, shall be able to perform quality auditing in the offices of Subcontracted Party in order to verify in-situ the subcontract conditions.

- **Subcontracted Party** agrees to have an insurance policy covering damages of goods stored in its facilities and which belong to **Contractor**.

## SECTION 3: COMMERCIAL CONDITIONS

Prices, payment conditions, and terms shall be determined in each **Contractor**'s order.

Every month, **Subcontracted Party** shall issue an order planning, according to a manufacturing program, based on **Contractor**'s orders. **Contractor** and **Subcontracted Party** shall adjust such planning considering production capacities and priority of delivery.

**Subcontracted Party** shall issue, upon reception of each order, an acknowledgement of receipt indicating an estimated date of delivery.

Both parties agree to keep strict confidentiality about the information shared in this manufacturing process.

This agreement is subject to Spanish Law. Any suit resulting from this agreement shall be resolved by the Judicial Courts of Spain.

Any modification to this agreement shall be previously agreed to by both parties by means of a written document.

This agreement shall be valid for the term of two years from the date of issuance and can be tacitly renewed for the same period of time if not otherwise stated in writing by any party. Both parties reserve their right to terminate this agreement in case one of the parties does not comply with the liabilities established in this agreement.

By: ETHYPHARM S.A.                    By Laboratorios BELMAC

MADRID, March 23rd, 2000 (two copies)

INDOMETACINE 50 mg

CONFIDENTIAL
EP 008101
Rough Translation for use by Attorneys During Depositions
May not be Submitted to Court without Permission of Edwards Angell Palmer & Dodge, LLP

A-20

1 / 4

**CONTRATO DE FABRICACIÓN DE VINCAMINA MICROGRÁNULOS**

Entre :

**ETHYPHARM S.A.**
Centro Colon
Marqués de la Ensenada, 16
28004 MADRID

el *contratante*, representado por                    **Don Adolfo de BASILIO**
actuando en calidad de                                **Director General**

Y :

**Laboratorios BELMAC**
Montearagón, 9
28033 MADRID

el *subcontratado o fabricante*, representado por     **Don Adolfo HERRERA**
actuando en calidad de                                **Director General**

Referente a los pedidos subcontratados de fabricación de microgránulos a granel a base de ingredientes activos farmacéuticos, efectuados por el *contratante* al *subcontratado*.

---

| ARTICULO 1: NATURALEZA DE LA PRESTACIÓN |
| --- |

**1.1 - Productos**

El *contratante* confía al *subcontratado* las operaciones farmacéuticas de fabricación de los lotes de microgránulos farmacéuticos: los productos finales son productos semielaborados para especialidades farmacéuticas humanas.

Las operaciones de fabricación se realizarán en la fábrica de los laboratorios BELMAC - Polígono Malpica c/ C n° 4; 50016 - ZARAGOZA (España).

Los pedidos subcontratados conciernen de manera no exclusiva a los siguientes productos farmacéuticos:

-VINCAMINA microgránulos a granel (para dosificaciones de 30 mg)

Cada nuevo producto deberá ser de antemano aceptado por el *subcontratado*.

El cliente final deberá disponer de una Autorización de Comercialización o licencia.

**1.2 Operaciones farmacéuticas**

El *contratante* delega al *subcontratado* las operaciones farmacéuticas siguientes:

VINCAMINA 30 mg

EXHIBIT

CONFIDENTIAL
EP 008113

A-21

### 1.2.1 Identificación y control de las materias primas por el subcontratado

**Facilitados por el *contratante***
- Identificación de las referencias de los artículos abastecidos por el *contratante* en comparación con la lista de embarque.
- Verificación de la integridad de los recipientes que contienen los excipientes y los principios activos.

No se requiere la identificación de los lotes de excipientes y de principios activos a la recepción: los recipientes están herméticamente sellados por el *contratante* con un precinto de inviolabilidad, debiéndose solo abrir cuando vaya a proceder a la fabricación.
El *subcontratado* deberá hacer una toma de muestras en condiciones que eviten cualquier contaminación del producto.

**Facilitados por el *subcontratado***
- Los excipientes necesarios deben estar descritos en protocolo de fabricación.
- El *subcontratado* analiza estos excipientes que deberán ser conformes con las especificaciones de la Farmacopea y/o aportadas por el contratante.

### 1.2.2 Operaciones de fabricación :

- La fabricación se llevará a cabo según el protocolo titulado "Dossier de ble de Microgránulos": normalizado según procedimiento interno del **subcontratado**; y de acuerdo a la fórmula unitaria descrita en el protocolo de fabricación.

### 1.2.3 Acondicionamiento de microgranulos a granel

- Los microgránulos a granel serán acondicionadas en dos bolsas de polietileno.
- Presentación:
    - Doble bolsa de polietileno cerrada con un precinto
    - El peso neto de cada bidón, deberá ser indicado en cada pedido, y será alrededor de 45 Kg
    - En un bidón de plástico con una etiqueta BELMAC donde se describa:
        - Nombre del producto
        - Código producto
        - Fecha de fabricación
        - Numero de lote
        - Tara
        - Peso neto
        - Nombre y dirección del remitente
        - Nombre y dirección del destinatario

    - Bidón revestido y con precinto de inviolabilidad

    - Paletización según indicaciones del pedido.

### 1.2.4 Liberación del lote

- Los microgránulos deben cumplir con todas las etapas descritas en el procedimiento de fabricación.
- Liberación del lote; en lo que concierne a la fabricación de los microgranulos se hará en base al protocolo de fabricación y certificados analíticos firmados por el farmacéutico responsable del subcontratado.

VINCAMINA 30 mg

CONFIDENTIAL
EP 008114

**A-22**

<u>1.2.5 Entregas al contratante</u>

Según las modalidades descritas en el pedido.

**1.3 Documentación**

El *contratante* proporcionará al *subcontratado* los documentos siguientes:

- Pedido mencionando los números de lote con los que se corresponderán los microgránulos,
- Boletines de análisis de los principios activos y de los excipientes provistos por el **contratante**
- Precauciones eventuales de limpieza
- Lista de embarque de las mercancías
- Métodos analíticos y especificaciones del producto semielaborado

El *subcontratado* proporcionará al *contratante* los documentos siguientes:

- Copia íntegra del dossier de fabricación de cada lote fabricado con un balance cuantitativo,
- Boletín de análisis del producto semielaborado de acuerdo con las especificaciones proporcionadas por el contratante, especificando la conformidad
- El subcontratado proporcionará al contratante el peso neto, peso bruto por bidón, n° de lote y referencias de los productos semielaborados entregados.

Esta documentación será remitida con la mercancía, o enviada donde lo solicite el **contratante**.

**1.4 Suministro de las mercancías**

- El **contratante** entrega las materias en contenedores sellados con cinta adhesiva o precinto.
- El **subcontratado** entregará el producto terminado, según las instrucciones de acondicionamiento. En caso de devolución excepcional (por ejemplo principio activo) el **subcontratado** especificará claramente la devolución con una etiqueta mencionando la referencia, la cantidad y el n° de lote y la razón de su devolución.
- Cualquier anomalía con la calidad o la cantidad de artículos deberá ser comunicada a la mayor brevedad posible, después de la entrega.
- El **subcontratado**, será el responsable del almacenamiento, se hará cargo de las mercancías, pertenecientes al contratante, en caso de robo, incendio, daños por inundaciones y otros percances debidos a las actividades de la fábrica
- El **subcontratado** nunca será responsable de la pérdida de actividad de las mercancías, siempre y cuando se hayan respetado las condiciones de fabricación, conservación y almacenamiento indicadas por el **contratante**.
- El **subcontratado** será responsable de la fabricación siempre que el subcontratado incumpla con los protocolos de fabricación aportados por el **contratante**.

**ARTICULO 2: RESPONSABILIDADES**

- El *contratante*, después de efectuar los controles necesarios en el producto a entregar y de examinar el dossier de cada lote, compromete su responsabilidad farmacéutica en lo que se refiere a la liberación final del producto terminado.

  El *subcontratado*, BELMAC, debe abastecer al *contratante*, ETHYPHARM, una copia de las certificado de cumplimiento de las "Good Manufacturing Practices" (GMPs).



VINCAMINA 30 mg

CONFIDENTIAL
EP 008115

A-23

4 / 4

- El *subcontratado*, BELMAC, asume la responsabilidad de las operaciones listadas en el párrafo 1.2 y se compromete a realizarlas o a hacerlas realizar conforme:
- A las instrucciones del *contratante*:
- A las exigencias farmacéuticas surgiendo de las autoridades locales
- A las recomendaciones GMP vigente en Europa.

- El *subcontratado* se compromete a informar al *contratante* de las actividades de fabricación realizadas y de cualquier incidente que afecte al lote. Debiendo en ese caso reflejar en el dossier de fabricación del lote, la incidencia detectada.

- En caso de no-conformidad, el *subcontratado* informará al *contratante* y éste decidirá sobre las posibles soluciones. En caso de que el *subcontratado* cumpla el proceso y no se obtenga el rendimiento esperado las partes intentarán resolver el problema efectuando un análisis de las condiciones de producción para definir las responsabilidades.

- El *contratante* podrá realizar auditorias de calidad en los locales del *subcontratado* a fin de verificar in-situ las condiciones del subcontrato, a condición que anuncie su visita de antemano.

- El *subcontratado* se obliga a tener una póliza de seguro que cubra cualquier daño producido a la mercancía almacenada en sus instalaciones y que sea propiedad del *contratante*.

---

**ARTICULO 3 - CONDICIONES COMERCIALES**

Los precios, condiciones de pago y plazos se fijarán en cada pedido emitido por el *contratante*.

Mensualmente el *subcontratado* emitirá un planning de entregas conforme a un programa de fabricación en base a los pedidos que el **contratante** solicite. Contratante y **subcontratado** ajustarán dicho plan en base a las capacidades de producción y prioridades de entrega.

El *subcontratado* emitirá, a la recepción de cada pedido, un acuse de recibo del pedido indicando la fecha estimada de entrega.

Ambas partes se comprometen a guardar confidencialidad de toda la información que se pueda intercambiar en relación con esta fabricación.

El presente contrato está sometido al Derecho Español. Cualquier litigio derivado de este contrato se someterá a los Tribunales de Justicia Españoles.

Cualquier modificación del presente contrato deberá ser objeto de un acuerdo previo escrito, entre las dos partes.

Este será valido durante dos años a partir de la fecha de emisión, y siendo renovable tácitamente por el mismo periodo si ninguna de las partes indica lo contrario por escrito. Ambas partes se reservan el derecho de rescindir este contrato si una de las partes no cumple con las responsabilidades definidas en este contrato.

Por ETHYPHARM S.A.                    Por los Laboratorios BELMAC

En MADRID, a 22 de *Mar* de 2000 (dos copias).
VINCAMINA 30 mg

CONFIDENTIAL
EP 008116

A-24



Between:
**ETHYPHARM S.A.**
Centro Colón
Marqués de la Ensenada, 16
28004 MADRID

hereinafter, Contractor, represented by          **Mr. Adolfo de BASILIO**
acting in his capacity as                        **General Director**

And:

**Laboratorios BELMAC**
Montearagón, 9
28033 MADRID

hereinafter *Subcontracted Party* or *Manufacturer*, represented by      **Mr. Adolfo HERRERA**
acting in his capacity as                                                **General Director**

Regarding the subcontracted manufacturing orders of bulk microgranules composed of
pharmaceutical active ingredients, made by *Contractor* to *Subcontracted Party*.

| SECTION 1: NATURE OF THE SERVICE |
|---|

### 1.1. Products

*Contractor* entrusts *Subcontracted Party* the pharmaceutical operations of the manufacturing
of pharmaceutical microgranules; the final products are products semi-elaborated for
pharmaceutical companies for human services.

Manufacturing operations shall be performed in the plant of Laboratorios BELMAC- Polígono
Malpica c/ C nº 4; 50016- ZARAGOZA (Spain).

Subcontracted orders include, but are not limited to, the following pharmaceutical products:

-VINCAMINE bulk microgranules (for dosages of 30 mg)

Every new product shall be previously accepted by *Subcontracted Party*.

The final client shall have a Commercialization Permit or Authorization.



### 1.2. Pharmaceutical Operations

*Contractor* delegates *Subcontracted Party* the following pharmaceutical operations:



VINCAMINE 30 mg                                    CONFIDENTIAL
                                                   EP 008114
                 Rough Translation for use by Attorneys During Depositions
      May not be Submitted to Court without Permission of Edwards Angell Palmer & Dodge, LLP

### 1.2.1 Identification and Control of Raw Materials made by Subcontracted Party

Provided by *Contractor*
- Reference identification of the goods provided by *Contractor* in comparison with packing list.
- Verification of the integrity of containers for excipients and active ingredients.

The identification of lots of excipients and active ingredients is not necessary at the moment of reception; containers are hermetically sealed by *Contractor* with a security seal, which must be opened only at the moment of manufacturing.
*Subcontracted Party* shall take samples under conditions that prevent any product contamination.

Provided by *Subcontracted Party*
- Necessary excipients shall be detailed on the Manufacturing Protocol
- *Subcontracted Party* evaluates these excipients which shall comply with Pharmacopeial specifications and/ or specifications established by *Contractor*.

### 1.2.2 Manufacturing Operations:
- Manufacturing shall be performed according to the protocol entitled "Dossier of Microgranule Lot," standardized pursuant to the internal procedure of *Subcontracted Party* and pursuant to the unit formula detailed in the Manufacturing Protocol.

### 1.2.3 Preparation of Bulk Microgranules

- Bulk microgranules shall be prepared in two polyethylene sacks.
- Presentation:
        - Two polyethylene sacks closed with a seal
        - Net weight of each drum shall be indicated for each order and shall be approximately 45 kg.
        - The plastic drum shall have a BELMAC label indicating:
            -Product Name
            - Product Code
            - Date of Manufacture
            - Lot Number
            - Name and Address of Sender
            - Name and Address of Consignee

        - Coated drum with security seal
        - Palletization according to order indications

### 1.2.4 Lot Release

- The microgranules shall comply with all the stages detailed in the manufacturing procedure.
- Lot Release; manufacturing of microgranules shall be performed according to the Manufacturing Protocol and the certificates of analysis signed by the pharmacist representing *Subcontracted Party*

NICAMINE 30 mg

CONFIDENTIAL
EP 008114
Rough Translation for use by Attorneys During Depositions
May not be Submitted to Court without Permission of Edwards Angell Palmer & Dodge, LLP

<u>1.2.5 Deliveries to *Contractor*</u>

Pursuant to specifications detailed on the order.

**1.3 Documentation**

*Contractor* shall give the following documents to *Subcontracted Party*:

- Order indicating lot numbers for the respective microgranules.
- Analysis bulletins of active ingredients and excipients provided by *Contractor*
- Temporary cleaning precautions
- Packing list of goods
- Analytical methods and specifications of semi-elaborated products

*Subcontracted Party* shall provide the following documents to *Contractor*:

- Complete copy of the manufacturing dossier of each lot manufactured with a quantitative balance
- Analysis bulletin of the product semi-elaborated pursuant to specifications provided by *Contractor*, indicating its conformity.
- *Subcontracted Party* shall give *Contractor* the information about net weight, gross weight per drum, lot number, and references of the delivered semi-elaborated products.

This documentation shall be delivered along with the goods or to the place determined by *Contractor*.

**1.4 Provision of Goods**

- *Contractor* delivers goods in containers sealed with adhesive tape or a security seal.
- *Subcontracted Party* shall deliver the finished product according to the instructions for preparation.
In case of exceptional return (e.g. active ingredient), *Subcontracted Party* shall clearly detail the return with a label indicating reference, quantity, lot number, and reason for return.
- Any irregularity regarding quality or quantity of goods must be informed of as soon as possible, after the delivery.
- *Subcontracted Party* shall be liable for the storage, the goods belonging to *Contractor* in case of robbery, fire, damages resulting from floods and other incidents resulting from manufacturing activities.
- *Subcontracted Party* shall never be liable for the activity loss of goods as long as manufacturing, maintenance and storage conditions established by *Contractor* have been complied with.
- *Subcontracted Party* shall be liable for the manufacturing if it does not comply with the Manufacturing Protocols provided by *Contractor*.

| SECTION 2: RESPONSIBILITIES |

- *Contractor*, after performing the necessary controls on the product to be delivered and after examining the dossier for each lot, becomes pharmaceutically liable for the final release of the finished product.
*Subcontracted Party*, BELMAC, shall provide to *Contractor*, ETHYPHARM, a copy of the certificate of conformity with the "Good Manufacturing Practices" (GMPs).

VINCAMINE 30 mg

CONFIDENTIAL
EP 008115
Rough Translation for use by Attorneys During Depositions
May not be Submitted to Court without Permission of Edwards Angell Palmer & Dodge, LLP

• **Subcontracted Party**, BELMAC, shall be liable for the operations mentioned in Paragraph 1.2 and agrees to perform them pursuant to:
- **Contractor**'s instructions
- Pharmaceutical requirements from local authorities
- Current GMP recommendations in Europe.

• **Subcontracted Party** agrees to give notice to **Contractor** of the manufacturing activities performed and of any incident affecting the lot. For this reason, the dossier of lot manufacturing shall indicate the detected incident.

• In case of non-conformity, **Subcontracted Party** shall give notice to **Contractor** and **Contractor** shall determine the possible solutions. If **Subcontracted Party** complies with the process, and the expected performance is not achieved, the parties shall try to solve the problem by means of an analysis of production conditions in order to determine the responsibilities.

• Contractor, after giving notice of the visit, shall be able to perform quality auditing in the offices of Subcontracted Party in order to verify in-situ the subcontract conditions.

• **Subcontracted Party** agrees to have an insurance policy covering damages of goods stored in its facilities and which belong to **Contractor**.

---

## SECTION 3: COMMERCIAL CONDITIONS

Prices, payment conditions, and terms shall be determined in each **Contractor**'s order.

Every month, **Subcontracted Party** shall issue an order planning, according to a manufacturing program, based on **Contractor**'s orders. **Contractor** and **Subcontracted Party** shall adjust such planning considering production capacities and priority of delivery.

**Subcontracted Party** shall issue, upon reception of each order, an acknowledgement of receipt indicating an estimated date of delivery.

Both parties agree to keep strict confidentiality about the information shared in this manufacturing process.

This agreement is subject to Spanish Law. Any suit resulting from this agreement shall be resolved by the Judicial Courts of Spain.

Any modification to this agreement shall be previously agreed to by both parties by means of a written document.

This agreement shall be valid for the term of two years from the date of issuance and can be tacitly renewed for the same period of time if not otherwise stated in writing by any party. Both parties reserve their right to terminate this agreement in case one of the parties does not comply with the liabilities established in this agreement.

By: ETHYPHARM S.A.                    By Laboratories BELMAC

MADRID, March 23rd, 2000 (two copies)

VINCAMINE 30 mg                                    CONFIDENTIAL
EP 008116
Rough Translation for use by Attorneys During Depositions
May not be Submitted to Court without Permission of Edwards Angell Palmer & Dodge, LLP

A-28



1 / 4

**CONTRATO DE FABRICACIÓN DE ASPIRINA MICROGRÁNULOS**

Entre :

**ETHYPHARM S.A.**
Centro Colon
Marqués de la Ensenada, 16
28004 MADRID

el *contratante*, representado por          **Don Adolfo de BASILIO**
actuando en calidad de                      **Director General**

Y :

**Laboratorios BELMAC**
Montearagón, 9
28033 MADRID

el *subcontratado o fabricante*, representado por     **Don Adolfo HERRERA**
actuando en calidad de                                **Director General**

Referente a los pedidos subcontratados de fabricación de microgránulos a granel a base de ingredientes activos farmacéuticos, efectuados por el *contratante* al *subcontratado*.

**ARTICULO 1: NATURALEZA DE LA PRESTACIÓN**

**1.1 - Productos**

El *contratante* confía al *subcontratado* las operaciones farmacéuticas de fabricación de los lotes de microgránulos farmacéuticos: los productos finales son productos semielaborados para especialidades farmacéuticas humanas.

Las operaciones de fabricación se realizarán en la fábrica de los laboratorios BELMAC - Polígono Malpica c/ C nº 4; 50016 - ZARAGOZA (España).

Los pedidos subcontratados conciernen de manera no exclusiva a los siguientes productos farmacéuticos:

-ASPIRINA microgránulos a granel (para dosificaciones de 150-300 mg)

Cada nuevo producto deberá ser de antemano aceptado por el *subcontratado*.

El cliente final deberá disponer de una Autorización de Comercialización o licencia.

**1.2 Operaciones farmacéuticas**

El *contratante* delega al *subcontratado* las operaciones farmacéuticas siguientes:

ASPIRINA 150-300 mg

EXHIBIT
TONNESSE
No. 12
7-20-6

CONFIDENTIAL
EP 008108

A-29

### 1.2.1 Identificación y control de las materias primas por el subcontratado

Facilitados por el *contratante*
- Identificación de las referencias de los artículos abastecidos por el *contratante* en comparación con la lista de embarque.
- Verificación de la integridad de los recipientes que contienen los excipientes y los principios activos.

No se requiere la identificación de los lotes de excipientes y de principios activos a la recepción: los recipientes están herméticamente sellados por el *contratante* con un precinto de inviolabilidad, debiéndose solo abrir cuando vaya a proceder a la fabricación.
El *subcontratado* deberá hacer una toma de muestras en condiciones que eviten cualquier contaminación del producto.

Facilitados por el *subcontratado*
- Los excipientes necesarios deben estar descritos en protocolo de fabricación.
- El *subcontratado* analiza estos excipientes que deberán ser conformes con las especificaciones de la Farmacopea y/o aportadas por el contratante.

### 1.2.2 Operaciones de fabricación :

- La fabricación se llevará a cabo según el protocolo titulado "Dossier de lote de Microgránulos": normalizado según procedimiento interno del subcontratado; y de acuerdo a la fórmula unitaria descrita en el protocolo de fabricación.

### 1.2.3 Acondicionamiento de microgranulos a granel

- Los microgránulos a granel serán acondicionadas en dos bolsas de polietileno.
- Presentación:
  - Doble bolsa de polietileno cerrada con un precinto
  - El peso neto de cada bidón, deberá ser indicado en cada pedido, y será alrededor de 45 Kg
  - En un bidón de plástico con una etiqueta BELMAC donde se describa:
    - Nombre del producto
    - Código producto
    - Fecha de fabricación
    - Numero de lote
    - Tara
    - Peso neto
    - Nombre y dirección del remitente
    - Nombre y dirección del destinatario

  - Bidón revestido y con precinto de inviolabilidad

  - Paletización según indicaciones del pedido.

### 1.2.4 Liberación del lote

- Los microgránulos deben cumplir con todas las etapas descritas en el procedimiento de fabricación.
- Liberación del lote; en lo que concierne a la fabricación de los microgranulos se hará en base al protocolo de fabricación y certificados analíticos firmados por el farmacéutico responsable del subcontratado.

ASPIRINA 150-300 mg

CONFIDENTIAL
EP 008109