3 / 4

### 1.2.5 Entregas al contratante

Según las modalidades descritas en el pedido.

### 1.3 Documentación

El *contratante* proporcionará al *subcontratado* los documentos siguientes:

- Pedido mencionando los números de lote con los que se corresponderán los microgránulos.
- Boletines de análisis de los principios activos y de los excipientes provistos por el **contratante**
- Precauciones eventuales de limpieza
- Lista de embarque de las mercancías
- Métodos analíticos y especificaciones del producto semielaborado

El *subcontratado* proporcionará al *contratante* los documentos siguientes:

- Copia íntegra del dossier de fabricación de cada lote fabricado con un balance cuantitativo.
- Boletín de análisis del producto semielaborado de acuerdo con las especificaciones proporcionadas por el contratante, especificando la conformidad
- El subcontratado proporcionará al contratante el peso neto, peso bruto por bidón, nº de lote y referencias de los productos semielaborados entregados.

Esta documentación será remitida con la mercancía, o enviada donde lo solicite el **contratante**.

### 1.4 Suministro de las mercancías

- El contratante entrega las materias en contenedores sellados con cinta adhesiva o precinto.
- El subcontratado entregará el producto terminado, según las instrucciones de acondicionamiento. En caso de devolución excepcional (por ejemplo principio activo) el **subcontratado** especificará claramente la devolución con una etiqueta mencionando la referencia, la cantidad y el nº de lote y la razón de su devolución.
- Cualquier anomalía con la calidad o la cantidad de artículos deberá ser comunicada a la mayor brevedad posible, después de la entrega.
- El subcontratado, será el responsable del almacenamiento, se hará cargo de las mercancías, pertenecientes al contratante, en caso de robo, incendio, daños por inundaciones y otros percances debidos a las actividades de la fabrica
- El subcontratado nunca será responsable de la perdida de actividad de las mercancías, siempre y cuando se hayan respetado las condiciones de fabricación, conservación y almacenamiento indicadas por el contratante.
- El subcontratado será responsable de la fabricación siempre que el **subcontratado** incumpla con los protocolos de fabricación aportados por el **contratante**.

---

### ARTICULO 2: RESPONSABILIDADES

- El *contratante*, después de efectuar los controles necesarios en el producto a entregar y de examinar el dossier de cada lote, compromete su responsabilidad farmacéutica en lo que se refiere a la liberación final del producto terminado.

  El *subcontratado*, BELMAC, debe abastecer al *contratante*, ETHYPHARM, una copia de las certificado de cumplimiento de las "Good Manufacturing Practices" (GMPs).

ASPIRINA 150-300 mg

CONFIDENTIAL
EP 008110

A-31

4 / 4

- El *subcontratado*, BELMAC, asume la responsabilidad de las operaciones listadas en el párrafo 1.2 y se compromete a realizarlas o a hacerlas realizar conforme:
- A las instrucciones del *contratante*:
- A las exigencias farmacéuticas surgiendo de las autoridades locales
- A las recomendaciones GMP vigente en Europa.

- El *subcontratado* se compromete a informar al *contratante* de las actividades de fabricación realizadas y de cualquier incidente que afecte al lote. Debiendo en ese caso reflejar en el dossier de fabricación del lote, la incidencia detectada.

- En caso de no-conformidad, el *subcontratado* informará al *contratante* y éste decidirá sobre las posibles soluciones. En caso de que el *subcontratado* cumpla el proceso y no se obtenga el rendimiento esperado las partes intentarán resolver el problema efectuando un análisis de las condiciones de producción para definir las responsabilidades.

- El *contratante* podrá realizar auditorias de calidad en los locales del *subcontratado* a fin de verificar in-situ las condiciones del subcontrato, a condición que anuncie su visita de antemano.

- El *subcontratado* se obliga a tener una póliza de seguro que cubra cualquier daño producido a la mercancía almacenada en sus instalaciones y que sea propiedad del *contratante*.

| ARTICULO 3 - CONDICIONES COMERCIALES |
|---|

Los precios, condiciones de pago y plazos se fijarán en cada pedido emitido por el *contratante*.

Mensualmente el *subcontratado* emitirá un planning de entregas conforme a un programa de fabricación en base a los pedidos que el **contratante** solicite. **Contratante** y **subcontratado** ajustarán dicho plan en base a las capacidades de producción y prioridades de entrega.

El *subcontratado* emitirá, a la recepción de cada pedido, un acuse de recibo del pedido indicando la fecha estimada de entrega.

Ambas partes se comprometen a guardar confidencialidad de toda la información que se pueda intercambiar en relación con esta fabricación.

El presente contrato está sometido al Derecho Español. Cualquier litigio derivado de este contrato se someterá a los Tribunales de Justicia Españoles.

Cualquier modificación del presente contrato deberá ser objeto de un acuerdo previo escrito, entre las dos partes.

Este será válido durante dos años a partir de la fecha de emisión, y siendo renovable tácitamente por el mismo periodo si ninguna de las partes indica lo contrario por escrito. Ambas partes se reservan el derecho de rescindir este contrato si una de las partes no cumple con las responsabilidades definidas en este contrato.

Por ETHYPHARM,S.A.                           Por los Laboratorios BELMAC

En MADRID, a 23 de Mayo de 2000 (dos copias).
ASPIRINA 150-300 mg

CONFIDENTIAL
EP 008111

A-32



Between:
**ETHYPHARM S.A.**
Centro Colón
Marqués de la Ensenada, 16
28004 MADRID

hereinafter, Contractor, represented by              **Mr. Adolfo de BASILIO**
acting in his capacity as                                      **General Director**

And:

**Laboratorios BELMAC**
Montearagón, 9
28033 MADRID

hereinafter *Subcontracted Party* or *Manufacturer*, represented by      **Mr. Adolfo HERRERA**
acting in his capacity as                                                  **General Director**

Regarding the subcontracted manufacturing orders of bulk microgranules composed of
pharmaceutical active ingredients, made by *Contractor* to *Subcontracted Party*.

---
**SECTION 1: NATURE OF THE SERVICE**
---

**1.1. Products**

*Contractor* entrusts *Subcontracted Party* the pharmaceutical operations of the manufacturing
of pharmaceutical microgranules; the final products are products semi-elaborated for
pharmaceutical companies for human services.

Manufacturing operations shall be performed in the plant of Laboratorios BELMAC- Polígono
Malpica c/ C n° 4; 50016- ZARAGOZA (Spain).

Subcontracted orders include, but are not limited to, the following pharmaceutical products:

> -ASPIRINE bulk microgranules (for dosages of 150-300 mg)

Every new product shall be previously accepted by *Subcontracted Party*.

The final client shall have a Commercialization Permit or Authorization.

**1.2. Pharmaceutical Operations**

*Contractor* delegates *Subcontracted Party* the following pharmaceutical operations:

ASPIRINE 150-300 mg                                      CONFIDENTIAL
                                                          EP 008108
Rough Translation for use by Attorneys During Depositions
May not be Submitted to Court without Permission of Edwards Angell Palmer & Dodge, LLP

A-33

### 1.2.1 Identification and Control of Raw Materials by Subcontracted Party

Provided by *Contractor*
- Reference identification of the goods provided by *Contractor* in comparison with packing list.
- Verification of the integrity of containers for excipients and active ingredients.

The identification of lots of excipients and active ingredients is not necessary at the moment of reception; containers are hermetically sealed by *Contractor* with a security seal, which must be opened only at the moment of manufacturing.
*Subcontracted Party* shall take samples under conditions that prevent any product contamination.

Provided by *Subcontracted Party*
- Necessary excipients shall be detailed on the Manufacturing Protocol
- *Subcontracted Party* evaluates these excipients which shall comply with Pharmacopeial specifications and/ or specifications established by *Contractor*.

### 1.2.2 Manufacturing Operations:
- Manufacturing shall be performed according to the protocol entitled "Dossier of Microgranule Lot," standardized pursuant to the internal procedure of *Subcontracted Party* and pursuant to the unit formula detailed in the Manufacturing Protocol.

### 1.2.3 Preparation of Bulk Microgranules

- Bulk microgranules shall be prepared in two polyethylene sacks.
- Presentation:
        - Two polyethylene sacks closed with a seal
        - Net weight of each drum shall be indicated for each order and shall be approximately 45 kg.
        - The plastic drum shall have a BELMAC label indicating:
            -Product Name
            - Product Code
            - Date of Manufacture
            - Lot Number
            - Gross Weight
            - Net Weight
            - Name and Address of Sender
            - Name and Address of Consignee



        - Coated drum with security seal
        - Palletization according to order indications

### 1.2.4 Lot Release

- The microgranules shall comply with all the stages detailed in the manufacturing procedure.
- Lot Release; manufacturing of microgranules shall be performed according to the Manufacturing Protocol and the certificates of analysis signed by the pharmacist representing *Subcontracted Party.*

:INE 150-300 mg

CONFIDENTIAL
EP 008109
Rough Translation for use by Attorneys During Depositions
May not be Submitted to Court without Permission of Edwards Angell Palmer & Dodge, LLP

A-34

<u>1.2.5 Deliveries to *Contractor*</u>

Pursuant to specifications detailed on the order.

**1.3 Documentation**

*Contractor* shall give the following documents to *Subcontracted Party*:

- Order indicating lot numbers for the respective microgranules.
- Analysis bulletins of active ingredients and excipients provided by *Contractor*
- Temporary cleaning precautions
- Packing list of goods
- Analytical methods and specifications of semi-elaborated products

*Subcontracted Party* shall provide the following documents to *Contractor*:

- Complete copy of the manufacturing dossier of each lot manufactured with a quantitative balance
- Analysis bulletin of the product semi-elaborated pursuant to specifications provided by *Contractor*, indicating its conformity.
- *Subcontracted Party* shall give *Contractor* the information about net weight, gross weight per drum, lot number, and references of the delivered semi-elaborated products.

This documentation shall be delivered along with the goods or to the place determined by *Contractor*.

**1.4 Provision of Goods**

- *Contractor* delivers goods in containers sealed with adhesive tape or a security seal.
- *Subcontracted Party* shall deliver the finished product according to the instructions for preparation.
In case of exceptional return (e.g. active ingredient), *Subcontracted Party* shall clearly detail the return with a label indicating reference, quantity, lot number, and reason for return.
- Any irregularity regarding quality or quantity of goods must be informed of as soon as possible, after the delivery.
- *Subcontracted Party* shall be liable for storage, and will be responsible for goods belonging to *Contractor* in case of robbery, fire, damages resulting from floods and other incidents resulting from manufacturing activities.
- *Subcontracted Party* shall never be liable for the activity loss of goods as long as manufacturing, maintenance and storage conditions established by *Contractor* have been complied with.
- *Subcontracted Party* shall be liable for the manufacturing if it does not comply with the Manufacturing Protocols provided by *Contractor*.



| **SECTION 2: RESPONSIBILITIES** |

• *Contractor*, after performing the necessary controls on the product to be delivered and after examining the dossier for each lot, becomes pharmaceutically liable for the final release of the finished product.
*Subcontracted Party*, BELMAC, shall provide to *Contractor*, ETHYPHARM, a copy of the certificate of conformity with the "Good Manufacturing Practices" (GMPs).

ASPIRINE 150-300 mg

CONFIDENTIAL
EP 008111
Rough Translation for use by Attorneys During Depositions
May not be Submitted to Court without Permission of Edwards Angell Palmer & Dodge, LLP

A-35

• *Subcontracted Party*, BELMAC, shall be liable for the operations mentioned in Paragraph 1.2 and agrees to perform them pursuant to:
- *Contractor*'s instructions
- Pharmaceutical requirements from local authorities
- Current GMP recommendations in Europe.

• *Subcontracted Party* agrees to give notice to *Contractor* of the manufacturing activities performed and of any incident affecting the lot. In that case, the dossier of lot manufacturing shall indicate the detected incident.

• In case of non-conformity, *Subcontracted Party* shall give notice to *Contractor* and *Contractor* shall determine the possible solutions. If *Subcontracted Party* complies with the process, and the expected performance is not achieved, the parties shall try to solve the problem by means of an analysis of production conditions in order to determine the responsibilities.

• Contractor, after giving notice of the visit, shall be able to perform quality auditing in the offices of Subcontracted Party in order to verify in-situ the subcontract conditions.

• *Subcontracted Party* agrees to have an insurance policy covering damages of goods stored in its facilities and which belong to *Contractor.*

---

### SECTION 3: COMMERCIAL CONDITIONS

Prices, payment conditions, and terms shall be determined in each *Contractor*'s order.

Every month, *Subcontracted Party* shall issue a delivery plan in accordance with a manufacturing program, based on *Contractor*'s orders. *Contractor* and *Subcontracted Party* shall adjust such planning considering production capacities and priority of delivery.

*Subcontracted Party* shall issue, upon reception of each order, an acknowledgement of receipt indicating an estimated date of delivery.

Both parties agree to keep strict confidentiality about the information shared in this manufacturing process.

This agreement is subject to Spanish Law. Any suit resulting from this agreement shall be resolved by the Judicial Courts of Spain.

Any modification to this agreement shall be previously agreed to by both parties by means of a written document.

This agreement shall be valid for the term of two years from the date of issuance and can be tacitly renewed for the same period of time if not otherwise stated in writing by any party. Both parties reserve their right to terminate this agreement in case one of the parties does not comply with the liabilities established in this agreement.

By: **ETHYPHARM S.A.**                    By **Laboratorios BELMAC**

MADRID, March 23rd, 2000 (two copies)

ASPIRINE 150-300 mg                          CONFIDENTIAL
EP 008111
Rough Translation for use by Attorneys During Depositions
May not be Submitted to Court without Permission of Edwards Angell Palmer & Dodge, LLP

A-36

## CONTRATO DE FABRICACIÓN DE PIROXICAM MICROGRÁNULOS

Entre :

**ETHYPHARM S.A.**
Centro Colon
Marqués de la Ensenada, 16
28004 MADRID

el *contratante*, representado por              **Don Adolfo de BASILIO**
actuando en calidad de                          **Director General**

Y :

**Laboratorios BELMAC**
Montearagón, 9
28033 MADRID

el *subcontratado o fabricante*, representado por    **Don Adolfo HERRERA**
actuando en calidad de                              **Director General**

Referente a los pedidos subcontratados de fabricación de microgránulos a granel a base de ingredientes activos farmacéuticos, efectuados por el *contratante* al *subcontratado*.

---

### ARTICULO 1: NATURALEZA DE LA PRESTACIÓN

**1.1 - Productos**

El *contratante* confia al *subcontratado* las operaciones farmacéuticas de fabricación de los lotes de microgránulos farmacéuticos: los productos finales son productos semielaborados para especialidades farmacéuticas humanas.

Las operaciones de fabricación se realizarán en la fábrica de los laboratorios BELMAC - Polígono Malpica c/ C n° 4; 50016 - ZARAGOZA (España).

Los pedidos subcontratados conciernen de manera no exclusiva a los siguientes productos farmacéuticos:

- **PIROXICAM** microgránulos a granel (para dosificaciones de 20 mg)

Cada nuevo producto deberá ser de antemano aceptado por el *subcontratado*.

El cliente final deberá disponer de una Autorización de Comercialización o licencia.

**1.2 Operaciones farmacéuticas**

El *contratante* delega al *subcontratado* las operaciones farmacéuticas siguientes:

Piroxicam 20 mg

EXHIBIT

CONFIDENTIAL
EP 008103

A-37

### 1.2.1 Identificación y control de las materias primas por el subcontratado

**Facilitados por el *contratante***
- Identificación de las referencias de los artículos abastecidos por el *contratante* en comparación con la lista de embarque.
- Verificación de la integridad de los recipientes que contienen los excipientes y los principios activos.

No se requiere la identificación de los lotes de excipientes y de principios activos a la recepción: los recipientes están herméticamente sellados por el *contratante* con un precinto de inviolabilidad, debiéndose solo abrir cuando vaya a proceder a la fabricación.
El *subcontratado* deberá hacer una toma de muestras en condiciones que eviten cualquier contaminación del producto.

**Facilitados por el *subcontratado***
- Los excipientes necesarios deben estar descritos en protocolo de fabricación.
- El *subcontratado* analiza estos excipientes que deberán ser conformes con las especificaciones de la Farmacopea y/o aportadas por el contratante.

### 1.2.2 Operaciones de fabricación :

- La fabricación se llevará a cabo según el protocolo titulado "Dossier de lote de Microgránulos": normalizado según procedimiento interno del subcontratado; y de acuerdo a la fórmula unitaria descrita en el protocolo de fabricación.

### 1.2.3 Acondicionamiento de microgránulos a granel

- Los microgránulos a granel serán acondicionadas en dos bolsas de polietileno.
- Presentación:
    - Doble bolsa de polietileno cerrada con un precinto
    - El peso neto de cada bidón, deberá ser indicado en cada pedido, y será alrededor de 45 Kg
    - En un bidón de plástico con una etiqueta BELMAC donde se describa:
        - Nombre del producto
        - Código producto
        - Fecha de fabricación
        - Numero de lote
        - Tara
        - Peso neto
        - Nombre y dirección del remitente
        - Nombre y dirección del destinatario

    - Bidón revestido y con precinto de inviolabilidad

    - Paletización según indicaciones del pedido.

### 1.2.4 Liberación del lote

- Los microgránulos deben cumplir con todas las etapas descritas en el procedimiento de fabricación.
- Liberación del lote; en lo que concierne a la fabricación de los microgranulos se hará en base al protocolo de fabricación y certificados analíticos firmados por el farmacéutico responsable del subcontratado.



Piroxicam 20 mg

CONFIDENTIAL
EP 008104

3 / 4

### 1.2.5 Entregas al contratante

Según las modalidades descritas en el pedido.

### 1.3 Documentación

El *contratante* proporcionará al *subcontratado* los documentos siguientes:

- Pedido mencionando los números de lote con los que se corresponderán los microgránulos,
- Boletines de análisis de los principios activos y de los excipientes provistos por el **contratante**
- Precauciones eventuales de limpieza
- Lista de embarque de las mercancías
- Métodos analíticos y especificaciones del producto semielaborado

El *subcontratado* proporcionará al *contratante* los documentos siguientes:

- Copia integra del dossier de fabricación de cada lote fabricado con un balance cuantitativo,
- Boletín de análisis del producto semielaborado de acuerdo con las especificaciones proporcionadas por el contratante, especificando la conformidad
- El **subcontratado** proporcionará al **contratante** el peso neto, peso bruto por bidón, n° de lote y referencias de los productos semielaborados entregados.

Esta documentación será remitida con la mercancía, o enviada donde lo solicite el **contratante**.

### 1.4 Suministro de las mercancías

- El contratante entrega las materias en contenedores sellados con cinta adhesiva o precinto.
- El **subcontratado** entregará el producto terminado, según las instrucciones de acondicionamiento. En caso de devolución excepcional (por ejemplo principio activo) el **subcontratado** especificará claramente la devolución con una etiqueta mencionando la referencia, la cantidad y el n° de lote y la razón de su devolución.
- Cualquier anomalía con la calidad o la cantidad de artículos deberá ser comunicada a la mayor brevedad posible, después de la entrega.
- El **subcontratado**, será el responsable del almacenamiento, se hará cargo de las mercancías, pertenecientes al contratante, en caso de robo, incendio, daños por inundaciones y otros percances debidos a las actividades de la fabrica
- El **subcontratado** nunca será responsable de la perdida de actividad de las mercancías, siempre y cuando se hayan respetado las condiciones de fabricación, conservación y almacenamiento indicadas por el **contratante**.
- El **subcontratado** será responsable de la fabricación siempre que el **subcontratado** incumpla con los protocolos de fabricación aportados por el **contratante**.

### ARTICULO 2: RESPONSABILIDADES

- El *contratante*, después de efectuar los controles necesarios en el producto a entregar y de examinar el dossier de cada lote, compromete su responsabilidad farmacéutica en lo que se refiere a la liberación final del producto terminado.

  El *subcontratado*, BELMAC, debe abastecer al *contratante*, ETHYPHARM, una copia de las certificado de cumplimiento de las "Good Manufacturing Practices" (GMPs).



Piroxicam 20 mg

CONFIDENTIAL
EP 008105

A-39

4 / 4

- El *subcontratado*, BELMAC, asume la responsabilidad de las operaciones listadas en el párrafo 1.2 y se compromete a realizarlas o a hacerlas realizar conforme:
- A las instrucciones del *contratante*:
- A las exigencias farmacéuticas surgiendo de las autoridades locales
- A las recomendaciones GMP vigente en Europa.

- El *subcontratado* se compromete a informar al *contratante* de las actividades de fabricación realizadas y de cualquier incidente que afecte al lote. Debiendo en ese caso reflejar en el dossier de fabricación del lote, la incidencia detectada.

- En caso de no-conformidad, el *subcontratado* informará al *contratante* y éste decidirá sobre las posibles soluciones. En caso de que el *subcontratado* cumpla el proceso y no se obtenga el rendimiento esperado las partes intentarán resolver el problema efectuando un análisis de las condiciones de producción para definir las responsabilidades.

- El *contratante* podrá realizar auditorías de calidad en los locales del *subcontratado* a fin de verificar in-situ las condiciones del subcontrato, a condición que anuncie su visita de antemano.

- El *subcontratado* se obliga a tener una póliza de seguro que cubra cualquier daño producido a la mercancía almacenada en sus instalaciones y que sea propiedad del *contratante*.

## ARTICULO 3 - CONDICIONES COMERCIALES

Los precios, condiciones de pago y plazos se fijarán en cada pedido emitido por el *contratante*.

Mensualmente el *subcontratado* emitirá un planning de entregas conforme a un programa de fabricación en base a los pedidos que el **contratante** solicite. **Contratante** y **subcontratado** ajustarán dicho plan en base a las capacidades de producción y prioridades de entrega.

El *subcontratado* emitirá, a la recepción de cada pedido, un acuse de recibo del pedido indicando la fecha estimada de entrega.

Ambas partes se comprometen a guardar confidencialidad de toda la información que se pueda intercambiar en relación con esta fabricación.

El presente contrato está sometido al Derecho Español. Cualquier litigio derivado de este contrato se someterá a los Tribunales de Justicia Españoles.

Cualquier modificación del presente contrato deberá ser objeto de un acuerdo previo escrito, entre las dos partes.

Este será valido durante dos años a partir de la fecha de emisión, y siendo renovable tácitamente por el mismo periodo si ninguna de las partes indica lo contrario por escrito. Ambas partes se reservan el derecho de rescindir este contrato si una de las partes no cumple con las responsabilidades definidas en este contrato.

Por ETHYPHARM S.A.                          Por los Laboratorios BELMAC

En MADRID, a 23 de Marz de 2000 (dos coplas).
PIROXICAM 20 mg

CONFIDENTIAL
EP 008106

A-40



Between:
**ETHYPHARM S.A.**
Centro Colón
Marqués de la Ensenada, 16
28004 MADRID

hereinafter, Contractor, represented by                    **Mr. Adolfo de BASILIO**
acting in his capacity as                                   **General Director**


And:

**Laboratorios BELMAC**
Montearagón, 9
28033 MADRID

hereinafter *Subcontracted Party* or *Manufacturer*, represented by       **Mr. Adolfo HERRERA**
acting in his capacity as                                                  **General Director**


Regarding the subcontracted manufacturing orders of bulk microgranules composed of
pharmaceutical active ingredients, made by *Contractor* to *Subcontracted Party*.

**SECTION 1: NATURE OF THE SERVICE**

**1.1. Products**

*Contractor* entrusts *Subcontracted Party* the pharmaceutical operations of the manufacturing
of pharmaceutical microgranules; the final products are products semi-elaborated for
pharmaceutical companies for human services.

Manufacturing operations shall be performed in the plant of Laboratorios BELMAC- Polígono
Malpica c/ C nº 4; 50016- ZARAGOZA (Spain).

Subcontracted orders include, but are not limited to, the following pharmaceutical products:

                -PIROXICAM bulk microgranules (for dosages of 20 mg)

Every new product shall be previously accepted by *Subcontracted Party*.

The final client shall have a Commercialization Permit or Authorization.

**1.2. Pharmaceutical Operations**

*Contractor* delegates *Subcontracted Party* the following pharmaceutical operations:



oxicam 20 mg

                                            CONFIDENTIAL
                                            EP 008103
                      Rough Translation for use by Attorneys During Depositions
            May not be Submitted to Court without Permission of Edwards Angell Palmer & Dodge, LLP

A-41

### 1.2.1 Identification and Control of Raw Materials made by Subcontracted Party

Provided by **Contractor**
- Reference identification of the goods provided by **Contractor** in comparison with packing list.
- Verification of the integrity of containers for excipients and active ingredients.

The identification of lots of excipients and active ingredients is not necessary at the moment of reception; containers are hermetically sealed by **Contractor** with a security seal, which must be opened only at the moment of manufacturing.
**Subcontracted Party** shall take samples under conditions that prevent any product contamination.

Provided by **Subcontracted Party**
- Necessary excipients shall be detailed on the Manufacturing Protocol
- **Subcontracted Party** evaluates these excipients which shall comply with Pharmacopeial specifications and/ or specifications established by **Contractor**.

### 1.2.2 Manufacturing Operations:
Manufacturing shall be performed according to the protocol entitled "Dossier of Microgranule Lot," standardized pursuant to the internal procedure of **Subcontracted Party** and pursuant to the unit formula detailed in the Manufacturing Protocol.

### 1.2.3 Preparation of Bulk Microgranules

- Bulk microgranules shall be prepared in two polyethylene sacks.
- Presentation:
    - Two polyethylene sacks closed with a seal
    - Net weight of each drum shall be indicated for each order and shall be approximately 45 kg.
      - The plastic drum shall have a BELMAC label indicating:
        -Product Name
        - Product Code
        - Date of Manufacture
        - Lot Number
        - Name and Address of Sender
        - Name and Address of Consignee



    - Coated drum with security seal
    - Palletization according to order indications

### 1.2.4 Lot Release

- The microgranules shall comply with all the stages detailed in the manufacturing procedure.
- Lot Release; manufacturing of microgranules shall be performed according to the Manufacturing Protocol and the certificates of analysis signed by the pharmacist representing **Subcontracted Party**

Piroxicam 20 mg

CONFIDENTIAL
EP 008104
Rough Translation for use by Attorneys During Depositions
May not be Submitted to Court without Permission of Edwards Angell Palmer & Dodge, LLP

<u>1.2.5 Deliveries to *Contractor*</u>

Pursuant to specifications detailed on the order.

**1.3 Documentation**

*Contractor* shall give the following documents to *Subcontracted Party*:

- Order indicating lot numbers for the respective microgranules.
- Analysis bulletins of active ingredients and excipients provided by *Contractor*
- Temporary cleaning precautions
- Packing list of goods
- Analytical methods and specifications of semi-elaborated products

*Subcontracted Party* shall provide the following documents to *Contractor*:

- Complete copy of the manufacturing dossier of each lot manufactured with a quantitative balance
- Analysis bulletin of the product semi-elaborated pursuant to specifications provided by *Contractor*, indicating its conformity.
- *Subcontracted Party* shall give *Contractor* the information about net weight, gross weight per drum, lot number, and references of the delivered semi-elaborated products.

This documentation shall be delivered along with the goods or to the place determined by *Contractor*.

**1.4 Provision of Goods**

- *Contractor* delivers goods in containers sealed with adhesive tape or a security seal.
- *Subcontracted Party* shall deliver the finished product according to the instructions for preparation.
- In case of exceptional return (e.g. active ingredient), *Subcontracted Party* shall clearly detail the return with a label indicating reference, quantity, lot number, and reason for return.



- Any irregularity regarding quality or quantity of goods must be informed of as soon as possible, after the delivery.
- *Subcontracted Party* shall be liable for the storage, the goods belonging to *Contractor* in case of robbery, fire, damages resulting from floods and other incidents resulting from manufacturing activities.
- *Subcontracted Party* shall never be liable for the activity loss of goods as long as manufacturing, maintenance and storage conditions established by *Contractor* have been complied with.
- *Subcontracted Party* shall be liable for the manufacturing if it does not comply with the Manufacturing Protocols provided by *Contractor*.

| **SECTION 2: RESPONSIBILITIES** |

- *Contractor*, after performing the necessary controls on the product to be delivered and after examining the dossier for each lot, becomes pharmaceutically liable for the final release of the finished product.

*Subcontracted Party*, BELMAC, shall provide to *Contractor*, ETHYPHARM, a copy of the certificate of conformity with the "Good Manufacturing Practices" (GMPs)

Piroxicam 20 mg

CONFIDENTIAL
EP 008105
Rough Translation for use by Attorneys During Depositions
May not be Submitted to Court without Permission of Edwards Angell Palmer & Dodge, LLP

• *Subcontracted Party*, BELMAC, shall be liable for the operations mentioned in Paragraph 1.2 and agrees to perform them pursuant to:
- *Contractor*'s instructions
- Pharmaceutical requirements from local authorities
- Current GMP recommendations in Europe.

• *Subcontracted Party* agrees to give notice to *Contractor* of the manufacturing activities performed and of any incident affecting the lot. For this reason, the dossier of lot manufacturing shall indicate the detected incident.

• In case of non-conformity, *Subcontracted Party* shall give notice to *Contractor* and *Contractor* shall determine the possible solutions. If *Subcontracted Party* complies with the process, and the expected performance is not achieved, the parties shall try to solve the problem by means of an analysis of production conditions in order to determine the responsibilities.

• Contractor, after giving notice of the visit, shall be able to perform quality auditing in the offices of Subcontracted Party in order to verify in-situ the subcontract conditions.

• *Subcontracted Party* agrees to have an insurance policy covering damages of goods stored in its facilities and which belong to *Contractor*.

## SECTION 3: COMMERCIAL CONDITIONS

Prices, payment conditions and terms shall be determined in each *Contractor*'s order.

Every month, *Subcontracted Party* shall issue an order planning, according to a manufacturing program, based on *Contractor*'s orders. *Contractor* and *Subcontracted Party* shall adjust such planning considering production capacities and priority of delivery.

*Subcontracted Party* shall issue, upon reception of each order, an acknowledgement of receipt indicating an estimated date of delivery.

Both parties agree to keep strict confidentiality about the information shared in this manufacturing process.

This agreement is subject to Spanish Law. Any suit resulting from this agreement shall be resolved by the Judicial Courts of Spain.

Any modification to this agreement shall be previously agreed to by both parties by means of a written document.

This agreement shall be valid for the term of two years from the date of issuance and can be tacitly renewed for the same period of time if not otherwise stated in writing by any party. Both parties reserve their right to terminate this agreement in case one of the parties does not comply with the liabilities established in this agreement.

By: ETHYPHARM S.A.                          By Laboratorios BELMAC

MADRID, March 23rd, 2000 (two copies)


Piroxicam 20 mg                                              CONFIDENTIAL
                                                                    EP 008106
Rough Translation for use by Attorneys During Depositions
May not be Submitted to Court without Permission of Edwards Angell Palmer & Dodge, LLP

A-44

25.10'2004 13:45  +916520144          BELMAC                    #5336 P.003/005



Laboratorios Belmac, S.A.

LABORATORIOS ETHYPHARM, S.A.
D. Adolfo de Basilio
C/ Marqués de la Ensenada, 16
28004 MADRID

Madrid, 14 de Noviembre de 2.001

Muy Señores nuestros:

Nos dirigimos a Vdes. en su calidad de contraparte del "Contrato de Fabricación" de microgránulos de OMEPRAZOL, suscrito el 23 de Marzo de 2.000.

Haciendo uso de la facultad que nos concede lo dispuesto en el apartado G del citado Contrato y cumpliendo con el preaviso pactado, por la presente les comunicamos nuestra decisión de denunciar el mencionado Contrato de Fabricación de microgránulos de OMEPRAZOL, denuncia que se efectúa con más de cuatro (4) meses de antelación al 23 de Marzo de 2.002.

En consecuencia, les manifestamos que desde la citada fecha deben considerar extinguido a todos los efectos el Contrato de Fabricación, reiteradamente mencionado.

Atentamente,

Adolfo Herrera
Director General

P.D. Dado que el "Contrato de Fabricación" de microgránulos de OMEPRAZOL de 23 de Marzo del 2000 quedará extinguido el 23 de Marzo de 2002, les comunico que, desde este momento, estamos a su completa disposición para negociar con Vdes. un nuevo Contrato de Fabricación en el que, teniendo en cuenta las actuales circunstancias –distintas a las que motivaron el contrato del 2000–, se satisfagan plenamente las necesidades de Laboratorios Ethypharm, S.A.

**BELMAC**    Telfs. 4 planta baja • Parque Empresarial "La Marina" • 28700 SAN SEBASTIAN DE LOS REYES (Madrid)
Tel.: 91 659 32 60 • Fax: 91 652 01 44 • www.belmac.com
Fábrica: Polígono Malpica, c/C, 4. 50016 ZARAGOZA • Tel.: 976 57 17 84 • Fax: 976 57 26 63



EXHIBIT

CONFIDENTIAL

CONFIDENTIAL

BENTL008365

[logo]
Laboratorios Belmác, S.A.

LABORATORIOS ETHYPHARM, S.A.
Mr. Adolfo de Basilio
Calle Marqués de la Ensenada, 16
28004 MADRID

Madrid, November 14, 2001

Dear Sirs,

We are writing to you in your capacity of counterpart under the "Manufacturing Contract", of OMEPRAZOL microgranules, signed on March 23, 2000.

Using the right granted to us under section G of said Contract and complying with the notice mandated therein, we are hereby communicating our decision to cancel said Manufacturing Contract of OMEPRAZOL microgranules, which notice of cancellation is issued more than four (4) months before March 23, 2002.

Consequently, we indicate that as of said date, you must consider the Manufacturing Contract mentioned above cancelled for all purposes.

Sincerely,

[signature]
Adolfo Herrera
General Director

P.S.: Since the "Manufacturing Contract", of OMEPRAZOL microgranules of March 23, 2000 will be cancelled on March 23, 2002, I am communicating that, as of now, we are completely available to negotiate with you a new Manufacturing Contract in which, taking into account the current circumstances—which are different than those that motivated the 2000 contract—the needs of Laboratorios Ethypharm, S.A. may be fully satisfied.

[see original for address information]



Laboratorios Belmac, s.a.

LABORATORIOS ETHYPHARM, S.A.
D. Adolfo de Basilio
C/ Marqués de la Ensenada, 16
28004 MADRID

RECIBIDO 1 5 NOV. 2001

Madrid, 14 de Noviembre de 2.001

Muy Señores nuestros:

Nos dirigimos a Vdes. en su calidad de contraparte de la "Carta de compromiso de compra", suscrita el 23 de Marzo de 2.000.

Haciendo uso de la facultad que nos concede lo dispuesto en la Especificación 3 de la referida Carta y cumpliendo con el preaviso pactado, por la presente les comunicamos nuestra decisión de denunciar el citado compromiso de compra, denuncia que se efectúa con más de cuatro (4) meses de antelación al 23 de Marzo de 2.002.

En consecuencia, les manifestamos que desde la citada fecha deben considerar extinguido a todos los efectos dicho compromiso de compra.

Atentamente,

LABORATORIOS BELMAC, S.A.

Fdo.: Adolfo Herrera Málaga
Director General

Telde, 4 planta baja • Parque Empresarial "La Marina" • 28760 SAN SEBASTIAN DE LOS REYES (Madrid)
Tel: 91 658 32 60 • Fax: 91 652 01 44 • www.belmac.com

EP 002928



A-47



Laboratorios Belmac, s.a.

LABORATORIOS ETHYPHARM, S.A.      RECEIVED ON NOV. 15th, 2001
Dr Adolfo de Basilio
C/ Marqués de la Ensenada, 16
28004 MADRID

Madrid
November 14th, 2001

Dear Sirs,

We are writing to you, in your capacity as counterpart to the "Purchase Commitment Letter" signed on March 23rd, 2000.

Using the power granted by Specification 3 of the abovementioned letter and giving notice as agreed upon, we hereby inform you of our decision to cancel the purchase commitment more than four (4) months in advance of March 23rd, 2002.

Therefore, we inform you that as of the aforesaid date you shall consider all the effects of the purchase commitment as expired.

Sincerely,

[there appears a signature preceded by a logotype and the phrase "LABORATORIOS BELMAC, S.A." and followed by the explanation "Signed: Adolfo Herrera Málaga. General Director"]



*Teide, 4 planta baja · "La Marina" Industrial Area · 28700 SAN SEBASTIAN DE LOS REYES (Madrid)*
*Tel: 91 659 32 80 · Fax: 91 652 01 44 · www.belmac.com*

EP 002928

Rough translation for use by Attorneys During Depositions
May not be Submitted to Court without Permission of Edwards Angell Palmer & Dodge, LLP

A-48

ACUERDO DE SECRETO

ENTRE:

* ETHYPHARM, Sociedad Anónima con un capital de 6.000.000 de FF
cuyo domicilio social es, Houdan (78550), 21 rue Saint-Matthieu
(Francia),

Representada por su subsidiaria ETHYPHARM ESPAÑA, con domicilio
social en Marqués de la Ensenada,16 28004 Madrid y su Director
General D.Adolfo de Basilio

A partir de ahora denominada ETHYPHARM,

de una parte,

Y:

* BELMAC S.A, con domicilio social en PºCastellana,149 28046
Madrid.

Representada por: Su Director Médico Dr.Manuel Espuelas

A partir de ahora denominada EL LABORATORIO,

de otra parte,



CONFIDENTIAL
EP 008089

A-49

ETHYPHARM esta dispuesta a transmitir al LABORATORIO documentación técnica, sobre el producto denominado :

omeprazol 20mg ethypharm

Esta información se transmite unicamente con el fin de que EL LABORATORIO pueda apreciar si los elementos que la componen permiten confirmar su interés por la citada documentación.

Durante un periodo de 5 (cinco) años, EL LABORATORIO, a partir de la fecha de este acuerdo, se compromete a guardar secreto de estas informaciones y a transmitirlas unicamente a colaboradores y a consejeros comprometidos igualmente al secreto profesional.

El LABORATORIO pagará a ETHYPHARM cincuenta millones de pesetas (50.000.000Pts) en caso de incumplir este acuerdo de confidencialidad.

Sin embargo, esta obligación no se aplica:

* a las informaciones que sean de dominio público en el momento de ser transmitidas por ETHYPHARM.

* ni a las informaciones que, después de divulgadas, pasen a ser de dominio público sin que hayan sido divulgadas por medio del LABORATORIO ni de sus colaboradores.

* ni a las informaciones que el LABORATORIO pueda demostrar que estaban en su posesión en el momento en que ETHYPHARM se las transmita, salvo que éstas se hayan adquirido directamente o indirectamente bajo otro acuerdo de secreto.

EL LABORATORIO se comprote a valorar su interés en un plazo de 2 (dos) meses a partir de la firma de este acuerdo de secreto, y a informar a ETHYPHARM del resultado del examen de la información.

En caso de que el LABORATORIO no esté interesado, el conjunto de documentos y muestras serán devueltos a ETHYPHARM, quedando en vigor la obligación de confidencialidad.

En caso de desacuerdo entre las dos partes, sobre la interpretación y la ejecución de las clausules de este acuerdo de secreto, EL LABORATORIO y ETHYPHARM buscarán los medios necesarios para solucionar el problema de forma amistosa.
Si no existiese avenencia en la solución del conflicto, ETHYPHARM y EL LABORATORIO llevarán sus desacuerdos ante los Tribunales Españoles.

En dos ejemplares

Por ETHYPHARM

Madrid 8.2.95

Por BELMAC

CONFIDENTIAL
EP 008090

A-50

SECRECY AGREEMENT

BETWEEN:

- ETHYPHARM, Corporation with a 6,000,000 FF capital, domiciled at Houdan (78550), 21 rue Saint-Matthieu (France),

Represented by its subsidiary ETHYPAHRM SPAIN, domiciled at Marqués de la Ensenada, 16, 28004, Madrid, and its General Director, Dr Adolfo de Basilio

Hereinafter named ETHYPHARM,

                                                    as party of the first part,

And:

- BELMAC S.A., domiciled at Pº Castellana, 149, 28046, Madrid.

Represented by: its Medical Director, Dr Manuel Espuelas

Hereinafter named THE LABORATORY,

                                                    as party of the second part,

[there appears a signature]

CONFIDENTIAL
EP 008089

Rough Translation for use by Attorneys During Depositions
May not be Submitted to Court without Permission of Edwards Angell Palmer & Dodge, LLP

A-51

ETHYPHARM is ready to send the LABORATORY technical documents about the product called:

omeprazol 20 mg ethypharm

This data is given only so that THE LABORATORY can determine whether the elements that make up the medicine enable it to confirm its interest in the abovementioned documents.

For 5 (five) years, THE LABORATORY, as of the date of this agreement, commits itself to keep these data secret and to reveal it only to collaborators and advisers equally committed to the professional secret.

THE LABORATORY shall pay ETHYPHARM fifty million pesetas (50.000.000 Pts) if it breaches this confidentiality agreement.

However, this obligation does not apply to:

- the information that is public knowledge when being revealed by ETHYPHARM.

- the information that, after being revealed, becomes public knowledge without being revealed by THE LABORATORY or its collaborators.

- the information that THE LABORATORY can prove to be in its possession when ETHYPHARM reveals it, unless it has been acquired directly or indirectly by virtue of another secrecy agreement.

THE LABORATORY commits itself to value its interest in 2 (two) months as of the signing of this secrecy agreement, and to inform ETHYPHARM of the result of the data test

In case THE LABORATORY is not interested, the documents and samples shall be returned to ETHYPHARM, the confidentiality obligation remaining in force.

In case there is a disagreement between the two parties regarding the interpretation and execution of the terms of this secrecy agreement, THE LABORATORY and ETHYPHARM will seek the necessary means to solve the problem in a friendly way.
If there is no agreement in the solution of the conflict, ETHYPHARM and THE LABORATORY will take their disagreements before the Spanish courts.

In two counterparts.

[there appears a signature]        [there appears a signature]
By ETHYPHARM                     By BELMAC
Madrid, 02.08.95

CONFIDENTIAL
EP 008090

Rough Translation for use by Attorneys During Depositions
May not be Submitted to Court without Permission of Edwards Angell Palmer & Dodge, LLP

*10*

## ACUERDO DE CONFIDENCIALIDAD

Considerando que D.LMATEO GASCA GUILLEN _____ con
D.N.I. 25141204L y domicilio en __ZARAGOZA_____,
empleado de la empresa Laboratorios Belmac, S.A., tiene, debido al acuerdo
de colaboración alcanzado entre Belmac y Ethypharm, acceso a información
confidencial que pertenece a Ethypharm.

### POR CONSIGUIENTE:

1.- D.LMATEO GASCA GUILLEN _____ se compromete
   formalmente a no divulgar a nadie, salvo autorización escrita de
   Ethypharm, las citadas informaciones confidenciales, ni utilizarlas por
   su cuenta o para terceros, excepto para el trabajo que Belmac y
   Ethypharm le encomiendan derivado de la cooperación de ambas
   compañías.

2.- La información confidencial cubre todo lo referente a:
   especificaciones de fabricación y control, protocolos de fabricación y
   control y procedimientos de fabricación y control.

En Madrid, a ____20____ de __FEBRERO_____ de 1996.

Leído y aprobado (en manuscrito)

Fdo.:

EXHIBIT
Azpeita 7
6/27/06

EP 002741

A-53

## ACUERDO DE CONFIDENCIALIDAD

Considerando que D. Clemente González Azpeitia con D.N.I. 2009837 y
domicilio en Av. La Loma, 27 TORRELODONES (Madrid) empleado de la
empresa Laboratorios Belmac, S.A., tiene, debido al acuerdo de
colaboración alcanzado entre Belmac y Ethypharm, acceso a información
confidencial que pertenece a Ethypharm.

### POR CONSIGUIENTE:

1. - D. Clemente González Azpeitia se compromete formalmente a no
divulgar a nadie, salvo autorización escrita de Ethypharm, las citadas
informaciones confidenciales, ni utilizarlas por su cuenta o para
terceros, excepto para el trabajo que Belmac y Ethypharm le
encomiendan derivado de la cooperación de ambas compañías.

2. - La información confidencial cubre todo lo referente a:
especificaciones de fabricación y control, protocolos de fabricación y
control y procedimientos de fabricación y control.

En Madrid, a _VEINTE_ de _FEBRERO_ de 1996.

Leído y aprobado (en manuscrito)

Fdo.: Clemente González Azpeitia

EP 002742

### ACUERDO DE CONFIDENCIALIDAD

Considerando que D. __JUAN CARLOS ASENSIO ASENSIO_____ con D.N.I. 17437581Q y domicilio en ____ZARAGOZA_____ , empleado de la empresa Laboratorios Belmac, S.A., tiene, debido al acuerdo de colaboración alcanzado entre Belmac y Ethypharm, acceso a información confidencial que pertenece a Ethypharm.

### POR CONSIGUIENTE:

1.-  D. __JUAN CARLOS ASENSIO ASENSIO_____ se compromete formalmente a no divulgar a nadie, salvo autorización escrita de Ethypharm, las citadas informaciones confidenciales, ni utilizarlas por su cuenta o para terceros, excepto para el trabajo que Belmac y Ethypharm le encomiendan derivado de la cooperación de ambas compañías.

2.-  La información confidencial cubre todo lo referente a: especificaciones de fabricación y control, protocolos de fabricación y control y procedimientos de fabricación y control.

En Madrid, a _____20_____ de _____FEBRERO_____ de 1996.

Leído y aprobado (en manuscrito)

Fdo.:

EP 002743

A-55

## ACUERDO DE CONFIDENCIALIDAD

Considerando que D. ANTONIO CABODEVILLA ILINCHETA          con
D.N.I. 18211833L y domicilio en ZARAGOZA
empleado de la empresa *Laboratorios Belmac, S.A., tiene, debido al acuerdo de colaboración alcanzado entre Belmac y Ethypharm, acceso a información confidencial que pertenece a Ethypharm.*

## POR CONSIGUIENTE:

1.- D. ANTONIO CABODEVILLA ILINCHETA          *se compromete formalmente a no divulgar a nadie, salvo autorización escrita de Ethypharm, las citadas informaciones confidenciales, ni utilizarlas por su cuenta o para terceros, excepto para el trabajo que Belmac y Ethypharm le encomiendan derivado de la cooperación de ambas compañías.*

2.- La información confidencial cubre todo lo referente a: especificaciones de fabricación y control, protocolos de fabricación y control y procedimientos de fabricación y control.

En Madrid, a _____20_____ de __FEBRERO_____ de 1996.

Leído y aprobado (en manuscrito)

Fdo.:

## ACUERDO DE CONFIDENCIALIDAD

Considerando que D. __JOSE LUIS MONTERDE MAORAD__ con
D.N.I. 17223752H y domicilio en __ZARAGOZA__
empleado de la empresa Laboratorios Belmac, S.A., tiene, debido al acuerdo
de colaboración alcanzado entre Belmac y Ethypharm, acceso a información
*confidencial que pertenece a Ethypharm.*

## POR CONSIGUIENTE:

1.-  D. *JOSE LUIS MONTERDE MAORAD* se compromete
     formalmente a no divulgar a nadie, salvo autorización escrita de
     Ethypharm, las citadas informaciones confidenciales, ni utilizarlas por
     su cuenta o para terceros, excepto para el trabajo que Belmac y
     Ethypharm le encomiendan derivado de la cooperación de ambas
     compañías.

2.-  La información confidencial cubre todo lo referente a:
     especificaciones de fabricación y control, protocolos de fabricación y
     control y procedimientos de fabricación y control.

En Madrid, a ____20____ de __FEBRERO__ de 1996.

Leído y aprobado (en manuscrito)

Fdo.:

EP 002745

A-57

CONFIDENTIALITY AGREEMENT

Considering that Dr. Jose Luis Monterde Maorad with ID# 17223752H and domiciled in Zaragoza, employed by the Company Laboratories Belmac S.A., has, due to the collaboration agreement reached between Belmac and Ethypharm, access to confidential information that belongs to Ethypharm.

CONSEQUENTLY:

1.  Dr. Jose Luis Monterde Maorad expressly promises not to divulge the specified confidential information to anyone, nor use such information for itself or third parties, without written authorization from Ethypharm, with the exception of the work undertaken as a result of the cooperation between both Belmac and Ethypharm.

2.  The confidential information covers anything related to: specifications of manufacturing and control, manufacturing and control protocols, and processes of manufacturing and control.

In Madrid, the 20th of February 1996.

Read and approved (in manuscript).


[signature]

A-58

Redacted

## ACUERDO DE SECRETO

ENTRE:

* **ETHYPHARM ESPAÑA,** con domicilio social en Marqués de la Ensenada,16 28004 Madrid, representada por su Director General: D.Adolfo de Basilio

A partir de ahora denominada ETHYPHARM,

de una parte,

Y:

BELMAC, con domicilio en Montearagón,9 28033 Madrid, representada por su Director General , D. Clemente González Azpeitía.

A partir de ahora denominada BELMAC,

de otra parte,

CONFIDENTIAL



BEL000601

A-59

BELMAC ha transmitido a ETHYPHARM la siguiente documentación obtenida del Registro de la especialidad BELMAZOL 20mg (microgránulos de omeprazol):

- Método de fabricación y validación del mismo.
- Método de análisis y validación del mismo

Esta información se transmite únicamente con el fin de que ETHYPHARM pueda entregarla a sus clientes, detallados en el Anexo A, y continuar con ellos su relación comercial.
Durante un período de 10 (diez) años y en su caso durante toda la colaboración comercial, ETHYPHARM, a partir de la fecha de este acuerdo, se compromete a guardar secreto de estas informaciones y a transmitirlas únicamente a colaboradores y a consejeros comprometidos igualmente al secreto profesional.

Esta obligación no se aplica, sin embargo:

- a las informaciones que sean de dominio público en el momento de ser transmitidas por BELMAC.

- ni a las informaciones que, después de divulgadas, pasen a ser de dominio público sin que hayan sido divulgadas por medio de ETHYPHARM ni de sus colaboradores.

- ni a las informaciones que ETHYPHARM pueda demostrar que estaban en su posesión en el momento en que BELMAC se las transmita, salvo que éstas se hayan adquirido directamente o indirectamente bajo otro acuerdo de secreto.

Igualmente y como consecuencia de esta relación comercial BELMAC y ETHYPHARM podrán seguir intercambiado información confidencial, que será mantenida como tal, recíprocamente, durante el periodo de diez años anteriormente citado.

En caso de desacuerdo entre las dos partes, sobre la interpretación y la ejecución de las cláusulas de este acuerdo de secreto, BELMAC y ETHYPHARM buscarán los medios necesarios para solucionar el problema de forma amistosa.
Si no existiese avenencia en la solución del conflicto, ETHYPHARM Y BELMAC llevarán sus desacuerdos ante los Tribunales Españoles.

En dos ejemplares                              Fecha 30 de Septiembre de 1998.

Por ETHYPHARM                               Por BELMAC

**LABORATORIOS BELMAC, S.A.**

Montearagón, No. 9 Primera Planta

28033 MADRID

CONFIDENTIAL

BEL000602

A-60