Health prior to the manufacture of the product/s.    The parties expressly acknowledge that BELMAC will bear no responsibility with regard to obtaining this approval from the Ministry of Health.

c)    Once the product is manufactured, the same will be delivered directly to the client (and never to ETHYPHARM). The following invoices will be issued on the same date when the products leave BELMAC's laboratory:

–    BELMAC will invoice ETHYPHARM for the sale of the products.    The price (without taxes) to be paid by ETHYPHARM will be determined per the units manufactured and based on the following prices for finished products and semi-finished products:

_____

–    ETHYPHARM will invoice BELMAC for the following two items:

- use of know-how
- rental of equipment

The price (without taxes) to be paid by BELMAC will be determined per the units manufactured and based on the following prices for finished and semi-finished products:

_____

Both invoices will be payable \_\_\_ days after the date of the invoice.    The parties expressly accept that the payment to be made will be determined by offsetting those invoices due on the same date, with a view to avoiding unnecessary transfers of funds.

6.2.    Clients provided by ETHYPHARM and resident abroad:

We may distinguish two situations:

*    If the product can be legally sold to the client by ETHYPHARM, then the procedure described in 6.1 will be followed.

*    If the product cannot be legally sold to the client by ETHYPHARM, then the following procedure will be observed:

a)    BELMAC's export of the product to the client must be authorised by the Ministry of Health prior to the manufacture.    The parties expressly acknowledge that BELMAC will bear no responsibility for obtaining this approval from the Ministry of Health.

- 4 -

EP 009088

DRAFT 14 MARCH 1995

b)    Once the product is manufactured, the same will be deliv-
ered directly to the client.  The following invoices
will be issued when the products leave BELMAC's laborato-
ry:

-    BELMAC will invoice the client for the sale of the
products.  The price to be paid by the client will
be determined by ETHYPHARM.

-    ETHYPHARM will invoice BELMAC for the following
three items:

-  use of know-how
-  rental of equipment
-  brokerage fees

The price (without taxes) to be paid by BELMAC
will be ___% of the price to be paid by the cli-
ent.

Both invoices will be payable on the same date.  The parties
expressly accept that the payment to be made will be deter-
mined by offsetting those invoices due on the same date, with
a view to avoiding unnecessary transfers of funds.  Further-
more, in this particular case, 6.2, ETHYPHARM, accepts that
BELMAC will not be obliged to pay ETHYPHARM the corresponding
invoice until BELMAC has received payment from the client of
the corresponding invoice.

6.3    Passive Sales (as defined in clause 5.2)

The procedure will be the following:

a)    The sale of the product will be covered by a "Contrato
de Fabricación por Terceros" or export license (if neces-
sary), as the case may be.

b)    Once the product is manufactured, the same will be deliv-
ered directly to the client.  The following invoices
will be issued when the products leave BELMAC's laborato-
ry:

-    BELMAC will invoice the client for the sale of the
products.  The price to be paid will be freely
negotiated between BELMAC and the client.

ETHYPHARM will invoice BELMAC for the following
two items:

-  use of know-how
-  rental of equipment

The price (without taxes) to be paid by BELMAC
will be determined per the units manufactured and

- 5 -

EP 009089

A-182

based on the following prices for finished and semi-finished products:

_____

Both invoices will be payable on the same date. The parties expressly accept that the payment to be made will be determined by offsetting those invoices due on the same date, with a view to avoiding unnecessary transfers of funds.

7.   Adjustment of prices

The prices for finished and semi-finished products as detailed in clause 6 above will be adjusted (increased or decreased) every year, effective from 1 April 1996, per the evolution of the Consumer Price Index ("Índice de Precios al Consumo - I.P.C.") applicable for each year as published by the National Institute of Statistics ("Instituto Nacional de Estadística"). In case of any delay in the publishing of the Index, the rates will be retroactively applied and any difference will then be adjusted.

8.   Indemnity clause

The parties to the Agreement expressly acknowledge that the economic benefit for BELMAC which stems from this collaboration is based upon the condition of certain production levels being reached, since BELMAC will be required to bear (irrespective of the products effectively manufactured) certain fixed costs such as electricity, personnel, fixed installations, etc.

With regard to that stated above, the parties acknowledge that said annual fixed costs amount to _____ pesetas.

At the end of every year after the Agreement enters into effect, BELMAC will determine the amount (without taxes) invoiced to ETHYPHARM during the year as per clause 6. In case this amount is less than the annual fixed costs, BELMAC will invoice ETHYPHARM for the difference, such invoice being payable on ___ days after the date of the invoice.

BELMAC's annual fixed costs shall be annually adjusted per the procedure described in clause 7.

9.   Equipment

The equipment to be used by BELMAC in manufacturing the products and which belongs to ETHYPHARM is described in Annex 3.

BELMAC will bear all necessary ordinary maintenance costs for the equipment. However, those costs or expenses which imply

– 6 –

EP 009090

A-183

the need to repair the equipment and cannot be considered ordinary maintenance, will be assumed by ETHYPHARM, except in cases in which the repair is due to the improper or negligent use on the part of BELMAC.

10. Transfer of know-how

In case the Agreement is in force until 1 April 2000, or is unilaterally terminated by ETHYPHARM before such date without the termination being based on BELMAC's breaching its obligation under the Agreement, then BELMAC will have the option to acquire from ETHYPHARM the right to use the know-how for the sum of _____ pesetas. BELMAC shall notify ETHYPHARM of its decision to exercise this option at least 30 days before the termination of the Agreement. On the termination date, the parties will formalise the necessary contract for transfer of know-how.

11. Inspection of the laboratory

BELMAC will allow ETHYPHARM's representatives access to its laboratory in order to check that the manufacture of the products is being done in accordance with the Agreement, provided in every case that ETHYPHARM notifies BELMAC of its intention to do so at least 48 hours before the the visit takes place.

12. Confidentiality

The information exchanged by the parties pursuant to this Agreement will be kept confidential. In the event that the Agreement is terminated, all confidential data will be returned to the other party within thirty days after receiving the notice to rescind.

13. Governing law

The Agreement shall be interpreted and construed in accordance with the provisions of Spanish law.

14. Arbitration

All disputes or conflicts arising from the Agreement will be definitively resolved by means of arbitration by one arbitrator, under the auspices of the Spanish Arbitration Court, in accordance with its Regulations and by-laws, to which the conduct of the arbitration and the appointment of the arbitrator is entrusted. The parties set forth their agreement to honour any award rendered.

- 7 -

EP 009091

To:        ADOLFO DE BASILIO
                ETHYPHARM
                (319 91 59, MADRID)

FROM:      JAVIER SANTOS
                (576 97 94, MADRID)

DATE:      MARCH 15, 1995

[. . .]

Dear Adolfo:

As agreed, attached I am sending you draft contracts to be executed between Belmac and

Ethypharm.  I look forward to your comments.

Regards,


Javier Santos

**A-185**

Rough Translation for use by Attorneys During Depositions
May not be Submitted to Court without Permission of Edwards Angell Palmer & Dodge, LLP

DRAFT 21 MARCH 1995

<u>MANUFACTURING AGREEMENT</u>

In Madrid, on __ March 1995

GATHER TOGETHER

- Mr. James R. Murphy, on behalf and in representation of LABORATORIOS BELMAC, S.A. (hereinafter referred to as "BELMAC"), with corporate domicile at Paseo de la Castellana, 149, 28046 Madrid; he uses the faculties and powers granted to him as Executive Director of BELMAC.

- Mr. Patrice Debregeas, on behalf and in representation of ETHYPHARM, S.A. (hereinafter referred to as "ETHYPHARM"), with corporate domicile at Marqués de la Ensenada, 16, 28004 Madrid and on behalf and in representation of ETHYPHARM, S.A. (hereinafter referred to as "ETHYPHARM FRANCE"), with corporate domicile at 21 Rue Saint Matthieu, Houdan 78550, France. He uses faculties and powers granted to him as Chairman of both ETHYPHARM and ETHYPHARM FRANCE.

THEY STATE

I.    That ETHYPHARM is interested in contracting BELMAC for the manufacture, encapsulation and/or conditioning (hereinafter to be referred to as "the manufacture") of certain products as described in Annex 1 (hereinafter referred to as "the products") for the purpose of their delivery to third parties (hereinafter referred to as "the client" or "the clients") (Ethypharm clients),

II.   That BELMAC is interested in the manufacture of the products for their eventual delivery to the clients.

The parties, having regard for that stated above, with the express intention of reflecting their respective obligations in a written and binding agreement, and mutually acknowledging each party's capacity thereon, have decided to subscribe to the present agreement (hereinafter, the "Agreement") in accordance with the following.

CLAUSES

1.    <u>Object</u>

The object of the Agreement is to establish the terms and conditions which will be applied to the business relationship



CONFIDENTIAL

DRAFT 21 MARCH 1995

*BELMAC owns the manufacturing facility and operates under the observance of the currently promulgated Spanish GMP procedures within that section of the facility where ETHYPHARM products are manufactured.*

whereby BELMAC will manufacture products as requested by ETHYPHARM.

2.    Resources

The manufacture of the products will take place at BELMAC's laboratory located in Zaragoza and will be carried out by BELMAC personnel.

The equipment used in manufacturing the products will be provided by ETHYPHARM.  ETHYPHARM FRANCE, as ultimate owner of the know-how employed in manufacturing the products authorises ETHYPHARM to use said know-how.  ETHYPHARM, in turn, authorises BELMAC to use this know-how to manufacture the products under the terms and provisions of the Agreement.

For the purposes of the Agreement, the term "know-how" shall be deemed to include the industrial procedures and methods which are detailed ~~in Annex 2~~ *as well* as the technology pertaining to the production guidebooks. *within the standard operating procedures (SOPs)*

3.    Term

The effectiveness of the Agreement will be retroactively applied as from 1 January 1995, and will expire on 1 January 2000, unless previously rescinded by any party following that stated here below.

Any party may, after 31 December 1995, unilaterally terminate the Agreement by certified letter sent to the other party, provided that a notice of at least six-months in advance of the termination date is observed.

In the case that one party breaches any of its obligations as set out under the Agreement, the other party may unilaterally terminate the Agreement by certified letter, without prejudice to any other actions that the non-defaulting party may exercise and particularly to a claim for damages.  In this case no advance notice shall be observed.

4.    Manufacture of the products

The manufacture of the products shall be made with strict observance of the Spanish regulations in force, as well as of the know-how provided by ETHYPHARM.

The manufacture will be undertaken by BELMAC personnel and at BELMAC's premises, but supervised by ETHYPHARM, and without prejudice to ETHYPHARM's faculties of inspection as set out in clause 11.
*at least one employee*

- 2 -

CONFIDENTIAL

BEL006398

A-187

21/03 '95 18:08   ʼʼ'34 1 3109134

DRAFT 21 MARCH 1995

BELMAC, as a pharmaceutical laboratory will assume, vis-a-vis third parties, the liability derived from the manufacture of the products in the terms provided by the law. Notwithstanding that stated previously, BELMAC may claim that ETHYPHARM is liable in those cases in which the defect or error in the manufacture of the products stems from the equipment or know-how provided by ETHYPHARM.

- Products shipped (certain will be labelled with a statement that acknowledges ETHYPHARM technology and manufacturing by BELMAC.

6.    Exclusivity

The obligations assumed by each party in the Agreement will be of an exclusive nature, so:

6.1    ETHYPHARM cannot request a different laboratory to manufacture the products (for itself or for clients) except:

- in those cases wherein BELMAC cannot meet the terms and delivery dates requested by ETHYPHARM.

- in those cases where the manufacture is requested to ETHYPHARM FRANCE or to any company in which ETHYPHARM FRANCE holds more than 50% of its share capital.

patents

6.2    BELMAC cannot manufacture products with the know-how provided by ETHYPHARM for clients other than those provided by ETHYPHARM. However, the parties recognise that this exclusivity obligation:  (protected)

- will not preclude BELMAC from manufacturing the products with technology other than ETHYPHARM's, or unless legally mandated by Spanish law.
- will only be applied to the so-called "active sales" (those promoted by BELMAC), but not the so-called "passive sales" (those in which the client approaches BELMAC regarding the manufacture of the product without any prior sales effort on the part of BELMAC).

7.    Procedure - Invoicing

7.1    Clients provided by ETHYPHARM and resident in Spain:

The procedure will be the following:

b)    The client will send a letter to BELMAC, according to the sample attached in Annex 5, requesting from BELMAC the manufacture of certain products and acknowledging that such manufacture will be done with ETHYPHARM's know-how and that the products will be sold and invoiced to them by ETHYPHARM.

Finished products (capsules):

- 3 -

→ a) Raw Mater to (bulk CONFIDENTIAL harm will place order with BELMAC and Belmac w ...

BEL006399

A-188

DRAFT 21 MARCH 1995

b) For those cases deemed necessary in accordance with that provided in Royal Decree 1564/1992 of 18 December, the client and BELMAC will formalise a "Contrato de Fabricación por Terceros" in respect to the specific product/s. The "Contrato de Fabricación por Terceros" will need to be authorised by the Spanish Ministry of Health prior to the manufacture of the product/s. The parties expressly acknowledge that BELMAC will bear no responsibility with regard to obtaining this approval from the Ministry of Health.

c) Once the product is manufactured, the same will be delivered directly to the client ~~y and only to a third party who is a legal pharmaceutical company authorised to receive finished pharmaceutical products~~

d) The following invoices will be issued:

· BELMAC will invoice ETHYPHARM every month the following: ~~two amounts (without taxes) for the provision of manufacturing services~~:

> - a fixed monthly amount of _____ pesetas ~~(equivalent to _____ production units ("unidades de producción")~~ the products being manufactured (work in progress).
> - a variable amount which will be determined by the ~~production units~~ effectively reached in each month, at the price of _____ pesetas per unit.

~~This~~ A monthly invoice will be payable upon ~~30~~ ___ days from the invoice's date ~~for the actual number of blisters manufactured during the period at the mutually agreed upon price.~~

· BELMAC will invoice ETHYPHARM every year, on 1 January, a fixed amount of _____ pesetas (without taxes) as compensation of liability incurred as a result of the provision of manufacturing services.

· ETHYPHARM will invoice BELMAC every year, on 1 January, a fixed amount of _____ pesetas (without taxes) as compensation for use of know-how and rental of equipment.

The last two invoices will be payable ___ days after the date of the invoice. The parties expressly accept that the payment to be made will be determined by offsetting those invoices due on the same date, with a view to avoiding unnecessary transfers of funds.

4.2. Clients provided by ETHYPHARM and resident abroad:

We may distinguish two situations:

* If the product can be legally (as per the corresponding foreign and Spanish health regulations) sold to th

*These two invoices will be payable upon ___ days from the invoices date. The amount stated in the two above referred invoices based upon the expected production level for 1995 will be* CONFIDENTIAL *mutual agreement.*

BEL006400

A-189

DRAFT 21 MARCH 1995

client by ETHYPHARM, then the procedure described in 6.1 will be followed.

\* If the product cannot be legally (as per the corresponding foreign and Spanish health regulations) sold to the client by ETHYPHARM, then the following procedure will be observed:

a) If necessary, BELMAC's export of the product to the client must be authorised by the Health authorities of the country of destiny, being the client obliged to provide BELMAC with copy of such authorization prior to the manufacture. The parties expressly acknowledge that BELMAC will bear no responsibility for obtaining this authorization.

b) Once the product is manufactured, the same will be delivered directly to the client, *and only to a third party who is a legal pharmaceutical company authorised to receive finished pharmaceutical products.*

c) The following invoices will be issued when the product leaves BELMAC's factory:

· BELMAC will invoice the client for the sale of the products. The price to be paid by the client will be determined by ETHYPHARM.

· ETHYPHARM will invoice BELMAC for the following three items: use of know-how, rental of equipment and brokerage fees. The price (without taxes) to be paid by BELMAC will be determined in accordance with the formula set forth in Annex 4.

Both invoices will be payable on the same date. Furthermore, in this particular case, 7.2, ETHYPHARM accepts that BELMAC will not be obliged to pay ETHYPHARM the corresponding invoice until BELMAC has received payment from the client of the corresponding invoice.

7.3 Passive Sales (~~as defined in clause 5.2~~) *those cases in which the client approaches Belmac without any prior sales effort by Belmac)*

The procedure will be the following:

a) The sale of the product will be covered by a "Contrato de Fabricación por Terceros" or export license (if necessary), as the case may be.

b) Once the product is manufactured, the same will be delivered directly to the client.

c) The following invoices will be issued when the products leave BELMAC's laboratory:

- 5 -

CONFIDENTIAL

BEL006401    A-190

DRAFT 21 MARCH 1995

· BELMAC will invoice the client for the sale of the products. The price to be paid will be freely negotiated between BELMAC and the client.

· ETHYPHARM will invoice BELMAC for the use of know-how and rental of equipment. The price (without taxes) to be paid by BELMAC will be determined in accordance with the formula set forth in Annex 5.

8.   Adjustment of prices

The prices for finished and semi-finished products as detailed in clause 6 above will be adjusted (increased or decreased) every year, effective from 1 April 1995, per the evolution of the Consumer Price Index ("Indice de Precios al Consumo - I.P.C.") applicable for each year as published by the National Institute of Statistics ("Instituto Nacional de Estadística"). In case of any delay in the publishing of the Index, the rates will be retroactively applied and any difference will then be adjusted.

9.   Equipment

The equipment to be used by BELMAC in manufacturing the products and which belongs to ETHYPHARM is described in Annex 3.

BELMAC will bear all necessary ordinary maintenance costs for the equipment. However, those costs or expenses which imply the need to repair the equipment and cannot be considered ordinary maintenance, will be assumed by ETHYPHARM, except in cases in which the repair is due to the improper or negligent use on the part of BELMAC.

10.   Transfer of know-how

In case the Agreement is in force until 31 December 1999, or is unilaterally terminated by ETHYPHARM before such date without the termination being based on BELMAC's breaching its obligation under the Agreement, then BELMAC will have the option to acquire from ETHYPHARM the right to use the know-how for the products for the sum of _____ pesetas. BELMAC shall notify ETHYPHARM of its decision to exercise this option at least 30 days before the termination of the Agreement. On the termination date, the parties will formalise the necessary contract for transfer of know-how.

11.   Inspection of the laboratory

BELMAC will allow ETHYPHARM's representatives access to its laboratory in order to check that the manufacture of the prod-

- 6 -

CONFIDENTIAL

BEL006402

A-191

DRAFT 21 MARCH 1995

ucts is being done in accordance with the Agreement, provided in every case that ETHYPHARM notifies BELMAC of its intention to do so at least 24 hours before the the visit takes place.

12.  Confidentiality

The information exchanged by the parties pursuant to this Agreement will be kept confidential.  In the event that the Agreement is terminated, all confidential data will be returned to the other party within thirty days after receiving the notice to rescind.

13.  Governing law

The Agreement shall be interpreted and construed in accordance with the provisions of Spanish law.

14.  Arbitration

All disputes or conflicts arising from the Agreement will be definitively resolved by means of arbitration by one arbitrator, under the auspices of the Spanish Arbitration Court, in accordance with its Regulations and by-laws, to which the conduct of the arbitration and the appointment of the arbitrator is entrusted.  The parties set forth their agreement to honour any award rendered.

15.  Taxes and other expenses

All taxes and expenses derived from the execution of the Agreement, including V.A.T., will be supported by the parties according to law.

16.  Notices

The notifications or communications derived from this Agreement should be sent to the following persons at the following addresses and fax numbers:

    a)    For BELMAC:
          address:
          attention:
          fax number:

    b)    For ETHYPHARM:
          address:
          attention:
          fax number:

- 7 -

CONFIDENTIAL

BEL006403

A-192

21/03 '95 18:11

DRAFT 21 MARCH 1995

c)   For ETHYPHARM FRANCE:
     address:
     attention:
     fax number:

In witness thereof, the parties sign this document at the place and on the date mentioned above.

BELMAC                ETHYPHARM             ETHYPHARM FRANCE

Name:                 Name:                 Name:

Title:                Title:                Title:

- 8 -

CONFIDENTIAL

BEL006404

A-193

<u>AGREEMENT</u>

**BETWEEN THE UNDERSIGNED :**

**ETHYPHARM SA**  - with coporate domicile at Marques de la Ensenada, 16
*28004 MADRID - SPAIN*

Hereinafter called **ETHYPHARM**

<u>Represented by its President :</u>  Mr Patrice DEBREGEAS

OF THE ONE PART,

**AND :**

**LABORATORIOS BELMAC S.A.** with corporate domicile at Paseo de la
Castellana 149 - 28046 MADRID - SPAIN

Hereinafter called **BELMAC**

<u>Represented by its Executive Director :</u>  Mr James R. MURPHY

OF THE OTHER PART

EP 009214



A-194

BELMAC/ETHYPHARM
RJ - 3/07/1995

## CLAUSE 1 - OBJECT

The object of the Agreement is to establish the terms and conditions which will be applied, from date of signature of the present Agreement, to the business relationship whereby **ETHYPHARM** will manufacture and/or encapsulate and/or condition its products at premises rented to **BELMAC** and with the help of technicians hired from **BELMAC** and will deliver its products to its customers inside and outside Spain.

## CLAUSE 2 - RESOURCES

2.1. Location

The manufacture and/or encapsulation and/or conditioning of the products will take place in the premises leased by **BELMAC** to **ETHYPHARM** in **BELMAC**'s factory located in Zaragoza (Spain) and will be carried out by, according to the case, **ETHYPHARM**'s technicians or **BELMAC**'s personnel trained by **ETHYPHARM** for that purpose.

**ETHYPHARM** will also use in common with **BELMAC**, sections of **BELMAC**'s factory which are not part of the leased premises such as warehousing, transportation.

The cost of use of said sections is included in the sum paid by **ETHYPHARM** to **BELMAC** as per clause 8 below.

2.2. Equipment

It is hereby recalled, that any and all machinery and equipment needed to manufacture, and/or encapsulate and/or condition the products bought or provided by **ETHYPHARM** will remain the exclusive property of **ETHYPHARM** and may not be used by **BELMAC.**

Machinery and equipment bought in common by **BELMAC** and **ETHYPHARM** are considered as property of both parties at the prorata of their contribution in the investment.

2.3. Documentation

All and any documentation, procedures and Know How communicated or transmitted by **ETHYPHARM** to **BELMAC** or its personnel are considered as **ETHYPHARM**'s sole property, which is acknowledged by **BELMAC.**

3

EP 009216

A-195

BELMAC/ETHYPHARM
RJ - 3/07/1995

Consequently, said documentation, procedures and Know How may not be used by **BELMAC** or its personnel for any other purpose than that described in the present Agreement.

2.4. Premises

**ETHYPHARM** recognizes that **BELMAC** owns the premises that it rents in **BELMAC**'s factory. Details of the premises leased by **BELMAC** to **ETHYPHARM** shall be detailed in Annex C to this Agreement.

The works carried out by **ETHYPHARM** at **BELMAC**'s premises have enabled said premises to be GMP approved by the Spanish Health Authorities in September 1992

2.4.1. Obligations of **BELMAC**

**BELMAC** shall ensure **ETHYPHARM** of the continuous supply of fundamental facilities needed to carry out the object of this Agreement such as water, electricity, gas and communications.

**BELMAC** will also be responsible for keeping the leased premises so as **ETHYPHARM** may be in a good sanitary, safe and steadily workable conditions during the term of this Agreement.

**BELMAC** will allow **ETHYPHARM**, its employees, representatives and visitors to have convenient and continuous access to the premises rented by **ETHYPHARM.**

**BELMAC** shall pay the relevant taxes imposed on rent by the spanish authorities while **ETHYPHARM** possesses the rented site.

**BELMAC** recognizes that it may not use said premises for its own business or that of third parties. **BELMAC** may not have the premises rented by **ETHYPHARM** audited or visited by its customers without the prior written agreement of **ETHYPHARM**'s quality assurance manager.

2.4.2. Obligations of **ETHYPHARM**

**ETHYPHARM** is responsible for the installation, cleaning and maintenance of the rented premises in order to carry out in accordance with GMP regulations the manufacture and/or encapsulation and/or condition of its products.

**ETHYPHARM** shall pay all the fees and expenditure relative to the above mentioned items.

4

EP 009217

**A-196**

BELMAC/ETHYPHARM
RJ - 3407/1995

Water, electricity, gas and communications used by **ETHYPHARM** during the term of this Agreement shall be paid by **BELMAC** and are included in the sums paid by **ETHYPHARM** to **BELMAC** in accordance with Clause 8 below.

**ETHYPHARM** shall comply with reasonable regulations and stipulations regarding using and entering **BELMAC**'s factory site and regulations about safety and security drawn up by **BELMAC**.

## CLAUSE 3 - TERM

The effectiveness of the Agreement will be retroactively applied as from 1 January 1995, and will expire on 1 January 2000.

At the end of this initial period ending on January 1, 2000, this Agreement will be automatically renewed per periods of three (3) years unless terminated by any of the parties twelve (12) months prior to the end of the initial period as defined hereinabove or any of the renewal periods, by registered mail.

Each party reserves the right to cancel this Agreement if the other party commits a material breach of its obligations and fails to remedy this breach within ninety (90) days of the notification of said breach by registered letter. This can be done without prejudice to any other actions that the non-defaulting party may exercise and particularly to a claim for damages.

Upon termination of this Agreement, **ETHYPHARM** shall return the premises that it rents in **BELMAC**'s factory in a sanitary and reasonably good condition. **ETHYPHARM** is entitled upon termination or at any time during the Agreement to move out any furniture, equipment, apparatus, machinary that **ETHYPHARM** purchased or provided.

As regards equipment, machinary or any other items bought in common by **BELMAC** and **ETHYPHARM**, each party will have the possibility of acquiring full possession of said equipment, machinary or items at a price agreed upon between the parties and taking into consideration the use, state and financial amortization.

## CLAUSE 4 - MANUFACTURE, ENCAPSULATION AND CONDITIONING OF THE PRODUCTS

5

EP 009218

A-197

BELMAC/ETHYPHARM
RJ - 3/07/1995

The manufacture and/or encapsulation and/or conditioning of the products shall be made with strict observance of the spanish regulations in force, as well as ETHYPHARM's know how.

The above mentioned activities including the quality control involved at each production stages, will be undertaken either by ETHYPHARM's technicians or by BELMAC's personnel trained by ETHYPHARM at premises rented by ETHYPHARM to BELMAC as described in Clause 1 hereinabove.

ETHYPHARM's will be responsible for the supervision of the manufacture, and/or encapsulation and/or conditioning of the products by BELMAC's personnel.

### CLAUSE 5 - PERSONNEL

BELMAC's personnel trained and hired by ETHYPHARM will remain under the hierarchical control of BELMAC.

BELMAC shall handle in accordance with the spanish regulations in force on labor management, the employment, recruitment, dismissal and resignation of the personnel hired by ETHYPHARM as well as their salary, welfare benefits, labor insurance, labor protection, labor discipline and other matters.

ETHYPHARM will have the possibility to test the members of BELMAC's personnel it wishes to enroll and only those duly accepted by ETHYPHARM shall be considered as part of the personnel hired by ETHYPHARM.

ETHYPHARM will also have the right to ask BELMAC to take disciplinary actions against those members who violate any of the obligations imposed by ETHYPHARM on BELMAC's personnel or who do not give anymore satisfaction in the execution of the tasks for which ETHYPHARM has decided to enroll them.

Members of BELMAC's personnel hired by ETHYPHARM will be clearly identified in a separate document annexed to this Agreement and which may be modified only by written agreement between the parties.

Moreover said members will be bound by the Confidentiality Clause subscribed by BELMAC as per Clause 11 hereunder and BELMAC shall be fully responsible for the compliance of the members of its personnel with said clause.

Cost of hiring said personnel is included in the sum paid by ETHYPHARM to BELMAC as per Clause 8 below.

6

EP 009219

A-198

BELMAC/ETHYPHARM
RJ - 3/07/1995

## CLAUSE 6 -INSURANCE AND INCIDENT

During the term of this Agreement, **BELMAC** shall guarantee **ETHYPHARM** that the premises rented by **ETHYPHARM** and any party of **BELMAC's** factory where **ETHYPHARM's** products or equipment may be kept, equipment, personnel and goods (whether raw material, semi finished or finished goods) are covered by proper insurances against, among which but not limited to : theft, flood, fire, civil liability and any other unforeseeable events , whose occurrence and consequence may cause prejudice to **ETHYPHARM**.

**BELMAC** will also be responsible for **ETHYPHARM's** products or equipment kept in sections of **BELMAC's** factory used in common by **BELMAC** and **ETHYPHARM**.

**ETHYPHARM** will contract an insurance cover in order to guarantee **BELMAC** and **BELMAC's** personnel from any damages which may directly arise from the manufacture and/or encapsulation and/or conditioning of **ETHYPHARM's** products in the rented premises.

Each party shall provide the other party with evidence that the necessary insurance policies have been contracted and that they are maintained in force. Costs of said insurance policies shall be borne by the party who contracted them.

If, at any time during the term of this Agreement, the leased premises encounter any kind of mishap (fire or anything which damages facilities), which is not **ETHYPHARM's** fault and cannot be repaired or rebuilt within ninety (90) days, **ETHYPHARM** may terminate this Agreement. **ETHYPHARM** reserves the right to claim for damages linked to loss of turnover.

## CLAUSE 7 - SHIPPING AND INVOICING OF ETHYPHARM PRODUCTS

### 7.1. General Conditions

**ETHYPHARM** has submitted to the spanish Health Authorities a dossier in order to be recognized as « pharmaceutical laboratory ».

7

EP 009220

A-199

BELMAC/ETHYPHARM
RJ - 3/07/1995

Meanwhile, **BELMAC**, as pharmaceutical laboratory, will assume vis a vis third parties, the liability derived from the manufacture, encapsulation, conditioning and shipping of **ETHYPHARM**'s products in the terms provided by spanish law and regulations in that respect. **ETHYPHARM** guarantees **BELMAC** for any claim and damages in accordance with the terms of clause 6 hereinabove.

### 7.2. Shipments

**ETHYPHARM**'s products shipped by **BELMAC** during the transitory period stipulated in the above paragraph will be clearly identified as belonging to or originating from **ETHYPHARM**. Consequently, labels and documents accompanying shipments shall be in the name of **ETHYPHARM**.

### 7.3. Invoicing

Any and all orders relative to **ETHYPHARM**'s products will be considered as placed with **ETHYPHARM** even if addressed to **BELMAC**.

**BELMAC** will transmit without delay and in any case within a maximum of two (2) open days orders or any communication received by **BELMAC** and relative to **ETHYPHARM**'s products. Any communication identified as being « Urgent » shall be transmitted to **ETHYPHARM** within a maximum of three (3) hours.

**BELMAC** will provide **ETHYPHARM** with administrative services such as the preparation of all documents needed to accompany **ETHYPHARM**'s products among which, but not limited to, invoices to **ETHYPHARM**'s customers.

The price to be paid by **ETHYPHARM**'s customers and mentioned on the invoices prepared by **BELMAC** will be determined by **ETHYPHARM**.

Payments will be made by **ETHYPHARM**'s customers directly on **ETHYPHARM**'s bank account that **ETHYPHARM** will indicate to **BELMAC**.

Copy of each invoice prepared by **BELMAC** and addressed to **ETHYPHARM**'s customers will be sent to **ETHYPHARM** within a maximum of two (2) open days from date of issuing said invoice.

**ETHYPHARM** will be entitled to check by all means the documents issued by **BELMAC** on **ETHYPHARM**'s account.

As a consequence, **ETHYPHARM**, or an independent public accountant selected by **ETHYPHARM**, at its expense, are hereby granted the right and privilege, at any time

8

EP 009221

A-200

BELMAC/ETHYPHARM
RJ - 3/07/1995

but upon reasonable notice during normal business hours, to audit and review at **ETHYPHARM**'s expense, all books, accounts and all other records and matters pertaining to or reflecting **BELMAC**'s business in connection with the services rendered by **BELMAC** under the present Agreement ;

## CLAUSE 8 - RENTAL FEES

During the valid term of this Agreement, **ETHYPHARM** shall pay to **BELMAC** every month a fixed monthly amount of three million five hundred thousand (3.500.000 pts) pesetas (without taxes) for the rent, the use in common with **BELMAC** of sections of **BELMAC**'s factory not included in the rented premises and the administrative services provided by **BELMAC** to **ETHYPHARM**.

**ETHYPHARM** will pay said invoices at 30 days date of invoice.

## CLAUSE 9 - EXCLUSIVITY

**ETHYPHARM** warrants that it will not manufacture its products in any other factory in Spain as long as the present Agreement remain in force and except for, for example, any of the following reasons:

1) **BELMAC** refuse to renew the lease of the premises rented by **ETHYPHARM** or renew the lease at conditions ten per cent higher the market conditions for leases of the same type in Spain.

2) The premises that **BELMAC** is ready to rent to **ETHYPHARM** are not sufficient anymore to meet the orders placed for **ETHYPHARM**'s products and no satisfactory solution can be found by the parties.

3) **BELMAC** commits a material breach of its obligations.

4) The quality of the services rendered by **BELMAC** are not anymore up to the standard normally expected for such services as noted by the audit of an independent expert whose fees will be settled by the party in default.

5) Authorizations to **BELMAC** to act as pharmaceutical laboratory are withdrawn or not renewed by the competent authorities.

9

EP 009222

A-201

BELMAC/ETHYPHARM
RJ - 1/07/1995

6) in case of total or partial destruction of the premises rented or sections of **BELMAC** 's factory used by **ETHYPHARM** in common with **BELMAC**.


### CLAUSE 10 - NON COMPETITION

**BELMAC** warrants that during the validity of the present Agreement :

1) **BELMAC** will not either directly or indirectly work on products identical or similar to **ETHYPHARM**'s products,

2) **BELMAC** 's personnel trained by **ETHYPHARM** or having access to confidential information on **ETHYPHARM's** products will be sued as breaching the obligation of confidentiality of clause 10 hereinafter if working on products identical or similar to **ETHYPHARM's** products for **BELMAC** or for any third parties.

3) **BELMAC** will not put at the disposal of third parties involved in the exploitation of medicines any and all parts of its factory and/or services.


### CLAUSE 11 - CONFIDENTIALITY

All the information exchanged by the parties pursuant to this Agreement will be considered strictly confidential and will not be divulged by the party who received the information to third parties without the prior written agreement of the other. The subsidiaries, licensees or overseas agents of each party outside the Territory are considered as third parties.

In the event of termination of this Agreement, all confidential data (among which but not limited to all data relative to the manufacturing processes, quality and analytical procedures of **ETHYPHARM's** products) will be returned to the other party within thirty (30) days after receiving the notice to rescind.

This obligation of Confidentiality shall continue in effect for five (5) years beyond the expiry of this Agreement for any reason.


### CLAUSE 12 - ARBITRATION

All disputes or conflicts arising from the Agreement will be definitively resolved by means of arbitration in law by one arbitrator, under the auspices of the spanish arbitration court, in accordance with its regulations and by-laws, to which the conduct

10

EP 009223

A-202

BELMAC/ETHYPHARM
RJ - 3/07/1995

of the arbitration and the appointment of the arbitrator is entrusted. The parties set forth their agreement to honour any award rendered.

## CLAUSE 13 - GOVERNING LAW

The Agreement shall be interpreted and construed in accordance with the provisions of Spanish law.

## CLAUSE 14 -NOTICES

The notifications or communications derived from this Agreement including those stipulated in 7.3. hereinabove should be sent to the following addresses and fax numbers :

a) For BELMAC :

address :

attention :

fax number

b) For ETHYPHARM :

address :

attention :

fax number :

Any modification to the above mentioned addresses, contact person or fax numbers may only be made by means of an Addendum to the present Agreement.

## CLAUSE 15 - LANGUAGE

11

EP 009224

A-203

BELMAC/ETHYPHARM
RJ - 3/07/1995

This Agreement shall be executed and effective both in Spanish and in English versions. In the event of a dispute as to the interpretation of the Agreement, the English version shall prevail.

## CLAUSE 16 - TRANSFER

**BELMAC** may not transfer its rights or obligations arising from this Agreement without the prior written consent of **ETHYPHARM**.

## CLAUSE 17 - COSTS AND FEES

All taxes and expenses derived from the execution of the Agreement, including V.A.T. will be supported by the parties according to law.

Signed at Madrid

Date :

For **ETHYPHARM S.A.**                     For **BELMAC S.A.**

**Mr Patrice DEBREGEAS**                   **Mr James R. MURPHY**

President                                  Executive Director

12

EP 009225

A-204

BELMAC/ETHYPHARM
RJ - 3/07/1995

# ANNEX A TO THE AGREEMENT

## BETWEEN BELMAC AND ETHYPHARM S.A. (SPAIN)

### PRODUCTS MANUFACTURED BY ETHYPHARM

(additional products may be added to this initial list by separate addendum to this Agreement).

13

EP 009226

A-205

BELMAC/ETHYPHARM
RJ - 3/07/1995

## ANNEX B TO THE AGREEMENT

## BETWEEN BELMAC AND ETHYPHARM S.A. (SPAIN)

### DETAILS OF INVESTMENT MADE BY ETHYPHARM (as per Whereas 2)

1) Investment

2) Equipment

3) Documentation transmitted to BELMAC.

14

EP 009227

BELMAC/ETHYPHARM
RJ - J/071/993

## ANNEX C TO THE AGREEMENT

## BETWEEN BELMAC AND ETHYPHARM S.A. (SPAIN)

**DETAILS OF PREMISES LEASED BY BELMAC TO ETHYPHARM (as per Clause 2.4)**

15

17 JUL '95  08:55  ETHYPHARM34    ☎ 572 13 39    ETHYPHARM    5721 36dac P.16/32 a

# FAX MESSAGE

TO:          Patrice Debregeas
COMPANY:     ETHYPHARM
FROM:        James Murphy
DATE:        13th of July of 1995
FAX No.:     33.1.30.88.17.30
SUBJECT:

Total number of pages, including this cover sheet: 1
If you have any problem with the reception of this fax, please call (34.1) 572.06.62. and ask for LAURA.

With this cover sheet I enclose the contract with some modifications.

Please call me back after you review it.

Best regards,

*Jim Murphy*

James Murphy



EXHIBIT
DEBREGEAS
No. 1D
7.10.06 JA

EP 009008

A-208

17 JUI '95  08:55 : ETHYPHARM SS      ☎ 572 13 39      ETHYPHARM      5721339448  P. 17/242
17 JUI '95  08:52

## AGREEMENT

**BETWEEN THE UNDERSIGNED :**

**ETHYPHARM SA** - with coporate domicile at Marques de la Ensenada, 16
28004 MADRID - SPAIN

Hereinafter called **ETHYPHARM**

_Represented by its President :_  Mr Patrice DEBREGEAS

OF THE ONE PART,

**AND :**

**LABORATORIOS BELMAC S.A.** with corporate domicile at Paseo de la    Montearagón, 9-1ª pl
~~Castellana 149~~  28046 MADRID - SPAIN

Hereinafter called **BELMAC**

_Represented by its Executive Director :_  Mr James R. MURPHY

OF THE OTHER PART

EP 009009

A-209

BELMAC/ETHYPHARM
PI - 3/07/1995

## CLAUSE 1 - OBJECT

*The object of the Agreement is to establish the terms and conditions* which will be applied, from date of signature of the present Agreement, to the business relationship whereby ~~ETHYPHARM~~ BELMAC will manufacture and/or encapsulate and/or condition ~~its~~ Ethypharm products at premises ~~leased to~~ BELMAC and with the help of Belmac technicians ~~hired from~~ ~~BELMAC~~ Ethypharm *and* ~~will~~ will *deliver its products to its customers inside and outside Spain.* Belmac will consider production of additional products that would not cause harm to Belmac personnel or facilities but reserves the right to refuse products that Belmac considers detrimental.

## CLAUSE 2 - RESOURCES

2.1. Location

The manufacture and/or encapsulation and/or conditioning of the products will take *place in* ~~*the premises leased by BELMAC to ETHYPHARM in*~~ BELMAC's factory located in Zaragoza (Spain) and will be carried out by, according to the case, ETHYPHARM's ~~technicians~~ supervision and BELMAC's personnel trained by ETHYPHARM for that purpose.

ETHYPHARM will also use in common with BELMAC, sections of BELMAC's factory which are not part of the ~~leased~~ production premises such as receiving, warehousing, and transportation.

The cost of use of said sections is included in the sum paid by ETHYPHARM to BELMAC as per clause 8 below.

2.2. Equipment

*It is hereby recalled,* that any and all machinery and equipment needed to manufacture, and/or encapsulate and/or condition the products bought or provided by ETHYPHARM will remain the exclusive property of ETHYPHARM and may not be used by BELMAC unless special provisions are separately negotiated.

Machinery and equipment bought in common by BELMAC and ETHYPHARM are considered as property of both parties at the prorata of their contribution in the investment.

2.3. Documentation

All and any documentation, procedures and Know How communicated or transmitted by ETHYPHARM to BELMAC or its personnel are considered as ETHYPHARM's sole property, which is acknowledged by BELMAC, unless the information is known to the general populace of the pharmaceutical manufacturing industry or freely available or publically known.

the ~~leased premises~~ in order to carry out in accordance with GMP regulations the

the related guarantees in order to carry out, in accordance with GMP regulations the manufacture and/or encapsulation and/or condition of its products.

**ETHYPHARM** shall pay all the fees and expenditure relative to the above mentioned items.

EP 009011

BELMAC/ETHYPHARM
RJ-3/07/1995

Water, electricity, gas ~~and communications~~ used by ETHYPHARM during the term of this Agreement shall be paid by BELMAC and are included in the sums paid by ETHYPHARM to BELMAC in accordance with Clause 8 below.

ETHYPHARM shall comply with reasonable regulations and stipulations regarding using and entering BELMAC's factory site and regulations about safety and security drawn up by BELMAC.

Ethypharm will be provided with an office for a supervising Ethypharm employee and will have Belmac permission to install a telephone for Ethypharm's exclusive use. All communication on the Ethypharm phone will be paid by Ethypharm.

CLAUSE 3 - TERM

The effectiveness of the Agreement will be retroactively applied as from 1 January 1995, and will expire on 1 January 2000. [handwritten insertions, partly illegible: "(with 3 months prior notice)" ... "be reviewed & extended ... years until expiration" ... "expiration date, a new Contract may be negotiated."]

~~At the end of this initial period ending on January 1, 2000, this Agreement will be automatically renewed per periods of three (3) years unless terminated by any of the parties twelve (12) months prior to the end of the initial period as defined hereinabove or any of the renewal periods, by registered mail.~~

Each party reserves the right to cancel this Agreement if the other party commits a material breach of its obligations and fails to remedy this breach within ninety (90) days of the notification of said breach by registered letter. This can be done without prejudice to any other actions that the non-defaulting party may exercise and particularly to a claim for damages.

Upon termination of this Agreement, ETHYPHARM shall return ~~the premises that it rents in BELMAC's factory~~ the space dedicated to in a sanitary and reasonably good condition. ETHYPHARM is entitled upon termination or at any time during the Agreement to move out any furniture, equipment, apparatus, machinery that ETHYPHARM purchased or provided.

As regards equipment, machinery or any other items bought in common by BELMAC and ETHYPHARM, each party will have the possiblity of acquiring full possession of said equipment, machinary or items at a price agreed upon between the parties and taking into consideration the use, state and financial amortization.

CLAUSE 4 - MANUFACTURE, ENCAPSULATION AND CONDITIONING OF THE PRODUCTS

EP 009012

A-212

17 JUL '95  08:56   ETHYPHARM 89      ☎ 571 13 39      ETHYPHARM      5721339AC P.20/32 84
17 JUL '95 08:016

BELMAC&ETHYPHARM
RJ - 14/07/1995

The manufacture and/or encapsulation and/or conditioning of the products shall be made with strict observance of the spanish regulations in force, as well as ETHYPHARM's know how.

The above mentioned activities including the quality control involved at each production stages, will be undertaken either by ETHYPHARM's technicians or by BELMAC's personnel trained by ETHYPHARM at premises, rented by ETHYPHARM to BELMAC as described in Clause 1 hereinabove.

ETHYPHARM's will be responsible for the supervision of the manufacture, and/or encapsulation and/or conditioning of the products by BELMAC's personnel.

## CLAUSE 5 - PERSONNEL

BELMAC's personnel trained and hired by ETHYPHARM will remain under the direction and managerial hierarchical control of BELMAC.

BELMAC shall handle in accordance with the spanish regulations in force on labor management, the employment, recruitment, dismissal and resignation of the personnel trained by ETHYPHARM as well as their salary, welfare benefits, labor insurance, labor protection, labor discipline and other matters.

ETHYPHARM will have the possibility to select the members of BELMAC's personnel it wishes to enroll and only those duly accepted by ETHYPHARM shall be considered as part of the personnel involved by ETHYPHARM production one.

ETHYPHARM will also have the right to ask BELMAC to take disciplinary actions against those members who violate any of the obligations imposed by ETHYPHARM on BELMAC's personnel or who do not give enough satisfaction in the execution of the tasks for which ETHYPHARM has decided to enroll them.

Members of BELMAC's personnel hired by ETHYPHARM will be clearly identified in a separate document annexed to this Agreement and which may be modified only by written agreement between the parties.

Moreover said members will be bound by the Confidentiality Clause subscribed by BELMAC as per Clause 11 hereunder and BELMAC shall be fully responsible for the compliance of the members of its personnel with said clause.

Cost of training said personnel is included in the sum paid by ETHYPHARM to BELMAC as per Clause 8 below.

6

EP 009013

A-213

BELMAC/ETHYPHARM
RJ - 24071995

## CLAUSE 6 - INSURANCE AND INCIDENT

During the term of this Agreement, BELMAC shall guarantee ETHYPHARM that the premises rented by ETHYPHARM and any party of BELMAC's factory where ETHYPHARM's products or equipment may be kept, equipment, personnel and goods (whether raw material, semi finished or finished goods) are covered by proper insurances against, among which but not limited to : theft, flood, fire, civil liability and any other unforeseeable events , whose occurrence and consequence may cause prejudice to ETHYPHARM.

BELMAC will also be responsible for ETHYPHARM's products or equipment kept in sections of BELMAC's factory used in common by BELMAC and ETHYPHARM.

ETHYPHARM will contract an insurance cover in order to guarantee BELMAC and BELMAC's personnel from any damages which may directly arise from the manufacture and/or encapsulation and/or conditioning of ETHYPHARM's products in the rented premises.

Each party shall provide the other party with evidence that the necessary insurance policies have been contracted and that they are maintained in force. Costs of said insurance policies shall be borne by the party who contracted them.

If, at any time during the term of this Agreement, the leased premises encounter any kind of mishap (fire or anything which damages facilities), which is not ETHYPHARM's fault and cannot be repaired or rebuilt within ninety (90) days, ETHYPHARM may terminate this Agreement. ETHYPHARM reserves the right to claim for damages linked to loss of turnover.

*If at any time during the term of this Agreement, the leased premises encounter any kind of mishap (fire ......) which is not Belmac's fault but arises out of Ethyphar activities and cannot be repaired or rebuilt within 90 days, before reserving the right to claim damages linked to loss of turnover.*

## CLAUSE 7 - SHIPPING AND INVOICING OF ETHYPHARM PRODUCTS

### 7.1. General Conditions

ETHYPHARM has submitted to the spanish Health Authorities a dossier in order to be recognized as « pharmaceutical laboratory ».

7

EP 009014

A-214

BELMAC/ETHYPHARM
RS-347/1995

_during this transitory period_

Meanwhile, BELMAC, as pharmaceutical laboratory, will assume vis a vis third
parties, the liability derived from the manufacture, encapsulation, conditioning and
shipping of **ETHYPHARM**'s products in the terms provided by spanish law and
regulations in that respect. **ETHYPHARM** guarantees BELMAC for any claim and
damages ~~in accordance with the terms of clause 6 hereinabove.~~ _arising from Ethypharm's_
_technology or equipment._

_Thereafter, Ethypharm will assume full_
_responsibility and liability derived from manufacture,_
### 7.2. Shipments
_encapsulation, conditioning or Ethypharm's products._

**ETHYPHARM**'s products shipped by BELMAC during the transitory period
stipulated in the above paragraph will be clearly identified as ~~belonging to or~~ _but_
originating from ~~ETHYPHARM~~. Consequently, labels and documents accompanying
shipments shall be in the name of **ETHYPHARM** _but acknowledging origin from Belmac for_
~~Accordingly, when approved by Spanish health authorities as Ethypharm as a pharmaceutical~~
~~laboratory's labels will be in the name of Ethypharm only.~~
### 7.3. Invoicing

Any and all orders relative to **ETHYPHARM**'s products will be considered as
placed with **ETHYPHARM** even if addressed to BELMAC.
_All orders will be placed to Ethypharm offices but in the event Belmac receives a_
_request_
BELMAC will transmit without delay and in any case within a maximum of two (2)
open days orders or any communication received by BELMAC and relative to
**ETHYPHARM**'s products. Any communication identified as being « Urgent », shall _such received quickly_
be transmitted to **ETHYPHARM** within a ~~maximum of three (3) hours.~~ _reasonable amount of time._

BELMAC will provide **ETHYPHARM** with administrative services such as the
preparation of all documents needed to accompany **ETHYPHARM**'s products among
which, but not limited to, invoices to **ETHYPHARM**'s customers.

The price to be paid by **ETHYPHARM**'s customers and mentioned on the invoices
prepared by BELMAC will be determined by **ETHYPHARM**.

Payments will be made by **ETHYPHARM**'s customers directly on **ETHYPHARM**'s
bank account that **ETHYPHARM** will indicate to BELMAC.

Copy of each invoice prepared by BELMAC and addressed to **ETHYPHARM**'s
customers will be sent to **ETHYPHARM** within a maximum of two (2) open days
from date of issuing said invoice.

**ETHYPHARM** will be entitled to check by all means the documents issued by
BELMAC on **ETHYPHARM**'s account.

As a consequence, **ETHYPHARM**, or an independent public accountant selected by
**ETHYPHARM**, at its expense, are hereby granted the right and privilege, at any time

6

EP 009015

A-215

17 JUL '95  08:58 · ETHYPHARM 01       ☎ 572 13 39       ETHYPHARM       5721339ac p.23/3297
                                                                          17 JUL '95  09:03G

BELMAC/ETHYPHARM
RU-2/07/1993

but upon reasonable notice during normal business hours, to audit and review at
ETHYPHARM's expense, all books, accounts and all other records and matters
pertaining to or reflecting BELMAC's business in connection with the services
rendered by BELMAC under the present Agreement ;

## CLAUSE 8 - RENTAL FEES

During the valid term of this Agreement, ETHYPHARM shall pay to BELMAC
every month a fixed monthly amount of three million five hundred thousand
(3.500.000 pts) pesetas (without taxes) for the monthly the use in domestic/sinh
BELMAC of sections of BELMAC's factory not included in the rented premises and
the administrative services provided by BELMAC to ETHYPHARM.

ETHYPHARM will pay said invoices at 30 days date of invoice.

## CLAUSE 9 - EXCLUSIVITY

ETHYPHARM warrants that it will not manufacture its products in any other factory
in Spain as long as the present Agreement remains in force and except for, for example,
any of the following reasons:

1) BELMAC refuse to renew the lease of the premises rented by ETHYPHARM or
renew the lease at conditions ten per cent higher the market conditions for leases of
the same type in Spain.

2) The premises that BELMAC is ready to rent to ETHYPHARM are not sufficient
anymore to meet the orders placed for ETHYPHARM's products and no satisfactory
solution can be found by the parties.

3) BELMAC commits a material breach of its obligations.

4) The quality of the services rendered by BELMAC are not anymore up to the
standard normally expected for such services as noted by the audit of an independent
expert whose fees will be settled by the party in default.

5) Authorisations to BELMAC to act as pharmaceutical laboratory are withdrawn or
not renewed by the competent authorities.

9

EP 009016

A-216

17 JUL '95. 08:58   ETHYPHARM #2         ☎ 373 13 39      ETHYPHARM        572133980 P.24/2 #0
                                                                           17 JUL '95 00:039

BELMAC/ETHYPHARM
27-14/7/1995

6) in case of total or partial destruction of the premises rented or sections of
BELMAC 's factory used by ETHYPHARM in common with BELMAC.

## CLAUSE 10 - NON COMPETITION

BELMAC warrants that during the validity of the present Agreement :

1) BELMAC will not either directly or indirectly work on products identical or similar
to ETHYPHARM's products. (  )

2) BELMAC 's personnel trained by ETHYPHARM or having access to confidential
information on ETHYPHARM's products will be sued as breaching the obligation of
confidentiality of clause 10 hereinafter if working on products identical or similar to
ETHYPHARM's products for BELMAC or for any third parties.

3) BELMAC will not put at the disposal of third parties involved in the exploitation of
medicines any and all parts of its factory and/or services.

## CLAUSE 11 - CONFIDENTIALITY

All the information exchanged by the parties pursuant to this Agreement will be
considered strictly confidential and will not be divulged by the party who received the
information to third parties without the prior written agreement of the other. The
subsidiaries, licensees or overseas agents of each party outside the Territory are
considered as third parties.

In the event of termination of this Agreement, all confidential data (among which but
not limited to all data relative to the manufacturing processes, quality and analytical
procedures of ETHYPHARM's products) will be returned to the other party within
thirty (30) days after receiving the notice to rescind.

This obligation of Confidentiality shall continue in effect for five (5) years beyond the
expiry of this Agreement for any reason.

## CLAUSE 12 - ARBITRATION

All disputes or conflicts arising from the Agreement will be definitively resolved by
means of arbitration in law by one arbitrator, under the auspices of the spanish
arbitration court, in accordance with its regulations and by-laws, to which the conduct

10

EP 009017

A-217

17 JUI '95 09:59  ETHYPHARM#2    ☎ 372 13 39    ETHYPHARM    572138JAC P.25/C09
17 JUI '95 08:649

BELMAC/ETHYPHARM
21-167/1995

of the arbitration and the appointment of the arbitrator is entrusted. The parties set forth their agreement to honour any award rendered.

## CLAUSE 13 - GOVERNING LAW

The Agreement shall be interpreted and construed in accordance with the provisions of Spanish law.

## CLAUSE 14 -NOTICES

The notifications or communications derived from this Agreement including those stipulated in 7.3. hereinabove should be sent to the following addresses and fax numbers :

a) For BELMAC :

address :

attention :

fax number

b) For ETHYPHARM :

address :

attention :

fax number :

Any modification to the above mentioned addresses, contact person or fax numbers may only be made by means of an Addendum to the present Agreement.

## CLAUSE 15 - LANGUAGE

11

EP 009018

A-218

BELMAC/ETHYPHARM

This Agreement shall be executed and effective both in Spanish and in English versions. In the event of a dispute as to the interpretation of the Agreement, the English version shall prevail.

## CLAUSE 16 - TRANSFER

BELMAC ~~may not~~ *is entitled to* transfer its rights or obligations arising from this Agreement without the prior written consent of *ETHYPHARM*. *however, Ethypharm may seek to terminate this Agreement without three(3)months prior notice.*

## CLAUSE 17 - COSTS AND FEES

All taxes and expenses derived from the execution of the Agreement, including V.A.T. will be supported by the parties according to law.

Signed at Madrid

Date :

For **ETHYPHARM S.A.**                          For **BELMAC S.A.**

**Mr Patrice DEBREGEAS**                          **Mr James R. MURPHY**

President                                        Executive Director

12

EP 009019

H02.MACK\ETHYPHARM
RJ-28/7/1995

## ANNEX A TO THE AGREEMENT

## BETWEEN BELMAC AND ETHYPHARM S.A. (SPAIN)

### PRODUCTS MANUFACTURED BY ETHYPHARM

(additional products may be added to this initial list by separate addendum to this
Agreement).

13

EP 009020

A-220

17 JUL '95  08:59  ETHYPHARM**  ☎ 571 13 39      ETHYPHARM    5721339ac  P.23/211
17 JUL '95  08:41

H2.MAC\ETHYPHARM
RJ-1407/1995

## ANNEX B TO THE AGREEMENT

## BETWEEN BELMAC AND ETHYPHARM S.A. (SPAIN)

### DETAILS OF INVESTMENT MADE BY ETHYPHARM (as per Whereas 2)

1) Investment

2) Equipment

3) Documentation transmitted to BELMAC

14

EP 009021

## ANNEX C TO THE AGREEMENT

## BETWEEN BELMAC AND ETHYPHARM S.A. (SPAIN)

DETAILS OF PREMISES LEASED BY BELMAC TO ETHYPHARM (as per Clause 2.6)

15

A-222

EP 009022