*Ex. 26*



**Laboratorios Belmac, s.a.**

913199159 ⌀ ROSELINE LANNESE
FAX
🗑 ⇨ A DE BASILIO

📄 2/9/4/02



LABORATORIOS ETHYPHARM, S.A.
D. Adolfo de Basilio
C/ Marqués de la Ensenada, 16
28004 MADRID

Madrid, 9 de Abril del 2.002

Muy Señores nuestros:

Como continuación a nuestras conversaciones y, en contestación a su carta del pasado 2 de Abril en la que nos ruegan que, transitoriamente y mientras se acaba de negociar un contrato de suministro de Laboratorios Belmac, S.A. a Laboratorios Ethypharm, S.A., procedamos a cumplimentar los pedidos que nos formulen de microgránulos de Omperazol, les indicamos los precios de suministro y condiciones:

Precios de Suministro:

| | |
|---|---|
| Suministro de microgránulos de Omeprazol ........................ | 163,00 €/Kg. |
| (Principio activo incluido) | |
| Encapsulado (no incluye cápsula vacía) ........................ | 3,61 €/1.000 dosis |
| Trámite de exportación por envío ........................ | 1,80 €/1.000 dosis |
| (Tasas del ministerio no incluidas que se facturarán aparte) | |
| Cápsulas vacías : Precio de coste. | |
| Puesta en frasco: Frasco de 14 cápsulas ........................ | 0,66 €/Frasco |
| Frasco de 28 cápsulas ........................ | 0,69 €/Frasco |

(estos precios incluyen material de acondicionamiento y la utilización de la maquinaria propiedad de Laboratorios Ethypharm, S.A.)

**BELMAC**

Telde, 4 planta baja • Parque Empresarial "La Marina" • 28700 SAN SEBASTIÁN DE LOS REYES (Madrid)
Tel.: 91 659 32 80 • Fax: 91 652 01 44 • www.belmac.com
Fábrica: Polígono Malpica, c/C, 4, 50016 ZARAGOZA • Tel.: 976 57 17 84 • Fax: 976 57 26 63



EP 008582

A-442

09/04 2002 MAR 13:18 FAX 913199159 ETHYPHARM S.A.                                                    @002/002

913199159



Laboratorios Belmac, S.A.

### Condiciones de Suministro:

1. Precios Exwork planta de fabricación de Zaragoza.
2. Forma de pago: giro bancario domiciliado a 90 días fecha factura.
3. Utilización hasta el 31.12.02 por el personal de Laboratorios Belmac, S.A. y en nuestra fábrica de Zaragoza, de la maquinaria propiedad de Laboratorios Ethypharm, S.A., sin que Laboratorios Ethypharm, S.A. pueda reclamar a Laboratorios Belmac, S.A. cantidad alguna por dicha utilización.

Finalmente, les comunicamos que estos precios y estas condiciones sólo son aplicables a los pedidos que nos hayan formulado con anterioridad al 23 de Marzo del 2.002 y que les hayan sido confirmados con anterioridad a la mencionada fecha del 23 de Marzo del 2.002.

Quedando en espera de su conformidad, reciban un cordial saludo.

Adolfo Herrera
Director General

2

HEURE DE RÉCEPTION   9. AVR.  12:31        HEURE D´IMPRESSION   9. AVR.  12:32

EP 008583

A-443

09/04 2002 MAR 13:18 FAX 913188189 ETHYPHARM S.A.    @001/002



Laboratorios Belmac, s.a.



913199159
FAX

2/9,4,02

LABORATORIOS ETHYPHARM, S.A.
Adolfo de Basilio
C/ Marqués de la Ensenada, 16
28004 MADRID

Madrid, April 9, 2002

Dear Sirs,

As a continuation to our conversations and in response to your letter dated April 2 whereby you requested us, provisionally and pending supply agreement negotiations between Laboratorios Belmac, S.A. and Laboratorios Ethypharm, S.A., in order to complete orders of Omeprazole microgranules, we hereby set forth supply prices and conditions:

**Supply Prices:**

| | |
|---|---|
| Omeprazole Microgranules Supply | €163,000/kg |
| (active principle included) | |
| Capsules (empty capsule not included) | €3.61/1,000 doses |
| Proceeding of exportation by delivery | €1.80/1,000 doses |
| (ministry rates not included, which shall be invoiced separately) | |
| Empty capsules: Cost. | |
| Bottles: 14 capsule Bottle | €0.66/bottle |
| 28 capsule Bottle | €0.69/bottle |

(these prices include conditioning materials and the use of machines owned by Laboratorios Ethypharm, S.A.)



**BELMAC** Tdde, 4 planta baja • Parque Empresarial "La Marina" • 28700 SAN SEBASTIAN DE LOS REYES (Madrid)
Tel.: 91 653 32 90 • Fax: 91 653 01 64 • www.belmac.com
Fábrica: Polígono Malpica, c/C, 4, 50018 ZARAGOZA • Tel.: 976 57 17 84 • Fax: 976 57 26 65



HEURE DE RECEPTION    9. AVR. 12:31        HEURE D'IMPRESSION    9. AVR. 12:32

Rough Translation for use by Attorneys During Depositions
May not be Submitted to Court without Permission of Edwards Angell Palmer & Dodge, LLP

A-444

09/04 2002 MAR 13:15 FAX 913199130 ETHYPHARM S.A........................    ⌐002/002

913199159



Laboratorios Belmac, s.A.

__Supply Conditions:__

1.  Prices Exwork manufacturing plant in Zaragoza.

2.  Method of payment: bank draft deferred to 90 days as from invoice date.

3.  Use of machines owned by Laboratorios Ethypharm S.A. until 12/31/02 by Laboratorios
    Belmac, S.A. staff and at our factory in Zaragoza, shall not be entitled to claim any sum due to
    such use.

Finally, we hereby notify that these prices and these conditions are solely applicable to orders made
before March 23, 2002 and confirmed before March 23, 2002.

Looking forward to receiving your confirmation.

Very truly yours,

Adolfo Herrera
General Director

2

HEURE DE RECEPTION   9. AVR. 12:31    HEURE D' IMPRESSION   9. AVR. 12:32

**Confidential**
**EP008583**
Rough Translation for use by Attorneys During Depositions
May not be Submitted to Court without Permission of Edwards Angell Palmer & Dodge, LLP

A-445



http://www.ethypharm.com

| • | Tel | +33 1 4112 1720 |
| • | Fax | +33 1 4112 1730 |
| • | E Mail | contact@ethypharm.com |
| • | Visioconf | +33 1 4112 0075 |

194, Bureaux de la Colline -
92213 SAINT CLOUD CEDEX– FRANCE

| To | Mr James MURPHY | From | Mr Gérard LEDUC |
|----|-----------------|------|-----------------|
| Cie | BENTLEY | Cc | |
| Cc | | Fax | + 33 1 4112 29 89 |
| Fax | 001603 964 6889 | Tel | + 33 1 4112 1731 |
| Tel | 001 603 964 8006 | e-Mail | leduc.gérard@ethypharm.com |
| | | | April 18, 2002 |
| Page(s) | | Date | |

Dear Mr Murphy,

Please find attached for information purposes copy of the letter sent by our Spanish subsidiary, Ethypharm SA to your Spanish Subsidiary Belmac S.A..

Yours Sincerely,

Gérard LEDUC

IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US BY TELEPHONE AND CONSIDER THAT ANY DISSEMINATION, DISTRIBUTION OR COPY OF THIS FAX IS STRICTLY PROHIBITED.



EP 002471

A-446

913199159



LABORATORIOS BELMAC S.A.
C/Teide, 4
Parque Empresarial "La Marina"
28700 SAN SEBASTIAN DE LOS REYES (Madrid)

Madrid, 18 de abril de 2002

A/A D. Adolfo HERRERA – Director General

Apreciado Adolfo

He comentado nuestro caso con nuestros servicios jurídicos y me han confirmado lo que habíamos hablado por teléfono antes de tu viaje a los EEUU respecto a los pedidos y he aprovechado para pedirles su opinión respecto a los otros temas que han surgido en las conversaciones y correspondencia que venimos manteniendo entre nuestras compañías.

En lo que a los pedidos se refiere, es obvio que nuestros acuerdos quedaron sin efecto, por expiración del plazo pactado, el 23 de Marzo de 2002, pero esto no supone que las obligaciones contraídas por Belmac al respecto se hayan extinguido. Los pedidos formulados durante la permanencia en vigor de tales acuerdos subsisten después de su terminación. Como te expliqué vosotros aceptasteis esos pedidos y fijasteis incluso la fecha de entrega. No es necesaria por tanto negociación alguna sobre regímenes transitorios para dichos pedidos. Nuestra empresa se atiene al compromiso de entrega asumido expresamente en su día por Belmac. Ayer me ha llamado un cliente desesperado diciendo que tendrá ruptura de stock el próximo viernes 26, como sabes estos trabajan con el sistema "just in time". De cualquier forma no suministrar nos perjudica a todas las partes.

Referente a la utilización de la maquinaria me dicen que no podemos aceptar, como es natural, que la maquinaria propiedad de éthypharm en vuestra fábrica de Zaragoza, pueda ser utilizada para fines distintos de la mera fabricación de los pedidos pendientes de entrega. Dicha maquinaria no podrá ser utilizada, en consecuencia, en la fabricación del producto por parte de Belmac para su propio mercado y el de sus clientes como nos has expuesto en la última carta.

Por otro lado y además si quisierais continuar/persistir en el propósito de fabricar vuestro propio producto, debo recordaros que la patente española 9301319 propiedad de ethypharm confiere a nuestra empresa un derecho de exclusiva sobre la formulación de microgránulos de omeprazol y el procedimiento para su obtención. Te ruego por lo

Marquès de la Ensenada, 16 - Centro Colón  28004 Madrid (España)
TEL : +34 913 085 651 - FAX +34 913 300 150
Correo-e ethypharm@ethypharm.es  Pag Web http://www.ethypharm.com

HEURE DE RÉCEPTION  18. AVR.  19:32      HEURE D´IMPRESSION  18. AVR.  19:33

EP 002472

A-447

913199159



tanto que os abstengáis de cualquier acto de explotación que incida en el ámbito de nuestra patente.

Como fundamentación de lo anterior emitisteis un comunicado (Bentley) y según la información que me transmitiste habéis descubierto y protegido un sistema propio de fabricación del omeprazol. Entiendo que siendo así, con el fin de evitar cualquier conflicto en materia de patentes, te pido que nos facilitéis toda la información necesaria para que nuestros técnicos y asesores legales determinen hasta qué punto dicho procedimiento escapa del ámbito de la patente de invención 9301319. Al tratarlo con ellos me han explicado y me han hecho entender y tu comprenderás que no se trata sólo de una cortesía comercial obligada después de tantos años de relaciones entre nuestras compañías, sino de una exigencia legal.

Aprovecho para transmitirte otro tema delicado que ha llegado a nuestro conocimiento según el cual Belmac pudiera estar atendiendo / dirigiéndose a clientes de ethypharm, para ofrecerles su propio producto. En principio me extraña que esto sea así dadas las conversaciones y comentarios que me has hecho en el pasado. De todas formas comprenderás, que si esto fuese así, me vea obligado a llamar tu atención sobre el carácter desleal que una práctica de esta clase podría revestir y de las sanciones legales que se contemplan al efecto.

Confío en que las diferencias surgidas entre nuestras compañías puedan ser superadas teniendo presente la relación comercial tan dilatada en el tiempo que hemos mantenido y el soporte que ethypharm ha representado siempre para Belmac en tantos aspectos. Es nuestro deseo que podamos encontrar una solución ahora y para los temas que nos quedan por debatir en el futuro. Te ruego, en esta misma línea, una respuesta con la mayor brevedad, para que nuestra empresa pueda adoptar en su caso las medidas que estime más oportunas en defensa de sus derechos e intereses.

No quisiéramos tener que haceros responsables de los daños y perjuicios que supondría para ethypharm la inobservancia por Belmac de sus compromisos contractuales sobre los pedidos pendientes o de aquellos otros que se producirían de una violación de nuestros derechos de patente. Pero debéis ser conscientes de que nuestra empresa, junto a su mejor voluntad para resolver este asunto de un modo amistoso, tiene el propósito firme de no hacer dejación alguna de sus derechos.

En espera de tus noticias y quedando a tu disposición para cualquier aclaración que precises te saluda cordialmente.

Fdo.:    ETHYPHARM, SA
         D. Adolfo de Basilio

HEURE DE RÉCEPTION  18. AVR.  19:32        HEURE D´IMPRESSION  18. AVR.  19:33

EP 002473

A-448

P. 1

\* \* \* Rapport de TRANSMISSION ( 18. Avr. 2002 20:33 ) \* \* \*

T T I    ETHYPHARM ST CLOUD 33 1 41121718

| Fich | Mode | Option | Adresse (Groupe) | Résultat | Page |
|------|------|--------|------------------|----------|------|
| 4177 | TX_MEM | | G3:00016039646889 | OK | P. 3/3 |

Cause de l'erreur
1) Raccroché ou erreur ligne  2) Occupé  3) Pas de réponse
4) Pas de télécopieur  5) Dépassement des 3 min.

# Ethypharm
Drug Delivery Solutions

http://www.ethypharm.com

- Tel      +33 1 4112 1720
- Fax      +33 1 4112 1730
- E Mail   contact@ethypharm.com
- Visioconf +33 1 4112 0075

194, Bureaux de la Colline -
92213 SAINT CLOUD CEDEX- FRANCE

| | | | |
|---|---|---|---|
| To | Mr James MURPHY | From | Mr Gérard LEDUC |
| Cie | BENTLEY | Cc | |
| Cc | | Fax | + 33 1 4112 29 89 |
| Fax | 001 603 964 6889 | Tel | + 33 1 4112 1731 |
| Tel | 001 603 964 8006 | e-Mail | leduc.gérard@ethypharm.com |
| Page(s) | | Date | April 18, 2002 |

Dear Mr Murphy,

Please find attached for information purposes copy of the letter sent by our Spanish
subsidiary, Ethypharm SA to your Spanish Subsidiary Belmac S.A..

EP 002474

A-449

[see source for English]

EP 002471

*Rough Translation for use by Attorneys During Depositions*
**May not be Submitted to Court without Permission of Baach, Robinson & Lewis, PLLC**

A-450

913199159

[logo] **Ethypharm**
Drug delivery solutions

LABORATORIES BELMAC S.A.
C/ Teide, 4
Parque Empresarial "La Marina"
28700 SAN SEBASTIAN DE LOS REYES (Madrid)

Madrid, April 18, 2002

Mr. Adolfo HERRERA – Director General

Dear Adolfo

I have discussed our case with our legal services and they have confirmed to me what we spoke about by telephone before your trip to the USA concerning the orders, and I have taken the opportunity to ask them their opinion concerning the other matters that have arisen in the conversations and correspondence which we have been maintaining between our companies.

As far as the orders are concerned, it is obvious that our agreements were rendered without effect, due to expiry of the agreed period on March 23, 2002, but this does not mean that the obligations contracted by Belmac in this regard have extinguished. The orders formulated during the period those agreements were in force still remain after termination. As I explained to you, you accepted those orders and you even set the delivery date. Therefore, no negotiation at all is necessary concerning transition regimes for those orders. Our company abides by the delivery commitment expressly assumed at the time by Belmac. Yesterday I had a call from a desperate client who will have a stock outage next Friday the 26th; as you know these people work on the "just-in-time" system. At any rate not supplying is detrimental to all parties.

With respect to use of the machinery they tell me that, naturally, we cannot accept that machinery owned by Ethypharm in your factory in Saragossa can be used for purposes other than the simple manufacture of the orders awaiting delivery. Consequently, that machinery cannot be utilized in the manufacture of the product by Belmac for its own and its clients' market as you have put it to us in your last letter.

Furthermore and moreover, if you do wish to continue/persist in your intention to manufacture your own product, I must remind you that Spanish patent 9301319 owned by Ethypharm confers upon our company an exclusive right over the formulation of omeprazole microgranules and the procedure for obtaining them. I therefore respectfully request

Marques de la Ensenada, 16 - Centro Colon 28004 Madrid (Spain)
TEL: +34 913 085 561 – FAX +34 913 100 169
Email: ethypharm@ethypharm.es  Webpage: http://www.ethypharm.com

TIME RECEIVED 18 APR. 19:32                TIME PRINTED 18 APR 19:33

EP 002472

**Rough Translation for use by Attorneys During Depositions**
**May not be Submitted to Court without Permission of Basch, Robinson & Lewis, PLLC**

A-451

913199159

[logo]    ***Ethypharm***
         Drug delivery solutions

that you refrain from any act of commercial use that infringes upon the area of our patent.

Based on the above arguments you issued a communication (Bentley), and according to the information you sent me you have discovered and protected your own system for manufacturing omeprazole. If this is the case then in my view, and with the purpose of avoiding any conflict regarding patents, I ask that you provide us with all the necessary information so that our technical personnel and legal advisers can determine to what point your procedure falls outside the scope of invention patent 9301319. When I discussed it with them they explained it to me and made me understand [sic], and you will appreciate that this is not just an obligatory commercial courtesy after so many years of relations between our companies, but rather a legal requirement.

I would also like mention to you another delicate matter which has come to our knowledge, namely the possibility Belmac might be attending/addressing itself to Ethypharm clients to offer them its own product. First and foremost I am surprised this should be so given our conversations and the comments you have made to me in the past. In any case you will understand, that if this were the case, I would be obliged to call your attention to the bad faith that this kind of practice could reveal, and the legal sanctions which apply in that regard.

I trust that the differences that have emerged between our companies can be overcome, considering the lengthy commercial relationship we have maintained over time and the support that Ethypharm has always represented for Belmac in so many aspects. It is our wish that we can find a solution now and also for the matters that remain for us to discuss in the future. Therefore in the same vein I respectfully seek a reply from you at your earliest convenience, so that our company can accordingly adopt whatever measures it deems most appropriate in defense of its rights and interests.

We would not wish to hold you liable for the damages and losses that would be entailed for Ethypharm if Belmac breaches its contractual commitments concerning pending orders or other orders which would be produced by violating our patent rights. But you must be aware that our company, together with its best will in resolving this matter in an amicable fashion, also holds firm in its intention not to abandon any of its rights.

I look forward to your reply, and will be pleased to supply you with any clarification you may require.
Yours sincerely,

[signature]
Signed: ETHYPHARM, SA
        Adolfo de Basilio

TIME RECEIVED 18 APR. 19:32                    TIME PRINTED 18 APR 19:33

EP 002473

**Rough Translation for use by Attorneys During Depositions**
**May not be Submitted to Court without Permission of Baach, Robinson & Lewis, PLLC**

A-452

[see source for English/ French]

EP 002474

Rough Translation for use by Attorneys During Depositions
May not be Submitted to Court without Permission of Baach, Robinson & Lewis, PLLC

A-453

*Doc. h. 2*

Laboratorios Balmac, S.A.

En Zaragoza, a 9 de septiembre de 2003

REUNIDOS

A 9 de septiembre de 2003 en las instalaciones de Laboratorios Belmac S.A. situadas en el Polígono Industrial Malpica c/ C, 4,

De una parte,

Laboratorios Ethypharm y, en su nombre y representación, los Sres. Igonet y Brisset.

Y, , de otra parte,

Laboratorios Belmac y, en su nombre y representación, los Sres. Cabodevilla y Caballero.

EXPONEN

1. Que de acuerdo con el documento técnico firmado el día 19 de agosto de 2003 por D. Adolfo Herrera en nombre de Laboratorios Belmac y Dña. Christin Faugère en nombre de Laboratorios Ethypharm, de fecha 19 de agosto de 2003, se procedió al desmontaje de la maquinaria de Ethypharm tal como se detalla en el párrafo 2 del presente documento, lo que se concluyó el día 9 de septiembre de 2003.

2. Que la maquinaria retirada por parte de Laboratorios Ethypharm de las instalaciones de Laboratorios Belmac S.A. ha sido la siguiente:

1 GS HP/F300 Nº FAB. HPT 1188 con los equipos auxiliares
1 GS HT / M 300 Nº FAB. HTT 1132
2 CALIBRADORES VIBRATORIOS C LA MASTRA DE 300 t.
2 MÁQUINAS SECADORAS MOD. MN 502
1 BOMBA DE PRESIÓN DEVIL BISS (Ethypharm ha decidido proceder a su destrucción)
1 CALIBRADOR VIBRATORIO DE MARCA VIBRO WEST MOD. WESTON 503

3. Que Laboratorios Belmac S.A. y Laboratorios Ethypharm reconocen que en relación con la retirada de la maquinaria y con la reparación de las instalaciones no tienen nada que reclamarse.
4. Ambas sociedades reconocen no tener nada que reclamarse mutuamente, lo que se firma en Zaragoza a 9 de septiembre de 2003.

LAB. BELMAC S.A.                    LAB. ETHYPHARM
[Firma ilegible]                   [Firma ilegible]
Sr. Cabodevilla                    Sr. Igonet

BELMAC – C/ Teide Nº4, Planta Baja - Parque Empresarial
La Marina - 28700 SAN SEBASTIÁN de los Reyes (MADRID)
Tel.: (91) 659 32 80 - Fax: (91) 652 01 44 – www.belmac.com
Fábrica: Polígono Malpica, c/ C, 4 50016 ZARAGOZA - Tel. (976) 57 17 84 - Fax (976) 57 26 63

SILVINA M. GARRIDO GARDE
INTÉRPRETE JURADO - INGLÉS
C/ NANCLARES DE OCA, 14
ED. MARBELLA - ESC. 2 - 4º B
28022 MADRID (ESPAÑA)
TEL./FAX: 91 329 52 43

CONFIDENTIAL

Doña Silvina María GARRIDO GARDÉ, Intérprete Jurado de INGLÉS, certifica que la que antecede es traducción fiel y completa al español de un documento redactado en inglés.

En Madrid, a 15 de septiembre de 2003

SILVINA M. GARRIDO GARDÉ
INTÉRPRETE JURADO - INGLÉS
C/ NANCLARES DE OCA. 14
ED. MARBELLA - ESC. 2 - 4° B
28022 MADRID (ESPAÑA)
TEL./FAX: 91 329 52 43



CONFIDENTIAL

BEL000466
A-455



...rios Belmac, S.A.

*Doc. 6.1*

In Zaragoza 09.09.03

Gathered on the 09.09.03, in the facilities of Laboratorios Belmac S.A. located in Poligono Industrial Malpica c / C n° 4, on behalf of Laboratorios Ethypharm, Mr. Igonet and Mr. Brissan, and on the part of Laboratorios Belmac, Mr. Cubodevilla and Mr. Caballero, they agree:

1. - According to the technical document signed on 19.08.2003, by Mr. Adolfo Herrera on behalf of Laboratorios Belmac and by Msr. Christin Esupire on behalf of Laboratories Ethypharm, dated on 19.08.2003 it began the disassembly of Ethypharm's machinery that is detailed in point 2 of this document, being concluded on 09.09.2003.

2.- That the retirement machinery by Laboratorios Ethypharm of the facilities of Laboratorios Belmac S.A., has been the following ones:

1 GS HP/F300 N° FAB. HPT 1188 with the auxiliary equipment.

1 GS HT / M 300 N° FAB.HTT 1132

3 VIBRATING CALIBRATOR C LA MASTRA DE 300 l.

3 DRYERS MACHINES MOD. MN 502

1 PRESSURE BOMB DEVILBISS (Ethypharm decides its destruction).

1 VIBRATING CALIBRATOR BRAND VIBRO WEST MOD. WESTON 503

3.- Laboratorios Belmac S.A. and Ethypharm Laboratorios recognize that in the retirement of the machinery and the reparation of the facilities, there is not any object of vindication by any of the parts.

4.- Both companies recognize not to have anything but that to complain to each other which they sign in Zaragoza on 09.09.2003.

LAB. BELMAC, S.A.                                    LAB. ETHYPHARM

Mr Cubodevilla                                         Mr. Igon...

2/2

LMAC

BEL000467

A-456

FILED
CL ??? ? DISTRICT COURT
DISTRICT OF DELAWARE

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

2004 SEP 27  PM 3: 15

| | |
|---|---|
| ETHYPHARM S.A. France and<br>ETHYPHARM S.A. Spain,<br><br>                 Plaintiffs,<br><br>        v.<br><br>BENTLEY PHARMACEUTICALS, INC.<br><br>                 Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

C.A. No.:    0 4 - 1 3 0 0

JURY TRIAL DEMANDED

### COMPLAINT

Plaintiffs, Ethypharm S.A. France and Ethypharm S.A. Spain (collectively referred to as "Ethypharm"), by their undersigned attorneys, as and for their Complaint against defendant, Bentley Pharmaceuticals, Inc. ("Bentley"), allege as follows:

### OVERVIEW OF THIS LAWSUIT

1.    In this action, plaintiff Ethypharm seeks $40 million in compensatory, restitutionary, and punitive damages by reason of Bentley's malicious and fraudulent misappropriation by theft and deception of Ethypharm's valuable trade secrets, know-how, and proprietary processes to manufacture valuable pharmaceutical products such as Omeprazole, a medication used in the treatment of heart burn/acid reflux. Ethypharm also seeks an injunction prohibiting Bentley and its agents from continuing to use Ethypharm's intellectual property and from continuing falsely to represent to the public that they own certain valuable trade secrets, know-how and proprietary processes used to produce, manufacture and sell Omeprazole and

1

114034

A-457

other products using Ethypharm's proprietary pellet technology including Lansoprazole when Bentley has, in fact, stolen these valuable assets from Ethypharm.

2.    Ethypharm is a privately held drug delivery company founded in 1978. Ethypharm's stock-in-trade is its confidential know-how, proprietary processes, and technology used in the formulation, clinical testing, and manufacture of pharmaceutical products.

3.    Drugs manufactured using the Ethypharm know-how and processes are often registered, licensed, and manufactured through partnerships, joint ventures, or by arrangements with independent companies.  Under such arrangements, Ethypharm provides the processes, technology and know-how, and the independent company provides the production capacity and, in some instances, access to distribution networks.  Under these arrangements, Ethypharm is compensated for the use of its valuable intellectual property by means of royalties or other methods of payment.

4.    Bentley Corporation ("Bentley") is a Delaware corporation in the pharmaceutical industry.

5.    In the early 1990's, Ethypharm entered into an arrangement with Bentley, directly and through Bentley's agent, a wholly-owned Spanish subsidiary of Bentley called Belmac S.A.

6.    Under this arrangement, Ethypharm provided Bentley, either directly or through its agent, Belmac, S.A., with access to intellectual property and trade secrets including Ethypharm's proprietary pellet technology used in the production, manufacture and sale of Omeprazole and other products.  The intellectual property and trade secrets at issue include, but are not limited to, the following:

(a)    The process, know-how and machinery necessary for the manufacture of Omeprazole and other products including Lansoprazole;

2

114034

A-458

    (b)    Specifications, trade secrets, and technical, analytical know-how associated with quality assurance, production and improvements of Omeprazole and other products including Lansoprazole;

    (c)    Know-how and trade secrets including procedures, studies and instructions necessary for Bentley and its agent, Belmac S.A., to obtain full compliance with GMP regulations relating to the manufacture of Omeprazole and other products such as Lansoprazole;

    (d)    Know-how and trade secrets relating to the confidential formulae and analytic procedures necessary for Bentley and its agent, Belmac S.A., to obtain registration with the requisite health authorities for Omeprazole and other products such as Lansoprazole; and

    (e)    Know-how and trade secrets relating to marketing approval techniques, customer contacts/lists and pricing information for Omeprazole and other products such as Lansoprazole.

7.    Under this arrangement, Bentley, either directly or through its agent, Belmac S.A., manufactured Ethypharm's Omeprazole product for Ethypharm at a facility owned by Bentley directly, or by its agent, Belmac S.A., using Ethypharm's proprietary trade secrets and intellectual property.

8.    Ethypharm received 100% of the Omeprazole manufactured by Bentley and its agent, Belmac S.A., under this arrangement. Ethypharm then sold the Omeprazole product to various distributors and pharmaceutical companies that Ethypharm cultivated at its expense. Bentley and its agent, Belmac S.A., made money under this arrangement by purchasing some of the Omeprazole it had manufactured at a favorable cost from Ethypharm to resell at substantial

3

114034

profit under Belmac's own trade name, Belmazol, or to sell to distributors under other trade names.

9.    This arrangement was extremely profitable for Bentley.  From approximately 1992 through 2002, Bentley dramatically increased in value based in large part on the substantial revenues generated from the Omeprazole manufactured under this arrangement with Ethypharm.

10.    From approximately 1992 through 2002, Bentley, directly and through its agent, Belmac S.A., occupied a position of trust with respect to Ethypharm.  During this decade-long period, Bentley, directly and through its agent, Belmac S.A., had full access to Ethypharm's machinery, as well as to Ethypharm's know-how, formulae, trade secrets, analytical methods, as well as Ethypharm's proprietary pellet technology process.

11.    Privately, Bentley and its agent, Belmac S.A., clearly and repeatedly acknowledged to Ethypharm throughout the period from 1992 through 2002 that the machinery, technology, processes, formulae, trade secrets, know-how, customer lists, pricing information, and analytical methods were solely the property of Ethypharm, and were to be used solely to manufacture Omeprazole for Ethypharm.

12.    Publicly, Bentley and its agent, Belmac S.A., told a very different -- and false -- story regarding the ownership of the Omeprazole technology.  They told this story in an effort to falsely inflate Bentley's value.

13.    At various times from 1992 through 2002, Bentley and its agent, Belmac S.A., falsely represented to the industry, to consumers, and to its own shareholders that they were the owners of the technology, the know-how, and equipment used to develop and to manufacture the Omeprazole.  At the time they made these public statements, Bentley and its agent, Belmac S.A.,

114034

4

A-460

knew the statements were false, misleading and directly contrary to private assurances and commitments made to their business partner, Ethypharm.

14.    During the period 1996 to 2002, Bentley's share price increased from $3.00 to more than $10.00. This increasing share price was driven, in part, by the false representations regarding Omeprazole made by Bentley and its agent, Belmac S.A., and, in part, by substantial revenues generated from the Omeprazole manufactured under the arrangement with Ethypharm.

15.    In or around late 2001 or early 2002, Bentley and its agent, Belmac S.A., embarked on a bold scheme to steal machinery, know-how, trade secrets, technology, processes, formulae, and analytical methods relating to Ethypharm's pellet technology. Through this scheme, Bentley and its agent, Belmac S.A., sought to use Ethypharm's proprietary machinery, know-how, trade secrets, technology, processes, formulae and analytical methods to manufacture Omeprazole just as it had for the past decade but without acknowledging Ethypharm's proprietary rights. Instead, Bentley and its agent, Belmac S.A., planned to keep for their own account all the Omeprazole manufactured through the misuse and misappropriation of Ethypharm's intellectual property and trade secrets. Bentley and its agent, Belmac S.A., also planned to use the stolen intellectual property and trade secrets relating to Ethypharm's pellet technology to manufacture and sell other products including, but not limited to, Lansoprazole.

16.    To facilitate this scheme, in or around March of 2002, Bentley, directly and through its agent, Belmac S.A., ceased, with few exceptions, to produce Omeprazole for Ethypharm. Nevertheless, Bentley continued to produce Omeprazole using the Ethypharm machines, confidential know-how, trade secrets, formulae, and processes. Bentley abused its position of trust with Ethypharm and misappropriated Ethypharm's valuable know-how and trade secrets for its own profit and use.

5

114034

A-461

17.    In a further effort to facilitate this scheme, Bentley, directly and through its agent, Belmac S.A., falsely and fraudulently stated to Ethypharm on repeated occasions that: they would not take direct or indirect action to prejudice Ethypharm's rights; they would not compete unfairly with Ethypharm; and they would not use Ethypharm's machinery, technology, trade secrets and processes to manufacture Ethypharm's formulation of Omeprazole except for limited supplies for Ethypharm's existing customers.

18.    Relying on these false representations, Ethypharm allowed Bentley and its agent, Belmac S.A., to keep Ethypharm's machines to permit certain levels of manufacturing to continue for Ethypharm's customers only.  Secretly, however, Bentley and its agent, Belmac S.A., planned to, and did, use Ethypharm's machinery, technology, trade secrets, and processes to manufacture Ethypharm's formulation of Omeprazole for Bentley and/or Belmac S.A.'s direct sales to their own customers (and customers they planned to steal from Ethypharm) without providing any royalty or other payment to Ethypharm.  Bentley and its agent, Belmac S.A., also misused and misappropriated Ethypharm's trade secrets in creating new or modified products including, but not limited to, Lansoprazole.

19.    At the same time they were providing false assurances to Ethypharm, Bentley and its agent, Belmac S.A., continued falsely to advise the pharmaceutical industry, the consuming public, the investing public, and its own shareholders that Bentley and its agent, Belmac S.A., were manufacturing Omeprazole and developing other products such as Lansoprazole using Ethypharm's trade secrets including Ethypharm's pellet technology.

20.    Bentley enticed Ethypharm to provide access to Ethypharm's essential intellectual property, trade secrets, machinery, customer and pricing information and then betrayed Ethypharm by misappropriating Ethypharm's intellectual property, trade secrets and

6

114034

machinery and using these for its own purposes and without compensation to Ethypharm. By these acts of bad faith, Bentley unjustly enriched itself, and seriously harmed Ethypharm.

  21. Bentley, either directly or through its agent, Belmac S.A., continues to this day to use the stolen and misappropriated Ethypharm technology, know-how, trade secrets and processes to manufacture Omeprazole and other products including, but not limited to, Lansoprazole.

  22. Bentley continues to this day to misrepresent to the pharmaceutical industry, the consuming public, the investing public, and its own shareholders the true ownership of the intellectual property, trade secrets, technology, know-how, and processes of Omeprazole and other products.

  23. Bentley has enjoyed, and continues to enjoy, the benefits and protections of a Delaware corporation and of a publicly traded company in the United States while unjustly enriching itself through the direction, orchestration and ratification of all of the conduct at issue in this Complaint. Bentley is sued here based on its own conduct and the conduct of its Spanish subsidiary -- Belmac S.A. -- which, at all times relevant to this Complaint, has acted as Bentley's agent with actual and/or apparent authority in its interactions and communications with Ethypharm. Bentley has directed, orchestrated, and controlled the transactions complained of in the causes of action set forth in this Complaint. All of Belmac S.A.'s acts at issue here were undertaken at Bentley's direction and/or on behalf of Bentley. Moreover, Bentley, as principal in this principal-agent relationship, has ratified all of the conduct at issue in this Complaint that was taken by its agent, Belmac S.A. In addition, Bentley is sued as a joint tort-feasor.

7

114034

## JURISDICTION AND VENUE

24.    This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a)(2), because the matter in controversy exceeds $75,000 and the suit is between a citizen of a foreign state and a citizen of the State of Delaware.

25.    Alternatively, this Court has jurisdiction pursuant to 6 DEL. C. § 2001 et seq. (Uniform Trade Secrets Act).

26.    Venue is proper in this District under 28 U.S.C. §§ 1391(a) and 1391(c).

## THE PARTIES

27.    Plaintiff Ethypharm S.A. France is, and at all relevant times was, organized under the laws of the Republic of France, with its principal office in France. Ethypharm S.A. France is a drug delivery company primarily engaged, directly and through its subsidiaries, in the business of developing proprietary drug delivery systems and formulating, clinically testing, registering, manufacturing, marketing and licensing pharmaceutical products based on its drug delivery systems, in Europe and around the world.

28.    Ethypharm S.A. Spain is a majority owned subsidiary of Ethypharm S.A. France, organized under the laws of Spain, with its principal office in Madrid. Plaintiffs Ethypharm S.A. France and Ethypharm S.A. Spain are referred to in this Complaint collectively as "Ethypharm."

29.    Defendant Bentley Pharmaceuticals, Inc. ("Bentley") is incorporated under the laws of Delaware, with its principal place of business in Exeter, New Hampshire. Bentley's designated agent for service of process is The Corporation Trust Company, Corporation Trust Center, 1201 Orange Street, Wilmington, DE 19801.

114034

8

A-464

### FACTUAL ALLEGATIONS

#### Corporate History of Bentley and Relationship Between Bentley and Belmac

30.    Bentley was incorporated in Florida in 1974 as Belmac Corporation.

31.    In 1992 or before, Belmac Corporation began to operate in Spain, both directly and through its Spanish subsidiary, and agent, Laboratorios Belmac, S.A. ("Belmac S.A.").

32.    Officers of Belmac Corporation, including James Murphy, visited Spain and France, and met directly with trading partners of Belmac Corporation in Spain and in France, including meeting with Ethypharm.

33.    Belmac Corporation and Belmac S.A. had at that time a close relationship. Belmac S.A. acted as an agent for its disclosed principal, Belmac Corporation.

34.    On January 1, 1996, Belmac Corporation changed its name to Bentley Pharmaceuticals, Inc. ("Bentley").

35.    In 1999, through a merger with a Delaware subsidiary, Bentley effected a change of domicile to Delaware.

36.    From the time of its name change in 1996 through to the present, Bentley has continued to act in Spain, both directly and through its agent, Belmac S.A.

37.    Documents filed with the Securities and Exchange Commission indicate that profits of Bentley and Belmac S.A. are combined for reporting purposes. In recent years, Belmac S.A. has generated up to 99% of Bentley's profits and revenues.

38.    James Murphy, who is the Chairman, President, and CEO of Bentley also acts as the General Manager of Belmac S.A. This, among other features of the close relationship between the two entities, has allowed Bentley to control and/or ratify the decisions of its agent, Belmac S.A. with respect to the conduct at issue in this Complaint.

114034

9

39.    Bentley is traded on the New York Stock Exchange. Its stock price is largely determined by the success or failure of the operations in Spain of Bentley directly, and the operations of Bentley's agent, Belmac S.A.

40.    By domiciling itself in the United States, even though virtually all of its revenues and profits derive from its Spanish operations, Bentley avails itself of the benefits and protections of U.S. and Delaware law and obtains greater and easier access to U.S. investors than would be possible if it were domiciled in Spain.

41.    During the period relevant to this Complaint, Belmac S.A. had three successive General Managers. With respect to the conduct at issue in this Complaint, the General Managers of Belmac S.A. reported to, and took direction from, James Murphy, Chairman and Chief Executive Officer of Bentley in the United States.

42.    The General Managers of Belmac S.A. frequently contacted James Murphy of Bentley by telephone and frequently traveled to the United States to meet with him. In addition, James Murphy traveled to Spain to meet with the General Managers of Belmac S.A. and traveled to France to meet with Ethypharm.

43.    When Ethypharm raised questions relating to its ongoing relationship with Belmac S.A., the General Managers of Belmac S.A. in Madrid often told Ethypharm that they could not provide an answer until after they had spoken with James Murphy of Bentley in the United States by telephone or until after they had an opportunity to meet and discuss this matter in the United States with James Murphy of Bentley.

44.    James Murphy, in January 1997, at a time when he was Chairman and Chief Executive Officer of Bentley, corresponded with Patrice Debrégeas, the Chief Executive Officer of Ethypharm, about the relationship between Ethypharm, Bentley, and Laboratorios Belmac

10

114034

A-466

S.A. In that correspondence, Mr. Murphy expressly confirmed that he had "assumed control" of Belmac S.A. He also referred to Belmac S.A.'s actions as being actions that confirmed Bentley's good faith, and Bentley's level of commitment and cooperation with Ethypharm.

45. By this January 1997 letter, Mr. Murphy confirmed the nature of the relationship between Bentley and Belmac S.A. as it has existed throughout the period relevant to this Complaint; namely, that: (1) Belmac S.A. acts as an agent for Bentley; (2) Bentley has a direct relationship with Ethypharm; and (3) Bentley controls and/or ratifies Belmac S.A.'s actions.

46. The course of direct dealing between Bentley and Ethypharm, including the January 1997 letter, establish that Bentley is the principal in all transactions at issue in this Complaint.

### The Arrangement Between Bentley/Belmac S.A. and Ethypharm for the Manufacture of Omeprazole

47. In 1991, Ethypharm obtained a patent in Spain for a "stable formula of Omeprazole gastro protected micro granules and the process for obtaining it" (Spanish Patent No. 9301319 ("the Spanish Patent")). Both before and after 1991, Ethypharm also acquired, as a result of significant effort and expense, intellectual property and trade secrets including but not limited to proprietary information and know-how relating to production, manufacturing, sale, quality assurance, pellet technology, registration and marketing techniques as well as customer lists and pricing information. Bentley's theft and misappropriation of Ethypharm's intellectual property, know-how and trade secrets including those related to its pellet technology is the focus of this lawsuit; this Complaint makes no claim for patent infringement.

11

114034

A-467

48.    In 1991, Ethypharm began negotiating with Bentley (during this period, Bentley's name was Belmac Corporation) to manufacture Omeprazole by obtaining access to Ethypharm's intellectual property, know-how and trade secrets.

49.    James Murphy, as an officer of Bentley (then known as Belmac Corporation) visited Spain and France to meet with representatives of Ethypharm to discuss a cooperative venture in which Bentley would assist Ethypharm in the manufacture of Omeprazole.

50.    In this period, under the supervision of James Murphy, Bentley (then known as Belmac Corporation) purchased a Spanish corporation called Rimafar S.A. to act as Bentley's agent in Spain. The Spanish corporation was renamed as Laboratorios Belmac, S.A. ("Belmac S.A.").

51.    Bentley (then known as Belmac Corporation) purchased Rimafar S.A. (renaming it Belmac S.A.) in large part because of the business opportunity offered by Ethypharm, in particular the manufacture of Omeprazole for Ethypharm using Ethypharm's valuable intellectual property and trade secrets.

52.    During this period of time, neither Bentley nor its agent, Belmac S.A., had any manufacturing facilities certified by the Spanish authorities as suitable for the manufacture of Omeprazole. Moreover, neither Bentley nor its agent, Belmac S.A., had the machinery, processes, technology, or know-how necessary for the production, manufacture or sale of Omeprazole.

53.    In the 1992 time period, Bentley, directly and through its agent, Belmac S.A., entered into an arrangement with Ethypharm whereby Ethypharm would assist Bentley in obtaining the necessary certifications from the Spanish authorities for the manufacture of Omeprazole. In addition, Ethypharm would provide Bentley and its agent, Belmac S.A., the

12

114034

A-468

machinery, know-how, trade secrets, processes, and technology necessary for the manufacture of Omeprazole.

54.    For its part, Bentley, directly and through its agent, Belmac S.A., agreed to manufacture Omeprazole exclusively for Ethypharm.

55.    In accordance with this arrangement, Ethypharm, over course of the next decade, provided on-site and off-site assistance, guidance, education and training of Bentley and Belmac employees over all aspects of the production, manufacture and sale of Omeprazole. In so doing, Ethypharm provided access to its proprietary trade secrets and intellectual property relating to its pellet technology while stressing the importance of, and receiving assurances regarding the maintenance of confidentiality with respect to Ethypharm's intellectual property and trade secrets.

56.    In accordance with this arrangement, Ethypharm did supply to Bentley, through its agent, Belmac S.A., intellectual property and trade secrets including Quality Assurance procedures and instructions necessary to enable Bentley, through its agent, Belmac S.A., to manufacture Omeprazole in full compliance with GMP regulations in force in Spain.

57.    In accordance with this arrangement, Ethypharm did communicate to Bentley, through its agent, Belmac S.A., other proprietary and confidential information and trade secrets, including formulae, clinical studies, and analytical methods necessary for Belmac S.A. to obtain the necessary regulatory approvals for the marketing of Omeprazole and other products.

58.    In accordance with this arrangement, Ethypharm did communicate to Bentley, through its agent, Belmac S.A., other proprietary and confidential information and trade secrets, including utilization, production and manufacturing techniques, technical and analytical know-

114034                                  13

A-469

how, pellet technology and know-how, marketing approval techniques and know-how, customer and pricing information.

59.    Under this arrangement, Ethypharm provided the raw material necessary to manufacture the Omeprazole to Bentley's agent, Belmac S.A., which then produced the drugs using the Ethypharm machinery, know-how, trade secrets, processes, and technology.

60.    Under this arrangement, neither Bentley nor its agent, Belmac S.A., were authorized to manufacture Ethypharm's Omeprazole for its own use or to develop, produce or manufacture other products using Ethypharm's intellectual property and trade secrets. 100% of the Omeprazole manufactured by Bentley or its agent, Belmac S.A., under this arrangement was provided to Ethypharm.

61.    Ethypharm then sold the Omeprazole to distributors, including to Bentley's agent, Belmac S.A.

62.    Under this arrangement, Bentley and its agent, Belmac S.A., clearly and repeatedly confirmed and acknowledged that the machinery, know-how, processes, and technology used in the manufacturing of Omeprazole were proprietary to Ethypharm and were not the property of Bentley or Belmac S.A. As one example, Belmac S.A. employees working on various aspects of the manufacture of Omeprazole were required to, and did, sign confidentiality statements acknowledging that Ethypharm -- and not Bentley or Belmac S.A. -- was the sole owner of the technology, know-how, process and formulae of the Omeprazole. As another example, the General Manager of Belmac S.A. signed contracts with third party customers acknowledging that the know-how and technology that Belmac S.A. used to manufacture Omeprazole were the sole property of Ethypharm.

14

114034

63.    Upon information and belief, Belmac S.A. entered into its manufacturing arrangements with Ethypharm at Bentley's direction, as part of a unified business strategy, conceived and implemented by Bentley, to increase the global distribution of pharmaceutical products manufactured by Bentley companies using pellet technology and other trade secrets owned by Ethypharm.    At all times relevant to this Complaint, Belmac S.A. has acted as Bentley's agent with actual and/or apparent authority in its interactions and communications with Ethypharm.    All of Belmac S.A.'s acts at issue here were undertaken at Bentley's direction and/or on behalf of Bentley.    Moreover, Bentley, as principal in this principal-agent relationship, has ratified all of the relevant conduct in this Complaint that was taken by Belmac S.A.

### Bentley's False, Misleading, Incomplete, and Deceptive Public Statements About the Ownership of the Machinery, Technology, Processes and Know-How Used in the Manufacture of Omeprazole

64.    Bentley's manufacture of Omeprazole for Ethypharm using Ethypharm's machinery, processes, and know-how is by far the single largest contributor to Bentley's revenues and profits.

65.    In Bentley's Form 10-K Annual Report for the fiscal year ending December 31, 1998, for example, Bentley stated that:

> The percentage of the Registrant's [Bentley] total revenues for the year ended December 31, 1998 attributable to its operations in Spain and the United States are approximately 99% and 1%, respectively.    The Registrant's pharmaceutical operations in Spain are a result of its 1992 acquisition of Rimafar S.A. (subsequently renamed and referred to herein as Laboratorios Belmac S.A.)

66.    Bentley's Form 10-K Annual Reports for subsequent fiscal years, through and including the fiscal year ending December 31, 2003, contain substantially identical statements to the effect that virtually all of Bentley's revenue are generated by its Spanish operations.

15

114034

A-471