**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

---

|  |  |
|---|---|
| **ETHYPHARM S.A. FRANCE and ETHYPHARM S.A. SPAIN,** | ) ) ) |
|  | ) **C.A. No.:  04-1300 (SLR)** |
| **Plaintiffs,** | ) |
|  | ) **ORAL ARGUMENT REQUESTED** |
| **v.** | ) |
|  | ) |
| **BENTLEY PHARMACEUTICALS, INC.** | ) |
|  | ) |
| **Defendant.** | ) |
|  | ) |

---

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF MOTION
FOR SANCTIONS AND OTHER APPROPRIATE RELIEF**

Francis J. Murphy, Esquire (No. 223)
MURPHY SPADARO & LANDON
1011 Centre Road, Suite 210
Wilmington, DE 19805
Tel: (302) 472-8100
Fax: (302) 472-8135

*Attorneys for Plaintiffs*

*Of Counsel:*

Dwight P. Bostwick, Esquire
Bruce R. Grace, Esquire
Jonathan D. Fine, Esquire
Baach Robinson & Lewis PLLC
1201 F Street, NW, Suite 500
Washington, DC 20004
Tel: (202) 833-8900
Fax: (202) 466-5738

Dated:  September 21, 2006

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS .................................................................1

SUMMARY OF ARGUMENT ...............................................................................................1

STATEMENT OF FACTS .......................................................................................................3

ARGUMENT ............................................................................................................................7

I.      The Nature and Relevance of the New Evidence .................................................7

II.     This Prejudicial Production is Not an Isolated Event ...........................................9

III.    Legal Authority .....................................................................................................12

CONCLUSION AND RELIEF REQUESTED .......................................................................13

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ................................................................12

*Gallant v. Telebrands Corp.*, 35 F. Supp. 2d 378 (D.N.J. 1998).......................................12

*Moscony v. Quaker Farms, LP*, No. 00-2285, 2002 U.S. Dist. LEXIS 1829 (E.D.
    Pa. Jan. 25, 2002)..........................................................................................................12

*Nazareth Nat'l Bank & Trust Co. v. E.A. Int'l Trust*, No. 98-6163, 2000 U.S.
    Dist. LEXIS 285 (E.D. Pa. Jan. 14, 2000) ...................................................................12

*Shammouh v. Karp*, No. 96-4706, 1997 U.S. Dist. LEXIS 18219 (E.D. Pa. Nov.
    17, 1997) ........................................................................................................................12

### FEDERAL STATUTES

28 U.S.C. § 1927 ...........................................................................................................1, 12

## NATURE AND STAGE OF THE PROCEEDING

On November 30, 2005, this Court entered a scheduling order, setting July 14, 2006, as the cut-off for phase I discovery on the issues of agency and joint tortfeasor status. D.I. 36. On July 20, 2006, by stipulation of the parties, the Court postponed the phase I discovery cut-off to August 5, 2006. D.I. 61. After the close of discovery, on August 10, 2006, Bentley produced approximately 110 new pages of documents relating to the issues of agency and joint tortfeasor status. As required by the Court, on August 25, 2006, Bentley filed a motion for summary judgment on the issue of agency. On the deadline set by the Court, Friday, September 15, 2006, Ethypharm filed its papers in opposition to Bentley's motion. The following day, Saturday, September 16, 2006, Federal Express delivered to counsel for Ethypharm a package containing approximately 95 additional pages of documents relating to agency and joint tortfeasor status from Bentley's attorneys. Ethypharm now moves for sanctions and other relief that the Court deems proper, pursuant to 28 U.S.C. § 1927 and the Court's inherent powers.

## SUMMARY OF ARGUMENT

In accordance with the Court's Order of July 20, 2006, Ethypharm filed its Opposition to Bentley's Motion for Summary Judgment on the issue of agency on Friday, September 15, 2006. On Monday, September 18, 2006, Ethypharm's attorneys received a letter from Bentley's attorneys marked for delivery on Saturday, September 16, 2006, the day after Ethypharm's Opposition for Summary Judgment was due. This letter enclosed documents directly relevant to phase I discovery relating to the issue of agency. These documents were clearly requested by Ethypharm in its first document request, served on December 9, 2005. Phase I discovery on the issue of agency ended on August 5, 2006 and all depositions took place between June 27, 2006 and August 4, 2006.

Bentley's attorneys produced these agency-related documents the Saturday after a Friday filing deadline without providing any notice of the existence of these documents before

Ethypharm filed its Opposition to Summary Judgment, despite the fact that the attorneys with the respective law firms for the parties were in contact a number of times during the week, including contact that took place on Friday.

Ethypharm is fully aware that obtaining discovery in this case has been challenging. Ethypharm is also aware that attorneys can make mistakes. But there is no excuse for sending documents responsive to agency issues by special Saturday delivery so that they are received one day after the longstanding due date for Ethypharm's opposition to Bentley's motion for summary judgment.

This is not the first time in this case that Ethypharm has been prejudiced by production of documents after the close of discovery. This production fits a pattern of Bentley's hiding or failing to produce highly relevant evidence on the issue of agency in a timely manner. For example:

- After the August 5, 2006 phase I discovery cut-off, Ethypharm received approximately 40 pages of Bentley time allocation charts on the critical issue of the time various Bentley officials spent managing Belmac operations. A158, A117-A156.

- After the August 5, 2006 phase I discovery cut-off, Ethypharm received approximately 46 pages of invoices demonstrating that Bentley was invoicing its Spanish subsidiary millions of dollars for management services provided by the parent company. A158, A160-A206. Management and direction by the parent is the critical issue with respect to agency.

- Three days before the discovery cut-off, and after the depositions of Adolfo Herrera (Belmac's GM) and James Murphy (Bentley's CEO), Ethypharm received communications between Murphy and Herrera showing that Herrera sought approval from Bentley with respect to contact with Ethypharm regarding

the November 14, 2001 termination of the Ethypharm-Belmac relationship. A108-A113, A115.

- Murphy's sworn declaration filed in support of Bentley's earlier Motion to Dismiss contained numerous false statements and material omissions regarding his own legal authority to act on behalf of the Spanish subsidiary which were only uncovered through the added expense of an independent investigation of the files of the Spanish Registry in Madrid by local counsel. A1-A5, A56-A64.

Ethypharm's inability to question Bentley and Belmac witnesses on late produced evidence resulted in prejudice to Ethypharm.

Ethypharm's attorneys bring this motion reluctantly and only after careful consideration. When problems with productions and other discovery related issues have come up in the past in this case, Ethypharm's attorneys have bent over backwards to give the benefit of the doubt to Bentley while making absolutely clear that Bentley's conduct has prejudiced Ethypharm and cannot continue. This was the case when Ethypharm received critical time allocation sheets after the close of discovery. Ethypharm attorneys noted that the timing of the production was prejudicial and reserved the right to ask questions on these documents during phase II discovery, yet stopped short of bringing the issue to the attention of the Court. A208, A259; A262-3.

It is precisely because this recent conduct is part of a demonstrated pattern of producing documents late and in a manner that does not permit either Ethypharm or the Court to understand and explore fully the agency question that Ethypharm's attorneys feel compelled to alert the Court of this conduct and seek appropriate relief in the form of sanctions on behalf of our clients.

## STATEMENT OF FACTS

The first phase of discovery in this case, devoted wholly to the issue of Defendant Bentley Pharmaceuticals, Inc.'s ("Bentley") liability as principal for its agent, Laborotorios Belmac S.A., and Bentley's status as joint tortfeasor, closed on August 5, 2006. Since that date,

Bentley has produced more than 200 pages of documents, many of which are highly relevant to the issues of agency and joint tortfeasor status.  Indeed, Bentley's attorneys produced almost 100 pages of these documents, without notifying Ethypharm's counsel, so that they would arrive Saturday September 16, 2006, the day after Ethypharm filed its opposition to Bentley's motion for summary judgment on agency.

During the week of September 11 through 15, 2006, counsel for Ethypharm were in frequent contact with Bentley's lawyers at the firm of Edwards Angell Palmer & Dodge LLP in Boston.  A79 ¶ 3.  At least three communications took place on September 12, 2006; at least two communications took place on September 13; and at least one communication took place on the afternoon of Friday, September 15.  *Id*.  In none of those communications – or at any other time before the delivery of materials on September 16, 2006 – did counsel for Bentley indicate to Ethypharm's counsel that any documents relating to phase I discovery (agency and joint tortfeasor status) had yet to be produced.  *Id*.

In the evening on Friday September 15, 2006, Ethypharm's counsel served a copy of Ethypharm's brief in opposition to Bentley's motion for summary judgment on counsel for Bentley by email, and at approximately 9:30 pm, Ethypharm's Washington, DC counsel confirmed that Ethypharm's papers in opposition to Bentley's motion for summary judgment had been filed electronically with the Court by local counsel.  A80 ¶ 4.

On the morning of Monday, September 18, 2006, the next business day, counsel for Ethypharm discovered a Federal Express package from Edwards Angell Palmer & Dodge LLP, marked for Saturday delivery.   A80 ¶ 5.   The package contained a cover letter enclosing approximately 95 pages of documents relating to the issues of agency and joint tortfeasor status in electronic form.  In particular, this late production included:

> (a)     An employment contract for Clemente Gonzales Azpetia, a former General Manager of Bentley's subsidiary, Laborotorios Belmac SA, signed by James Murphy ("Murphy") as the Chairman of Belmac

Corporation (Belmac Corporation is the former name of Bentley, the parent company) outlining the powers delegated to Mr. Azpetia as General Manager of Laboratorios Belmac; A80 ¶ 5, and

(b)     A document relating to the date of separation, and terms of severance, of another former General Manager of Laborotorios Belmac, Angel Perez de Ayala. *Id*.

Both of these documents are responsive to Ethypharm's first document requests served on December 9, 2005. *See*, *e.g.*, A215-A230 ¶¶ 12, 14.[1]

The contents of the package were the first indication that Ethypharm's attorneys had of the existence of the documents relating to phase I discovery (agency and joint tortfeasor status) enclosed therein. A80 ¶ 6.

The tracking information for the Federal Express package (Number 911692955353) indicates that the package was picked up on Friday September 15, at 8:02 pm in Boston, and Federal Express delivered the package to the guard station in the building where Ethypharm's counsel have offices, in Washington, DC, at 11:50 am on Saturday, September 16, 2006. A80 ¶ 7.

On previous occasions, despite repeated requests from Ethypharm, Bentley has produced highly relevant documents in an untimely manner, including:

(a)     Two faxed communications between the General Manager of Bentley's subsidiary, Laborotorios Belmac SA, Adolfo Herrera ("Herrera"), and the Chairman and CEO of Bentley, James Murphy, relating to the November 14, 2001, notice of termination sent to Ethypharm. A108-A113, A115. These documents were received by Ethypharm's attorneys

---

[1]  In light of the timing and nature of this motion, and the need to inform the Court about the substance of the documents, Ethypharm has provided translations of the relevant documents. In the unlikely event that Bentley does not fully adopt the translations, we will amend our filing accordingly.

on August 2, 2006, after the depositions of both Herrera and Murphy, among approximately 30,000 pages of discovery material unrelated to the issues of agency and joint tortfeasor status, and were identified as relevant to those issues only on August 4, 2006, one day before the close of discovery.  A115, A108-A113.

(b)     Monthly time allocation reports indicating the amount of time spent by Bentley executives managing the business of Laborotorios Belmac SA. Despite repeated requests, these documents were first produced via email after the close of discovery on the issues of agency and joint tortfeasor status on August 10, 2006.  A117-A156, A158.

(c)     Monthly invoices between Bentley and Laborotorios Belmac SA for management fees owed to Bentley from Laborotorios Belmac relating to time allocation reports discussed above.  Despite repeated requests, these documents were first produced on August 10, 2006 after the close of discovery on the issues of agency and joint tortfeasor status, even though Bentley had earlier produced other invoices between one of its wholly-owned U.S. subsidiaries, Pharma de Espana, and Laborotorios Belmac. A158, A160-A206.

On Monday, September 18, 2006, counsel for Ethypharm sent a letter to counsel for Bentley, requesting an explanation for the untimely production of the documents received on September 16, 2006 and received an emailed response from Bentley's counsel on Tuesday, September 19, 2006.  A211, A213.  In the e-mail response, Bentley's counsel characterized the late production as a "mistake" and indicated his preliminary understanding that "I doubt that [the

documents] are in any way material to the issues of agency or Bentley's status as an alleged joint-tortfeasor." A213.[2]  As described below, these documents are, in fact, highly relevant to agency.

## ARGUMENT

### I.      The Nature and Relevance of the New Evidence

In their September 15, 2006 cover letter, Bentley's own attorneys acknowledged that the documents are relevant to the phase I issues of agency and joint tortfeasor status.  ("The other CD contains documents responsive to Supplemental Phase I requests.")  A84.  The documents produced are in Spanish and not all of them have been fully translated.  However, even a brief look at just two of these documents demonstrates that they are highly relevant to Ethypharm's theory of the case on agency and joint tortfeasor status.

An important disputed issue of material fact in the case has been whether and when the CEO of Bentley, James Murphy, assumed control of Bentley's wholly-owned subsidiary, Laboratorios Belmac ("Belmac").  Another critical disputed issue of fact is whether Murphy negotiated with Ethypharm on issues relating to its subsidiaries.  Another is whether Murphy acted in his capacity as CEO of the parent company in his dealings with the subsidiary.  On these points, Murphy submitted a sworn declaration in the context of Bentley's earlier motion to dismiss in which he stated, in part:

> The terms of any agreements between Belmac and Ethypharm were negotiated by representatives of Belmac, specifically the Belmac general managers, not Bentley.  A61 ¶ 18.

Similarly, Mr. Murphy swore to the following statement in his declaration:

> …the only times in which I interacted with Ethypharm on behalf of Bentley was between 1995 and 2000, when I discussed or corresponded with Ethypharm on behalf of Bentley concerning possible direct business collaboration between the two companies.  These contacts were sporadic and did not concern the omeprazole business between Ethypharm and Belmac.  A63 ¶ 24.

---

[2]    While Bentley's attorney indicated he would write a letter providing further detail by September 20, 2006, we have not received anything further.

Ethypharm asserts that these sworn statements by Murphy are false, misleading and omit material facts. Ethypharm does not make this assertion lightly. The testimony of numerous Ethypharm officials and the existence of contemporaneous evidence including press releases, diaries, letters of intent and correspondence from Bentley and Murphy demonstrate that Murphy's statements are false. In fact, Murphy participated in many detailed negotiations with Ethypharm on the subject of Belmac on many occasions from 1994 through 2000. D.I. 73 pp. 10-17. At least two of the documents produced by Bentley after Ethypharm filed its Opposition for Summary Judgment are directly relevant to this issue and help demonstrate the truth of Ethypharm's position and the falsity of Murphy's statements.

The first document is a June 13, 1995 employment agreement between Belmac, the Spanish subsidiary, and Clemente Gonzalez Azpetia, the new General Manager. A86-A103. This document shows that Mr. Azpetia did not sign an agreement to take over as General Manager of the Spanish Subsidiary until June of 1995. *Id.* It also demonstrates that the General Manager may not act autonomously but must take direction from James Murphy (who is both the President of the Spanish Subsidiary and the CEO and Chairman of the Board of Bentley, the U.S. parent company). Mr. Murphy, apparently by his own hand, wrote below his signature that he was signing this employment agreement in his capacity as Chairman of Bentley, the parent company (which was at that time named Belmac Corp.). A94, A103.

The second document is a severance agreement from the prior General Manager of the Spanish Subsidiary, Mr. Perez de Ayala. The severance arrangement is dated November 10, 1994. A105-A106.

Together, these two documents confirm that Bentley's wholly owned subsidiary ***did not even have*** a General Manager for approximately seven months – from November of 1994 to June of 1995. It is undisputed that Mr. Murphy flew to Europe on many occasions during this important time period and directly discussed and negotiated matters relating to "the omeprazole business between Ethypharm and Belmac." A63 ¶ 24. Because Bentley's Spanish subsidiary did

not even have a general manager for over six months, Murphy's statement that the General Managers of Belmac were solely responsible for negotiating with Ethypharm is demonstrably false. Moreover, Murphy's own admission, apparently written in his own handwriting and under his signature on this employment agreement, confirms that Murphy viewed himself as acting in his capacity of Chairman of Bentley, the parent company in the United States (then called Belmac Corp.). This evidence corroborates the testimony of Ethypharm witnesses that Murphy always held himself out as the top official of the parent company during this timeframe and conflicts with Murphy's sworn declaration to the contrary.

Finally, and despite the statements in Murphy's sworn declaration relating to the "autonomous authority" the Spanish General Managers purportedly held over the operations of the Spanish subsidiary, the July 13, 1995 employment agreement also clarifies that the General Manager was to take direction and seek approval from Mr. Murphy rather than act autonomously. A58 ¶ 9, A87 ¶ 2.1, A96 ¶ 2.1. Of course, Ethypharm is prejudiced by not having received these documents in time to ask Murphy and others questions about them during depositions.

No reasonable excuse exists for Bentley's failure to produce these documents early in the litigation. Murphy signed his sworn declaration in November of 2004. Murphy's sworn statements bore directly on the issues of agency, management and control. These statements related directly to the scope of authority given to the General Manager in the July 13, 1995 employment agreement. This document should have been one of the very first documents Bentley produced. Yet it was produced long after the depositions, long after the close of discovery on agency, and a day after Ethypharm was required to file its opposition to Bentley's motion for summary judgment.

## II.    This Prejudicial Production is Not an Isolated Event.

Bentley's production of agency related documents after the due date for the filing of Ethypharm's Opposition to Bentley's Motion for Summary Judgment on the issue of agency is not an isolated incident. During discovery, Ethypharm repeatedly sought to receive documents

- 9 -

related to time that Murphy and other top Bentley officials spent managing and directing the affairs of the Spanish subsidiary.[3]  No issue was more directly relevant to phase I discovery.  Yet Bentley waited until after the close of discovery on August 5, 2006 – and after any meaningful opportunity to depose Bentley and Belmac witnesses had passed – to produce dozens of pages of monthly time allocation sheets kept by Bentley to memorialize the percentage of time that top officials spent providing management services to Belmac.  A119-A156.  These monthly time allocation sheets from Bentley's U.S. office (which has only sixteen employees) should have been produced early in this litigation, not after the close of discovery.

These monthly time allocation sheets are directly relevant to the issue of agency. Murphy, for example, included the following unqualified statement in his sworn declaration:

I am not, and was not, involved in Belmac's operations.  A60 ¶ 12.

Yet the internal Bentley documents produced *after* Mr. Murphy's deposition, and *after* the close of discovery shows that Bentley allocated 50% of Murphy's time to providing management services relating to Belmac's operations.  A156; *see also* A117-A156.  Again, this evidence demonstrates that Murphy's statements are false and misleading.  Obviously, Ethypharm's inability to have access to this evidence earlier in order to cross-examine Murphy fully (or to depose Bentley's Technical Director who devoted 80% of his time to Belmac matters and Elaine Melia who prepared the time allocation sheets) was prejudicial to Ethypharm.[4]  A133; *see also* A117-A156.

Separate and apart from the time allocation sheets, Bentley also waited until after the close of discovery to produce invoices for millions of dollars from Bentley to Belmac for

---

[3]  This evidence is called for in Interrogatory Requests dated December 9, 2005, as well as a document request dated June 23, 2006, and two letters dated May 31, 2006 and July 27, 2006. A271-A283, A244-A252, A258a-A258b, A262-263.

[4]  In light of the late production of these time allocation sheets resulting in Ethypharm's inability to question Bentley's witnesses on this topic, it would be highly improper for Bentley to introduce declarations, documents or arguments in its reply to the pending summary judgment motion that attempt to explain away this evidence.

management services performed.  A160-A206.  Like the time allocation sheets, these invoices are powerful evidence that these managerial services were performed by Murphy and others. Bentley's failure to produce these documents during discovery obviously affected Ethypharm's decisions regarding which witnesses to depose and what questions to ask.

In addition to the documents produced after the close of discovery, other significant documents were produced in the very last week of discovery, after the depositions of key individuals such as Murphy and Herrera.  For example, on August 2, 2006, in a production of documents combined with thousands of pages of technological material relevant to the next phase of discovery, Bentley produced other phase I documents relating to agency such as a December 26, 2001 fax from Herrera to Murphy at Bentley seeking Murphy's review and authorization of a draft letter to Ethypharm relating to the November 14, 2001 notice of termination letter.  A108-A113, A115.  This document clearly demonstrates Murphy's continuing involvement in directing, controlling and approving Belmac's ongoing actions with respect to the termination of the manufacturing agreement.  Again the timing of the production made it impossible to question Murphy, Herrera and others fully on this subject before the close of discovery.

Nor is Bentley's pattern of hiding extremely important evidence on the issue of agency confined to the production of documents.  Ethypharm was forced to expend significant time and resources hiring an attorney in Spain to search for, locate and obtain material filed with the Spanish Commercial Registry in Madrid to determine the true nature of the legal authority held by Murphy (Bentley's CEO) over Bentley's Spanish subsidiary.  Murphy's sworn declaration refers, for example, to the "significant autonomous authority over the operations of Belmac" held by the General Manager in Spain which is "contained in the delegation of power from the Belmac Board of Directors".  A58-A59 ¶ 9.  Omitted from this sworn statement are a number of material facts that are outlined in the declaration of Ethypharm's Spanish Counsel which highlight the material omissions and misstatements in Murphy's declaration.  A1-A5.  One critical fact omitted from Murphy's sworn statement regarding who holds legal authority over the operations of

Belmac is that Murphy himself held the position of "consejero delegado" from 1995 to the present. A2 ¶ 4, A15, A34-A35, A38-A39, A42; *see corresponding translations at* A54a, A54c-A54d. The position of "consejero delegado" means that Murphy, Bentley's CEO and Chairman of the Board, was the **only** individual with complete and total legal authority to act on behalf of Belmac and all powers that Herrera have are delegated by Murphy and not by the non-functioning Belmac Board. A2 ¶ 4.

### III.    Legal Authority

28 U.S.C. § 1927 and the Court's inherent powers give the Court legal authority to impose sanctions for discovery abuses such as this. *Chambers v. NASCO, Inc*., 501 U.S. 32, 46-47 (1991) (holding that Federal Rules and statutes do not displace the inherent powers of federal courts); *Moscony v. Quaker Farms, LP*, No. 00-2285, 2002 U.S. Dist. LEXIS 1829, *4-*6 (E.D. Pa. Jan. 25, 2002); *Nazareth Nat'l Bank & Trust Co. v. E.A. Int'l Trust*, No. 98-6163, 2000 U.S. Dist. LEXIS 285, *4-*6 (E.D. Pa. Jan. 14, 2000). Courts have not hesitated to impose sanctions on a party who withholds documents or discoverable materials from an adversary, *see*, *e.g*., *Moscony*, 2002 U.S. Dist. LEXIS 1829 at *7; *Shammouh v. Karp*, No. 96-4706, 1997 U.S. Dist. LEXIS 18219, *5-*8 (E.D. Pa. Nov. 17, 1997).

Courts have consistently held that the fact that discovery material is ultimately produced does not cure the fact that production was untimely. *E.g*., *Moscony*, 2002 U.S. Dist. LEXIS 1829 at *4 ("The inability during the allotted discovery period to obtain information from a defendant regarding pertinent issues is obviously prejudicial to a plaintiff"); *Gallant v. Telebrands Corp*., 35 F. Supp. 2d 378, 404 (D.N.J. 1998), (applying Rule 37 and holding that the "ultimate, untimely production of the requested material does not excuse dilatory behavior.").

Here, Bentley's conduct is plainly sanctionable. The pattern of late production of documents highly relevant to the issue of agency before this most recent conduct, the timing of the recent production, and the failure to offer any notice of the existence of the documents at issue is plainly improper.

## CONCLUSION AND RELIEF REQUESTED

Cases are supposed to be tried on their merits, not by hiding, misrepresenting or withholding the facts. Bentley should not be permitted to gain tactical advantage as a result of its improper conduct. In light of the above, Ethypharm requests relief as the Court deems appropriate including, but not limited to, the following alternative bases for relief (neither of which should impact the trial date in this case):

**Alternative 1**

As described in Ethypharm's recently filed Opposition to Bentley's Motion for Summary Judgment, there is overwhelming evidence upon which to base an immediate denial of Bentley's Motion with respect to the issue of agency. This Court can (and, we respectfully submit, should) immediately deny Bentley's motion on the existing record. In the event Bentley's Motion for Summary Judgment is denied on the existing record, Ethypharm respectfully requests that the following sanctions be imposed upon Bentley:

(a)    Payment of all costs incurred by Ethypharm in responding to the issues presented in this motion including, but not limited to, costs of filing this motion and costs spent on local counsel in Spain independently investigating and analyzing the truth of Mr. Murphy's statements;

(b)    Bentley shall make Mr. Murphy, Mr. Herrera, Ms. Melia and Mr. Stote available for deposition on phase I topics (to adequately prepare for trial) in the context of phase II discovery with all costs associated with the phase I portion of these depositions, including transcripts, travel and attorney preparation and attendance time to be paid by Bentley.

**Alternative 2**

While the Court has the legal authority immediately to deny Bentley's Motion for Summary Judgment based on the issue of agency on the existing record, it would be improper to grant summary judgment where Ethypharm has not had an opportunity fully to explore and brief the issues relating to evidence produced after discovery. Therefore, in the event that Bentley's Motion for Summary Judgment is not denied at this stage, Ethypharm respectfully requests that the following sanctions be imposed upon Bentley:

(a)    Payment of all costs incurred by Ethypharm in responding to the issues presented in this motion including, but not limited to, costs of filing this motion and costs spent on local counsel in Spain independently investigating and analyzing the truth of Mr. Murphy's statements;

(b)    Bentley shall make Mr. Murphy, Mr. Herrera, Ms. Melia and Mr. Stote available for deposition on phase I topics immediately with all costs associated with the phase I portion of these depositions, including transcripts, travel and attorney preparation and attendance time to be paid by Bentley.

(c)    Ethypharm shall be permitted to supplement its Opposition to Summary Judgment Motion based upon the significance of the late produced evidence and these additional depositions.

For the foregoing reasons, plaintiffs respectfully request that their motion for sanctions and other appropriate relief be granted.

Dated:  September 21, 2006                    Respectfully submitted,


                                               /s/ Francis J. Murphy
                                              Francis J. Murphy, Esquire (No. 223)
                                              MURPHY SPADARO & LANDON
                                              1011 Centre Road, Suite 210
                                              Wilmington, DE 19805
                                              Tel: (302) 472-8100
                                              Fax: (302) 472-8135
                                              Email:  Fmurphy@msllaw.com

                                              *Attorneys for Plaintiffs*

*Of Counsel:*

Dwight P. Bostwick, Esquire
Bruce R. Grace, Esquire
Jonathan D. Fine, Esquire
Baach Robinson & Lewis PLLC
1201 F Street, NW, Suite 500
Washington, DC 20004
Tel: (202) 833-8900
Fax: (202) 466-5738

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **ETHYPHARM S.A. FRANCE and** ) | |
| **ETHYPHARM S.A. SPAIN,** ) | |
| ) | **C.A. No.:  04-1300 (SLR)** |
| **Plaintiffs,** ) | |
| ) | **ORAL ARGUMENT REQUESTED** |
| **v.** ) | |
| ) | |
| **BENTLEY PHARMACEUTICALS, INC.** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## <u>ORDER</u>

Upon consideration of Plaintiffs' Motion for Sanctions and Other Appropriate Relief as well as the accompanying memorandum, declarations, and exhibits,

Plaintiffs' Motion is hereby GRANTED.


So ordered this ___ day of _____, 2006


_____
The Honorable Sue L. Robinson
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ETHYPHARM S.A. FRANCE and ETHYPHARM S.A. SPAIN,<br><br>Plaintiffs,<br><br>v.<br><br>BENTLEY PHARMACEUTICALS, INC.<br><br>Defendant. | )<br>)<br>)<br>)  C.A. No.:  04-1300 (SLR)<br>)<br>)  ORAL ARGUMENT REQUESTED<br>)<br>)<br>)<br>)<br>)<br>) |

## LOCAL RULE 7.1.1 CERTIFICATION

In accordance with D. Del LR 7.1.1, I hereby certify as follows:  I have contacted opposing counsel about the basis for the accompanying Motion for Sanctions and Other Appropriate Relief.  Specifically, upon receiving notice of Bentley's supplemental production of documents on Monday, September 18, 2006, I sent a letter to opposing counsel expressing the view that Ethypharm was prejudiced by the production of relevant documents after the close of discovery and after the due date for Ethypharm's opposition for summary judgment.  I also raised issues relating to other untimely productions, seeking an explanation, and informing Bentley of our intention to alert the Court to Bentley's misconduct.  Opposing counsel responded in an email on September 19, 2006, indicating that it was a "mistake" and that he did not believe the documents were material to the issues of agency or joint tortfeasor status. Based on these

communications, I certify to my understanding that there is no way for the parties to resolve this issue short of filing the instant motion for sanctions with the Court.

Dated:  September 21, 2006                          Respectfully submitted,

Dwight P. Bostwick, Esquire
Baach Robinson & Lewis PLLC
1201 F Street, NW, Suite 500
Washington, DC 20004
Tel: (202) 833-8900
Fax: (202) 466-5738

*Attorney for Plaintiffs*

- 2 -

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ETHYPHARM S.A. FRANCE & | ) | |
| ETHYPHARM S.A. SPAIN, | ) | |
| | ) | |
| Plaintiffs | ) | C.A. No. 04-1300 (SLR) |
| | ) | |
| v. | ) | ORAL ARGUMENT REQUESTED |
| | ) | |
| BENTLEY PHARMACEUTICALS, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I, Francis J. Murphy, Esq., do hereby certify that on this 21st day of September, 2006, I have caused the following documents to be served in the manner indicated on the parties listed below:  **Plaintiff's Motion for Sanctions and Other Appropriate Relief, Opening Brief, supporting Declarations, Exhibits and Local Rule 7.1.1 Certification.**

**By E-File and Email**
John L. Reed, I.D. No. 3023
Denise Seastone Kraft, I.D. No. 2778
Edwards Angell Palmer & Dodge LLP
919 N. Market Street, 15th Floor
Wilmington, DE  19801

**By Email**
Craig E. Stewart, Esq.
Veronica C. Abreu, Esq.
Joseph P. Mingolla, Esq.
Edwards Angell Palmer & Dodge LLP
111 Huntington Avenue
Boston, MA  02199

MURPHY SPADARO & LANDON

/s/ Francis J. Murphy
Francis J. Murphy, I.D. #223
1011 Centre Road, Suite 210
Wilmington, DE  19805
Tel:  (302) 472-8100
Fax:  (302) 472-8135
E-Mail: Fmurphy@msllaw.com
Attorney for Plaintiffs