# EXHIBIT B

En Madrid a, 13 de Julio de 1995

### REUNIDOS

DE UNA PARTE, LABORATORIOS BELMAC, S.A., domiciliada en Madrid, Calle Montearagón, 9, con C.I.F. número A-78940138, representada por James R. Murphy mayor de edad, casado, de nacionalidad Estadounidense, con Pasaporte No. 100791160, con domicilio en Calle Montearagón, 9 MADRID, en calidad de Presidente de la misma, (en adelante, " la sociedad").

Y DE OTRA PARTE, D. Clemente Gonzalez Azpeitia, mayor de edad, casado, con DNI No. 2.009837, con domicilio en Avda de la Loma PD. 160293 TORRELODONES, (en adelante, "el Alto Directivo").

### MANIFIESTAN

Que las partes reconociéndose mutuamente la capacidad suficiente para obligarse y contratar, tiene interés en formalizar un contrato de relación laboral especial de alta dirección sometido al Real Decreto 1382/1985 de 1 de Agosto, basado en la recíproca confianza existente entre ambas partes y de acuerdo con las siguientes.

1. **NOMBRAMIENTO Y DURACION DEL CONTRATO**

1.1. La Sociedad contrata los servicios del Alto Directivo por un período indefinido y que puede finalizar de cualquiera de las maneras previstas en la Cláusula 8 de este contrato.

BEL119685
CONFIDENTIAL

2. FUNCIONES Y RESPONSABILIDADES

2.1 Puesto y funciones - El Alto Directivo asumirá todas las responsabilidades inherentes a su cargo de Director General de la Sociedad, siendo sus funciones las propias de dicho cargo. En calidad de tal, el Alto Directivo será responsable de la gestión de las opraciones de la Sociedad y del desarrollo de su estrategia y sus negocios en general. En el desarrollo de su trabajo y actividad en la Sociedad, el Alto Directivo seguirá los criterios e instrucciones directas emanadas del Presidente y/o Consejo de Administración, y se atendrá a las normas que en cada momento resulten aplicables a los empleados de la Sociedad. El Alto Directivo cumplirá con sus obligaciones invirtiendo todo el tiempo, atención y habilidad que sea necesario. Cuando la Sociedad lo considere oportuno, hará que se le otorguen al Alto Directivo los poderes necesarios para que pueda cumplir con las funciones que por el presente contrato se le encomiendan como Director General de la Sociedad.

2.2 Centro de Trabajo - El centro de trabajo de Alto Directivo, excepto durante la primera fase del período de formación antes mencionado, serán las Oficinas Centrales de la Sociedad en Madrid, pero la Sociedad podrá pedir al Alto Directivo que efectúe desplazamientos dentro o fuera de dicho centro y si es necesario, fuera de España, lo cual es aceptado por el Alto Directivo como parte integrante de sus funciones.

2.3 Dedicación exclusiva - El Alto Directivo se compromete a prestar sus servicios de manera exclusiva a la Sociedad y a ninguna otra persona o entidad durante el transcurso de este contrato, aún cuando la actividad de estas últimas no represente competencia alguna para la Sociedad. Asimismo, pondrá todos sus conocimientos profesionales, al servicio de la Sociedad y dedicará todos sus esfuerzos a la defensa y desarrollo de los intereses de la Sociedad y de otras Sociedades del Grupo. Como parte integrante de sus funciones, el Alto Directivo podrá ser requerido para que preste servicios y/o asuma cargos en cualquiera de las Sociedades del Grupo. El Alto Directivo reconoce que su paquete salarial, según este contrato, incluye una compensación suficiente por las obligaciones que asume en esta cláusula.

2.4 Salvo autorización por escrito de la Sociedad y durante la vigencia de este contrato, el Alto Directivo no podrá aceptar cargos directivos como Consejero ni Administrador en entidad de ningún tipo, y el Alto Directivo declara por la presente que en el día de la fecha no ostenta ningún cargo de esta naturaleza.

BEL119686
CONFIDENTIAL

2.5 No competencia - Durante la vigencia de este contrato y por un período de dos años desde que éste finalice por cualquier causa, el Alto Directivo no podrá, sin autorización de la Sociedad, celebrar otros contratos de trabajo, prestar servicios o participar, o inducir a otros trabajadores a prestar servicios o participar de forma alguna (excepto como accionista de sociedades, ya coticen o no, siempre que dicha participación no exceda del 1% del capital de cada sociedad) en entidad alguna que desarrolle actividades que puedan constituir competencia directa o indirecta de la sociedad o cualquier sociedad del grupo. De la misma manera, el Alto Directivo declara que en el día de la firma de este contrato, no es accionista ni participa en el capital de ninguna empresa de este tipo. El Alto Directivo reconoce que su paquete salarial, según este contrato, incluye una compensación suficiente por las obligaciones que asume bajo esta cláusula durante la relación laboral.

2.6 El Alto Directivo mantendrá en todo momento debido y puntualmente informado (por escrito si así se le requiere) del cumplimiento de sus obligaciones al Presidente o a cualquier otra persona que la Sociedad designe.

2.7 En cualquier momento en que se le sea solicitado por el Consejo de Administración, el Alto Directivo se someterá a un examen médico realizado por un profesional designado por la Sociedad y a cargo de ésta. El Alto Ejecutivo autoriza por la presente a dicho profesional a comunicar los resultados de dicho examen (sea a través de un informe médico o de otra forma) a la Sociedad.

3. PAQUETE DE REMUNERACION

Como contrapartida por la prestación de sus servicios, el Alto Directivo recibirá:.

3.1 Salario - Una remuneración total de once millones novecientas mil Pesetas ( 11.900.000 Ptas.) bruta anuales (es decir, antes de deducciones fiscales y de cotizaciones a la Seguridad Social) pagadera en 12 mensualidades, todas por igual importe, y que será revisada según los procedimientos internos de la Sociedad.

3.2 Prima de productividad - Una prima que será fijada al comienzo de cada ejercicio social por el Consejo de Administración de acuerdo con el Plan de Gestión de Incentivos de la Sociedad o del Grupo según corresponde.

BEL119687
CONFIDENTIAL

4. PENSIONES, SEGURO DE VIDA Y ACCIDENTES, SEGUROS SANITARIOS

El Alto Directivo tendrá derecho a la cobertura prevista en los correspondientes planes.

5. GASTOS

El Alto Directivo tendrá derecho contra presentación de los recibos correspondientes al reembolso de los gastos en que razonablemente haya incurrido en el cumplimiento de sus funciones de acuerdo con este contrato.

6. VEHÍCULO Y TELÉFONO PORTATIL

6.1 El Alto Directivo tendrá derecho a utilizar un coche de la Sociedad así como un teléfono portátil según la política de vehículos de la Sociedad. La Sociedad se hará cargo de los gastos corrientes del vehículo y de las facturas de teléfono según las normas establecidas por la propia Sociedad. El Alto Directivo tendrá derecho a utilizar el vehículo y el teléfono portátil a cargo de la Sociedad para fines privados, siempre que dicho uso se considere razonable.

6.2 El Alto Directivo se compromete a pagar todas las multas que se deriven de o se relacionen con el uso del vehículo.

6.3 El Alto directivo se compromete a devolver el vehículo a la Sociedad a la extinción de este contrato.

7. JORNADA

7.1 El Alto Directivo dedicará toda su jornada laboral a la Sociedad según se indica en la Cláusula 3.3, y no recibirá remuneración adicional alguna por horas extraordinarias. El Alto Directivo tendrá derecho a unas vacaciones anuales sin pérdidas de remuneración de 22 días laborables por cada período de 12 meses que podrá disfrutar en varios períodos según las necesidades de y de acuerdo con la Sociedad. El derecho a vacaciones se acumulará por días, pero las vacaciones no disfrutadas en un período de 12 meses no podrán acumularse al siguiente sin la autorización de la Sociedad. No se recibirá compensación alguna por las vacaciones no disfrutadas.

BEL119688
CONFIDENTIAL

7.2  Durante el período de no asistencia al trabajo debido a enfermedad o accidente (salvo que concurra culpa del Alto Directivo) y siempre que el Alto Directivo cumpla las normas establecidas por la Sociedad sobre notificación y prueba de la enfermedad o accidente, la sociedad completará la cantidad a la que el Alto Directivo tenga derecho en aplicación de las leyes y reglamentos de la Seguridad Social de manera tal que, durante el periodo legal de cobertura, el Alto Directivo perciba el 100% de su salario base, excluidos primas e incentivos.

8.  RESOLUCION

8.1  Este contrato podrá resolverse sin causa a instancia del Alto Directivo mediante comunicación escrita a la Sociedad con un preaviso mínimo de tres meses. si el Alto Directivo incumple total o parcialmente este preaviso, deberá indemnizar a la Sociedad la cantidad equivalente al salario y primas correspondientes al período de preaviso incumplido.

8.2  De la misma forma, este contrato podrá resolverse sin causa justificada a instancia de la Sociedad mediante comunicación por escrito al Alto Directivo con un preaviso de tres meses.

En el momento de abandonar la Sociedad, el Alto Directivo tendrá derecho a la indemnización que le corresponda según ley, además, recibirá el salario y las primas correspondientes al período de preaviso incumplido por la Sociedad.

Esta cláusula entrará en vigor en la fecha de la firma del contrato.

8.3  La prima mensual aplicable se calculará como la media de las primas recibidas durante los últimos 12 meses.

8.4  Sin perjuicio de otras disposiciones de este contrato, la Sociedad tendrá derecho a rescindir este contrato inmediatamente mediante simple notificación escrita sobre la base de un incumplimiento grave y culpable por parte del Alto Directivo con las formalidades y efectos previstos en el Artículo 55 del Estatuto de los Trabajadores. Ello se entiende sin perjuicio de otros derechos y acciones que asistan a la Sociedad.

A90

BEL119689
CONFIDENTIAL

8.5  Sin perjuicio de lo establecido en la cláusula anterior, el contrato podrá resolverse por las siguientes razones:

(i)  Si el Alto Directivo es condenado por un delito (excluidos los delitos de tráfico rodado que no tengan penas de prisión) en todo caso, esté el hecho relacionado o no con las funciones que desarrolla según el contrato; o

(ii) Si el Alto Directivo ha cometido (o la Sociedad entiende que existen indicios razonables de que ha cometido) una infracción de la legislación aplicable que afecte o se relacione con la actividad o los negocios de cualquier sociedad del grupo; o

(iii) Si el Alto Directivo ve mermadas sus facultades mentales, es declarado en quiebra o en concurso de acreedores o solicita la suspensión de pagos; o

(iv) Si se le prohíbe por ley o por decisión judicial el desempeño de cargos directivos en sociedades mercantiles; o

(v) Si renuncia a su cargo de Consejero o Administrador en una sociedad del Grupo sin la autorización de la Sociedad.

En todos estos casos el Alto Directivo no tendrá derecho a compensación alguna por daños o de otro tipo por razón de la rescisión de su contrato, sin que se le deba indemnización alguna ni haya de respetarse período de preaviso.

8.6  Si en los casos previstos en la Cláusulas 8.4 y 8.5 el Alto Directivo se opusiera al despido y éste fuera declarado improcedente por sentencia judicial y salvo que la Sociedad y el Alto Directivo acordaran la readmisión, las partes acuerdan expresamente que el Alto Directivo percibirá la indemnización impuesta en la sentencia, sin perjuicio del abono de los salarios de tramitación.

8.7  La extinción de este contrato por cualquier causa no afectará a la continuación de las obligaciones del Alto Directivo que correspondan según el mismo, especialmente las obligaciones contenidas en las cláusulas 2.5, 9 y 10 del mismo.

BEL119690
CONFIDENTIAL

9    INVENCIONES, PATENTES Y MÉTODOS

Cualquier invención, método o patente inventada, creado o desarrollado por el Alto Directivo durante la prestación de sus servicios a la Sociedad en temas relacionados con la actividad de la Sociedad pertenecerá a la Sociedad en la medida permitida por las disposiciones contenidas en los Artículos 15 a 20 de la Ley 11/1986 de 20 de Marzo sobre patentes, y la Sociedad podrá utilizar libremente dichas invenciones, métodos y patentes sin que haya de pagar al Alto Directivo cantidad alguna en concepto de compensación, canon o derecho. Si es necesario para perfeccionar el título de la Sociedad a dichas invenciones, métodos y patentes, el Alto Directivo se compromete a ceder cualquier derecho de este tipo que exista a favor de la Sociedad para que está última pueda registrarse como titular del mismo en el Registro público correspondiente. A los efectos de esta cláusula, se entenderá que cualquier solicitud que presente el Alto Directivo durante los dos años siguientes a la terminación del contrato de una patente en relación con una invención, método y mejora desarrollado por el Alto Directivo en la esfera de la actividad de la Sociedad habrá sido hecha en nombre y por cuenta de la Sociedad, y el Alto Directivo se compromete a llevar a cabo cuantos actos sean necesarios para investir a la Sociedad de los correspondientes derechos de propiedad industrial o intelectual.

10    CONFIDENCIALIDAD

10.1    El Alto Directivo se compromete a no revelar a ninguna persona o entidad durante la vigencia de este contrato y tras la terminación del mismo, información alguna relativa al negocio, clientes, operaciones e instalaciones, cuentas o finanzas de la Sociedad ni de ninguna Sociedad del Grupo, o sobre sus procedimientos, métodos, transacciones, "know-how" o cualquier otro aspecto relacionado con la actividad de las mismas que hubiera llegado a conocimiento del Alto Directivo como resultado de la prestación de sus servicios a la Sociedad; asimismo, el Alto Directivo pondrá la máxima diligencia para evitar que se haga pública o se divulgue cualquier información confidencial relativa a este material.

10.2    Todos los documentos, materiales, archivos o cualquier otro artículo u objeto de cualquier tipo relacionado con la Sociedad o una Sociedad del Grupo se considerará confidencial. Al término del contrato por cualquier motivo, el Alto Directivo se compromete a devolver a la Sociedad o en su caso a cualquier Sociedad del Grupo, cualquier material de este tipo que se encuentre todavía en poder del Alto Directivo, renunciando expresamente a cualquier derecho que le corresponda a retenerlo.

BEL119691
CONFIDENTIAL

11. LEY APLICABLE Y JURISDICCIÓN COMPETENTE

Este contrato laboral de relación especial de Alta Dirección será regido por la ley española y cualquier conflicto sobre la interpretación del mismo será competencia de los Tribunales Laborales de Madrid, renunciando las partes expresamente a cualquier otro fuero que pudiera corresponderles.

12. MODIFICACIONES

Este contrato sólo podrá ser modificado mediante un documento firmado por o en nombre de las partes del mismo.

13. ACUERDO ÚNICO

Este contrato constituye un acuerdo único entre las partes en relación con su contenido y revoca y sustituye cualesquiera otros contratos o acuerdos en relación con su contenido entre las partes.

14. NOTIFICACIONES

Cualquier notificación que hayan de hacerse las partes en relación con este contrato deberá ser realizada a las direcciones siguientes:

14.1 La Sociedad

LABORATORIOS BELMAC, S.A.
c/ Montearagón, 9 38033 MADRID

A la atención de:

Sr. James R. Murphy

14.2 El Alto Directivo

D. Clemente González Azpeitia
Avda. de la Loma P.D. 160293 TORRELODONES (MADRID)

15 y 16 - CLAUSULAS NO EXISTENTES

BEL119692
CONFIDENTIAL

## 17. INTERPRETACION

17.1. En este contrato se considerará que una sociedad pertenece al grupo de otra si en un momento dado posee o controla directamente o indirectamente el control del capital social o de los votos de las dos primeras.

17.2 Los encabezamientos tienen una función exclusivamente aclaratoria y deben ser ignorados al interpretar este contrato

Y PARA QUE ASI CONSTE, las partes una vez leído detenidamente este documento lo ratifican y firman por duplicado teniendo cada copia idéntica fuerza legal.

LA SOCIEDAD                                    EL ALTO DIRECTIVO.

James P. Murphy
Chairman
Belnick Corp

BEL119693
CONFIDENTIAL

Madrid, July 13, 1995                    [illegible]

## BY AND BETWEEN

**PARTY OF THE FIRST PART,** LABORATORIOS BELMAC, S.A., domiciled in Madrid, Calle Montearagón, 9, with Corporate Tax Identification number A-7894038, represented by James R. Murphy, married and of legal age, a United States National with Passport No. 100791160, domiciled at Calle Montearagón, 9 MADRID, in his capacity as President of the same, (hereinafter, "the company").

**AND PARTY OF THE SECOND PART,** Mr. Clemente González Azpeitia, married and of legal age with National Identification Document No. 2.009837, domiciled at Avda. de la Loma PD. 160293 TORRELODONES, (hereinafter, "Senior Executive").

## HEREBY DECLARE

That the parties do hereby mutually acknowledge one another's proper legal capacity to enter into and execute this contract, and have an interest in execute a special executive employment contract subject to Royal Decree 1382/1985 of August 1st, based on the reciprocal trust that exists between them and in accordance with the following.

1.  **CONTRACT APPOINTMENT AND DURATION**

    1.1  The Company contracts the services of the Senior Executive for an indefinite term which could be concluded in any manner provided for in Clause 8 of this contract.

BEL119685

A95

CONFIDENTIAL

## 2. DUTIES AND RESPONSIBILITIES

2.1 **Post and Duties** - The Senior Executive shall assume all the responsibilities inherent in the position of General Manager of the Company as well as all the duties associated with said position. In this capacity, the Senior Executive shall be responsible for the management of Company operations and for the development of its strategy and business in general. In the course of his work and activities with the Company, the Senior Executive shall follow the direct criteria and instructions issued by the President and/or the Board of Directors, and shall heed the standards applicable to employees of the Company at all times. The Senior Executive shall comply with his obligations by investing all the necessary time, attention, and expertise. When the Company considers appropriate, it shall see that the Senior Executive is granted the powers necessary so that he may comply with the duties that are entrusted to him in this contract as General Manager of the Company.

2.2 **Workplace** - The workplace of the Senior Executive, except during the first phase of the aforementioned training period, shall be the Company Head Office in Madrid, but the Company may ask the Senior Executive to travel within and outside of said workplace and if necessary, outside of Spain, which is accepted by the Senior Executive as an integral part of his duties.

2.3 **Exclusive commitment** - The Senior Executive commits to provide his services to the Company in an exclusive manner and to no other person or entity during the course of this contract, even when the activity of such entities do not represent competition with the Company. Likewise, he shall apply all of his professional know-how to the service of the Company and shall dedicate his efforts to the defense and development of the interests of the Company and of other Companies of the group. As an integral part of his duties, the Senior Executive may be required to provide service and/or assume responsibilities in any Company of the group. The Senior Executive acknowledges that his salary package, according to this contract, includes sufficient compensation for the obligations that he assumes in this clause.

2.4 Except by written authorization from the Company and during the validity of this contract, the Senior Executive may not accept a direct position as Consultant nor Administrator of any entity of any kind, and the Senior Executive hereby declares that as of today he holds no such position.

BEL119686

A96

**CONFIDENTIAL**

2.5 **No competition.-** During the validity of this contract and for a period of two years after its conclusion for whatever reason, the Senior Executive may not, without the authorization of the Company, officiate other employment contracts, provide services or participate, or persuade other workers to provide services or participate in any manner (except as company shareholder, whether trading or not, provided that said participation does not exceed 1% of the capital of each Company) in any entity that carries out activities that could constitute direct or indirect competition with the company or any company of the group. In the same manner, the Senior Executive declares that as of the day that this contract is signed, he is not a shareholder nor does he participate in the capital of any company of this nature. The Senior Executive acknowledges that his salary package, according to this contract, includes sufficient compensation for the obligations that he assumes under this clause during the employment relationship.

2.6 The Senior Executive shall keep the President or any other person that the Company designates properly informed in a timely manner at all times (in writing, if required) as to the fulfillment of his obligations.

2.7 The Senior Executive shall submit himself to a medical examination whenever requested by the Board of Directors which shall be executed by a professional designated by the Company and at the expense of the Company. The Senior Executive hereby authorizes said professional to communicate the results of said exam (whether through a medical report or other means) to the Company.

3. **COMPENSATION PACKAGE**

as compensation for the provision of his services, the Senior Executive shall receive:

3.1 **Salary -** A total gross annual compensation of eleven million nine hundred thousand Pesetas (11,900,000 Ptas.), (that is, before tax withholdings and Social Security contributions) payable in 12 equal monthly payments which shall be reviewed according to the internal procedures of the Company.

3.2 **Productivity Bonus -** A Bonus which shall be established at the commencement of each fiscal year by the Board of Directors according to the Company or Group Incentive Plan, as appropriate.

**CONFIDENTIAL**

4. **PENSION, LIFE AND ACCIDENT INSURANCE, AND HEALTH INSURANCE**

The Senior Executive shall be entitled to the coverage provided for in the corresponding plans.

5. **EXPENSES**

The Senior Executive shall be entitled to reimbursement of the reasonable expenses that he incurs in the fulfillment of his duties in accordance with this contract upon presentation of the corresponding receipts.

6. **VEHICLE AND MOBILE TELEPHONE**

6.1 The Senior Executive shall be entitled to use a Company car as well as a mobile telephone according to the Company vehicle policy. The Company shall take responsibility for the expenses that arise from the vehicle and for telephone bills according to rules established by the Company. The Senior Executive shall have the right to use the vehicle and the mobile telephone at the expense of the Company for private purposes, provided that such use is considered reasonable.

6.2 The Senior Executive commits to pay any fines arising from or related with the use of the vehicle.

6.3 The Senior Executive commits to return the vehicle to the Company upon the termination of this contract.

7. **WORKDAY**

7.1 The Senior Executive shall dedicate the entirety of his workday to the Company as indicated in clause 3.3, and shall not receive additional compensation of any kind for overtime. The Senior Executive shall be entitled to 22 working days annual vacation for every 12 month period without loss of compensation, which he may enjoy in various periods according to the necessities and in agreement with the Company. The vacation allowance shall accrue by day, but unused vacation in a 12 month period may not be carried over to the following period without the authorization of the Company. He shall not receive compensation of any kind for unused vacation.

BEL119688

**CONFIDENTIAL**

7.2 During absences from work due to illness or accident (except for that which involves fault of the Senior Executive) and provided that the Senior Executive complies with Company rules over notification and evidence of illness or accident, the company shall compliment the amount that the Senior Executive is entitled to according to Social Security laws and regulations in such a way that during the legal period of coverage the Senior Executive receives 100% of his base salary, excluding bonuses and incentives.

8. **TERMINATION**

8.1 This contract may be terminated without cause upon petition of the Senior Executive by making written communication to the Company with at least three months advance notice. If the Senior Executive does not comply with this advance notice either in full or in part, he shall indemnify the Company with the amount equal to the salary and bonuses corresponding to the unfulfilled advance notice.

8.2 In the same manner, this contract may be terminated without just cause upon petition of the Company by making written communication to the Senior Executive with at least three months advance notice.

At the time that he abandons the Company the Senior Executive shall be entitled to the compensation that corresponds to him according to law, and in addition, shall receive the salary and bonuses corresponding to the period of advance notice unfulfilled by the Company.

This clause shall become effective on the date that the contract is signed.

8.3 The applicable monthly bonus shall be calculated as the average of the bonuses received during the last 12 months.

8.4 Without prejudice to the other provisions of this contract, the Company shall have the right to terminate this contract immediately by means of simple written notification on the basis of grave and culpable non-compliance by the Senior Executive with the formalities and purposes provided for in Article 55 of the Workers' Statute. This shall be understood without prejudice to other rights or actions that pertain to the Company.

**A99**

BEL119689
CONFIDENTIAL

8.5 Without prejudice to the provisions of the foregoing clause, the contract may be terminated for the following reasons:

(i) If the Senior Executive is convicted of a crime (excluding traffic offenses that do not carry prison sentences) in any event, whether the act is related or not with the duties that he carries out according to the contract; or

(ii) If the Senior Executive has committed (or the Company considers that there are reasonable indications that he has committed) an infraction of applicable legislation that affects or is related with the activity or business of any company of the group; or

(iii) If the mental faculties of the Senior Executive are diminished, he is declared bankrupt, or has arrangements with creditors or requests the suspension of payments; or

(iv) If he is barred from holding an executive position in commercial companies by law or judicial decision; or

(v) If he resigns his position as Consultant or Administrator of a company of the Group without the authorization of the Company.

In each of these circumstances the Senior Executive shall not be entitled to compensation of any kind for damages due to the rescission of his contract, nor shall he be owed indemnity of any kind, nor shall the period of advance notice be respected.

8.6 If in the cases provided for in Clauses 8.4 and 8.5, the Senior Executive opposes the dismissal and it is declared improper by judicial decision, and unless the Company and the Senior Executive agree on reinstatement, the parties expressly agree that the Senior Executive shall receive the compensation imposed in the decision, without prejudice to compensation for back pay.

8.7 The termination of this contract for any reason shall not affect the continuance of the Senior Executive's obligations according to it, especially the obligations contained in clauses 2.5, 9 and 10 the contract.

BEL119690
CONFIDENTIAL

### 9. INVESTMENTS, PATENTS, AND METHODS

Any invention, method, or patent invented, created, or developed by the Senior Executive during the provision of his services to the Company in areas related with the activity of the Company shall belong to the Company to the extent allowed by the provisions contained in Articles 15 and 20 of Law 11/1986 of March 20th over patents, and the Company may freely use said inventions, methods, and patents without having to pay the Senior Executive any amount as compensation, use fees or rights. If it is necessary to improve the title that the Company holds over said inventions, methods, and patents, the Senior Executive is committed to transfer any existing right of this nature in favor of the Company in order that it may register itself as the title holder of such rights in the corresponding Public Registry. For the purposes of this clause, it shall be understood that any request presented to the Senior Executive during the two years following the termination of the contract regarding a patent in relation to an invention, method, or improvement developed by the Senior Executive in the same field as the activity of the Company has been made in name and on behalf of the Company, and the Senior Executive commits to carry out any acts that are necessary to confer the corresponding intellectual or industrial property rights to the Company.

### 10. CONFIDENTIALITY

10.1  The Senior Executive commits to refrain from revealing information to any individual or entity during the validity of this contract after its termination regarding the business, clients, operations and installations, accounts or finances of the Company nor of any Company of the Group, regarding its procedures, methods, transactions, "know-how", or any other aspect related with their activities that the Senior Executive becomes aware of as a result of the provision of his services to the Company; likewise, the Senior Executive shall use the utmost diligence to avoid any confidential information regarding this material being made public or divulged.

10.2  All documents, materials, records, or any other article or object of any kind related with the Company or a Company of the Group is considered confidential. Upon the termination of this contract for any reason, the Senior Executive commits to return any material of this nature that remains in the power of the Senior Executive to the Company, or as the case may be, to any Company of the Group, expressly waiving any right that it could have to retain it.

A101

BEL119691
CONFIDENTIAL

## 11. APPLICABLE LAW AND COMPETENT JURISDICTION

This special executive employment contract shall be governed by Spanish Law and any conflict over its interpretation shall be submitted to the authority of the Employment Tribunals of Madrid, the parties expressly waiving any other jurisdiction that could correspond to them.

## 12. AMENDMENT

This contract may only be amended by means of a document signed by or on behalf of the parties to it.

## 13. SOLE AGREEMENT

This contract constitutes the sole agreement between the parties regarding its content and revokes and replaces any other contracts or agreements in relation to their content between the parties.

## 14. NOTIFICATIONS

Any notification that the parties must make in regards to this contract must be made to the following addresses:

14.1   The Company

LABORATORIOS BELMAC, S.A.
c/ Montearagón, 9 38033 MADRID

To the attention of:

Mr. James R. Murphy

14.2   The Senior Executive

Mr. Clemente González Azpeitia
Avda. de la Loma P.D. 160293 TORRELODONES (MADRID)

**15 and 16 – NONEXISTENT CLAUSES**

BEL119692
CONFIDENTIAL

17. **INTERPRETATION**

17.1  In this contract it shall be considered that a company pertains to the group of the other if at a given moment it possess or directly or indirectly controls the company capital or the votes of the first two.

17.2  The headings are for the exclusive purpose of clarification and must be ignored upon interpretation of this contract.

IN WITNESS WHEREOF, after having read this document in detail, the parties endorse and sign it in two copies which are legally identical.

**THE COMPANY**                          **THE SENIOR EXECUTIVE**

[handwritten]:
[signature]                              [signature]
Chairman
Belmac Corp.

BEL119693

A103