# EXHIBIT O

WASHINGTON │ NEW YORK │ LONDON

## BAACH ROBINSON &LEWIS
### PLLC

DWIGHT P. BOSTWICK
dwight.bostwick@baachrobinson.com

May 2, 2006

**VIA EMAIL**

Craig E. Stewart, Esq.
EDWARDS ANGELL PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA 02199

Re:     **Ethypharm v. Bentley, No. 04-1300-SLR**
        **Non-Binding List of Potential Deponents**

Dear Craig:

        This letter addresses a number of issues relating to Phase 1 discovery in the above-captioned case. I would like to discuss these issues in our telephone conversation tomorrow along with any of Bentley's concerns.

**Depositions**

        Each of us has agreed to provide the other with an updated, non-binding list of witnesses that we may seek to depose prior to the close of Phase 1 discovery which is currently scheduled for July 14, 2006. The purpose of providing this list, as I understand it, is to coordinate our planning for these depositions given the challenges we face in scheduling depositions of a number of individuals who reside in Europe. In addition, with regard to former employees, it is imperative that we know as soon as possible whether the former employees on our respective lists will be made available, or whether they will need to be compelled to testify through some other process. If you are not going to provide access to certain former employees and do not represent them, we need to know this quickly so that we can take steps to make appropriate contact with them. Finally, we will need to decide whether the witnesses will be deposed in the U.S., in Europe or elsewhere.

        With this in mind, we provide the following non-binding list of potential deponents which is subject to change:

        Ignacio Alvarez
        Angel Perez de Ayala
        Clemente Gonzalez Azpeitia
        Adolpho Herrera
        Jose Luis Monterde
        James R. Murphy
        Rafael Garcia Palencia

**A255**

WASHINGTON | NEW YORK | LONDON

Craig E. Stewart, Esq.
May 2, 2006
Page 2

**BAACH
ROBINSON
&LEWIS**
PLLC

Laura Peterson
Michael D. Price

**Translations**

As you know, many of the documents in this case are written in Spanish or French. I propose that each side provide the other with either a certified English translation or a reasonable English translation of any foreign language documents (or all relevant portions thereof) that are to be used to question a witness at a deposition. I further propose that each party provide a certified English translation of any foreign language documents (or all relevant portions thereof) for Court filings. We should discuss costs and logistics associated with this proposal.

**Interrogatories and Document Production**

We have reviewed "Defendant's [Bentley's] Responses to Plaintiffs' First Set of Interrogatories Limited to the Issues of Agency and Joint Tortfeasor Status" and find a number of the answers incomplete and unsatisfactory. We have also had time to review a majority of the documents Bentley has produced pursuant to Ethypharm's document requests and notice what appears to be a similar shortcoming. I would like to address Ethypharm's concerns in tomorrow's telephone conference in an effort to come to a resolution in advance of our scheduled Court hearing next Tuesday.

Simply stated, Bentley's responses to certain of Ethypharm's interrogatories provide no meaningful information regarding the timing, quantity and substance of discussions between Bentley and its subsidiaries relating to the issues in this lawsuit. These discussions are critical to the legal issue of agency which is the only subject under review during Phase 1 discovery.

Specifically, we take issue with Bentley's responses to interrogatories 3, 5 and 8 and require a further response.

Bentley has responded to interrogatories 1 and 2 by acknowledging that there were numerous discussions between at least three representatives of Bentley and four representatives of Belmac over a number of years on one or more of the following subjects: (a) the arrangement with Ethypharm to manufacture, produce and/or sell omeprazole; (b) the decision in or around 2000 or 2001 to discontinue this arrangement; (c) Bentley/Belmac's use of Ethypharm's trade secrets and know-how; and (d) Bentley/Belmac's supply

**A256**

WASHINGTON | NEW YORK | LONDON

**BAACH ROBINSON &LEWIS**
PLLC

Craig E. Stewart, Esq.
May 2, 2006
Page 3

of omeprazole to Ethypharm's customers. Yet, when asked in Interrogatory 3 to describe the timing, circumstances and substance of these discussions (critical to the agency allegations in this case) Bentley has responded by stating that "the answer may be derived or ascertained from the business records to be made available" and that "the burden of deriving or ascertaining the answer is substantially the same for Ethypharm as for Bentley." Clearly, this is not the case.

Unless Bentley can represent that the substance of all communications between Bentley and its subsidiaries was reduced to writings that have been produced, it is not possible for Ethypharm to identify the relevant communications between Bentley and its subsidiaries so that we can focus the upcoming depositions. The purpose of these interrogatories is to streamline the process by requesting that Bentley direct our attention to the important internal discussions relating to the business relationship with Ethypharm. Otherwise, for instance, it would take days, if not weeks, to depose Mr. Murphy and others based upon the cryptic notes in his diary.[1]

Likewise, Interrogatory 5 seeks the identity of officers of Bentley's Spanish Subsidiaries who traveled to the United States or elsewhere for meetings that related in whole or in part to Belmac's dealings with Ethypharm. Bentley acknowledges that "Mr. Herrera traveled to the United States to meet with Mr. Murphy and to inform him of developments at Belmac." Yet, Bentley has refused to provide any details regarding the timing of these visits, the number of these visits or the substance of the discussions relating to Ethypharm. We require a more complete response to this interrogatory.

Bentley's response to Interrogatory 8 is also unacceptable. Mr. Murphy submitted an affidavit to the Court relating to the issue of agency in which he specifically noted that certain powers were delegated to the first two General Managers of Laboratorios Belmac and that these delegated powers were in place throughout the time that Belmac interacted with Ethypharm. When asked in Interrogatory 8 to identify the delegation of powers referred to in Mr. Murphy's affidavit, Bentley has responded that "The terms of the specific delegation of powers may be derived or ascertained from the business records, including proxies ("Escritura de Poder") to be made available... since the burden of deriving or ascertaining

---

[1] For purposes of ascertaining relevant communications between Ethypharm on the one hand and Bentley or Belmac on the other, we are content to receive a less complete answer as Ethypharm can ask its own witnesses and review its own files as well as Bentley's production to determine what happened at these meetings. Obviously, we cannot do the same for meetings and communications that took place between Bentley and its subsidiaries.



BAACH
ROBINSON
&LEWIS
PLLC

Craig E. Stewart, Esq.
May 2, 2006
Page 4

the answer is substantially the same for Ethypharm as for Bentley." It is
clearly not as easy for Ethypharm to sift through Belmac's corporate records
in Spanish to try to ascertain the meaning of Mr. Murphy's affidavit as it is to
refer us to the documents upon which Bentley relies. We require a more
complete response to this interrogatory.

As for Bentley's production of documents, we have not completed our
review but we would expect to receive more communications between
Bentley (including Jim Murphy) and others at Belmac (including its General
Managers) on the subject of the Ethypharm relationship given the documents
in our possession to date and Bentley's response to interrogatory 9 that "Mr.
Herrera conferred with Mr. Murphy concerning: whether to formalize in
writing the relationship between Belmac and Ethypharm; Mr. Herrera's
decision to enter into a Manufacturing Agreement with Ethypharm in or
about March 2000; Mr. Herrera's subsequent decision not to extend that
Agreement in or around November 2001; and Mr. Herrera's offer, after the
expiration of the Manufacturing Agreement in March 2002, for Belmac to
supply its own omeprazole to Ethypharm. ... Mr. Herrera also informed Mr.
Murphy about litigation between Belmac and Ethypharm in Spain."

I look forward to speaking with you by telephone tomorrow regarding
these Phase 1 discovery issues.

Sincerely,

Dwight P. Bostwick

WASHINGTON | NEW YORK | LONDON



**BAACH ROBINSON &LEWIS**
PLLC

DWIGHT P. BOSTWICK
dwight.bostwick@baachrobinson.com

May 31, 2006

**VIA EMAIL**

Craig E. Stewart, Esq.
EDWARDS ANGELL PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA 02199

Re:    **Ethypharm v. Bentley, No. 04-1300 (SLR)**

Dear Craig:

      Ethypharm remains concerned about the completeness of Bentley's responses to Ethypharm's discovery requests. As a partial answer to these concerns, which were formally raised in correspondence dated May 2, 2006, Bentley has agreed, by letter dated May 8, 2006, to provide supplemental responses to Ethypharm's Interrogatories 1 and 3. Please tell us when we can expect these supplemental responses. In addition, and in an effort to provide a helpful level of specificity with respect to Ethypharm's concerns about Bentley's document productions, we ask again that Bentley produce the following before mid-June so that we can prepare adequately for upcoming depositions:

- Internal communications at Bentley, Belmac or communications between the two entities relating to Omeprazole and/or Ethypharm.

- Documents concerning meetings or discussions relating to Ethypharm or Omeprazole, such as documents relating to the December 2001 meeting between Bentley and Belmac personnel in the U.S.

- Bentley's and or Belmac's business plans, projections, financial and/or risk/benefit analyses relating to Omeprazole.

1201 F Street, NW I Suite 500 I Washington, DC 20004 I 202.659.6744 I 202.466.5738 fax

**A258a**

WASHINGTON | NEW YORK | LONDON

**BAACH**
**ROBINSON**
**&LEWIS**
PLLC

Craig E. Stewart, Esq.
May 31, 2006
Page 2

- Documentation concerning any registrations or patents for Omeprazole especially around the time of the termination of the relationship with Ethypharm.

- Documentation relating to whether and how to contact existing Omeprazole customers about any changes in the relationship with Ethypharm and/or changes in the Omeprazole product.

- Documentation relating to any bank accounts or credit lines Bentley opened for the benefit of its Spanish Subsidiaries, including the account authorized by the Bentley Board of Directors in or around October 2000.

- Documentation relating to the increase in capital around March 2004 that took place in consideration for a loan to or line of credit for Belmac in excess of US $5 or $6 million.

- Documentation relating to any compensation, bonuses, stock or other benefits that Bentley authorized or gave to any Belmac employees.

- All draft or final press releases and public statements relating to Omeprazole and/or Ethypharm.

By setting forth in this letter specific examples of relevant documents we need to receive, Ethypharm does not in any way limit the requests it has made in Plaintiffs' Request for Production of Documents Limited to the Issue of Agency that were served in December 2005.

Sincerely,

Dwight P. Bostwick

## Jonathan Fine

| | |
|---|---|
| **From:** | Dwight Bostwick |
| **Sent:** | Saturday, June 24, 2006 12:08 PM |
| **To:** | 'Stewart, Craig' |
| **Cc:** | 'fmurphy@msllaw.com'; Jonathan Fine; 'Abreu, Veronica'; 'jreed@eapdlaw.com'; 'dkraft@eapdlaw.com'; 'jcicero@eapdlaw.com' |
| **Subject:** | RE: Ethypharm v. Bentley |
| **Importance:** | High |

Craig –

I am disappointed with your apparent decision not to produce clearly responsive and highly relevant documents that Ethypharm has previously requested (including our Document request #13 served in December of 2005) . Ethypharm is clearly entitled to documentation relating to intercompany financing during the 1999 – 2004 time period.  I cannot adequately represent my clients' interests by taking the depositions of your clients without having time to receive AND adequately review this material.

In addition, you have repeatedly confirmed that you would provide – "seasonably in advance of the upcoming depositions" - supplemental answers to Bentley's interrogatories relating to meetings between Bentley (Jim Murphy and others) and Belmac where the subject of the relationship with Ethypharm was discussed.  We cannot get access to this information in any other way and it is essential to have this information sufficiently in advance of the depositions so that we have an opportunity to review and analyze it. You have not provided the promised information which is essential for the depositions starting on Tuesday.

It strikes me that we have two choices.  I can go forward with the scheduled depositions in Boston as anticipated and then after we receive the supplemental information, we can make arrangements to ask follow-up questions based upon that information at a later date.  Alternatively, we can postpone the depositions until we receive the information to which we are entitled.

I am disappointed that you have chosen to prejudice my clients' position at this late date given all of the hard work everyone has done to make current and former employees of both companies available to be deposed in the U.S.

Please contact me as soon as possible to discuss how you wish to proceed.

Dwight

---

**From:** Jonathan Fine
**Sent:** Friday, June 23, 2006 8:06 PM
**To:** Stewart, Craig; Abreu, Veronica; jreed@eapdlaw.com; dkraft@eapdlaw.com; jcicero@eapdlaw.com
**Cc:** Dwight Bostwick; fmurphy@msllaw.com
**Subject:** Ethypharm v. Bentley

Please see the attached.

Jonathan Fine, Esq.
Baach Robinson & Lewis PLLC
1201 F Street, NW, Suite 500
Washington. DC 20004
Tel: 202-659-7865
Fax:  202-466-5738
Email: jonathan.fine@baachrobinson.com
www.baachrobinson.com                    **A259**

*This communication is confidential and may contain privileged information.  If you have received this communication in*

*error, please delete it and reply to the sender. Thank you.*

**A260**



WASHINGTON | LONDON

July 17, 2006

**VIA EMAIL**

Craig Stewart, Esq.
Edwards Angell Palmer & Dodge LLP
111 Huntington Avenue
Boston, MA 02199-7613

Re:    **Ethypharm v. Bentley**, No. 04-1300 (SLR)

Dear Craig:

        We write concerning Bentley's failure to produce documents responsive to Ethypharm's requests, *inter alia*, for all documents concerning the bank account authorized by the Bentley Board of Directors in or around October 2000 and concerning the increase in capital in or around March 2004 relating to a loan to or line of credit for Belmac in excess of US $ 5 or 6 million.

        We have reviewed the limited documents that were produced to us in Boston by hand delivery during the week of the depositions of Messrs. Azpetia and Ayala and of Ms. Sanchez, and they are obviously not an adequate or complete response to Ethypharm's document requests.

        As we have clearly indicated, the documents requested are necessary for the depositions of Messrs. Murphy, Herrera and Price, which are scheduled for later this week and next week. Ethypharm reserves all its rights to compel production of the requested documents and not to be prejudiced in the deposition of Bentley's witnesses.

Very truly yours,

Jonathan D. Fine

1201 F Street | Suite 500 | Washington, DC 20004 | 202.833.8900 | 202.466.5738 fax | info@baachrobinson.com

**A261**

# BAACH ROBINSON &LEWIS
PLLC

July 27, 2006

**VIA E-MAIL**

Craig E. Stewart, Esq.
Edwards Angell Palmer & Dodge LLP
111 Huntington Avenue
Prudential Center
Boston, Massachusetts 02199-7613

**Re:    Ethypharm v. Bentley, 04-1300 (SLR)**

Dear Craig:

I am writing to follow up on my conversations with you and with Joseph Mingolla yesterday concerning documents requested by Ethypharm about credits or loans extended by Bentley Pharmaceuticals, Inc. ("Bentley") to its subsidiary, Laborotorios Belmac S.A ("Belmac") and the forgiveness of these loans in or around the end of 2003. This week in his deposition Bentley's CFO Mike Price characterized these arrangements as part of a tax planning effort based on a management fee agreement requiring documentation of time allocation by Bentley employees and representations to Spanish tax authorities. In light of this recent testimony we have discussed the need for Bentley to produce the following documents during Phase I discovery:

1. Documents (including spreadsheets, workbooks, memoranda and notes, or interview notes) relating to the allocation of the time of employees of Bentley relating to management fees charged by Bentley to its subsidiaries in Spain, including Laborotorios Belmac S.A.

2. Correspondence, representations to, or communications with or about Spanish tax authorities that refer, relate or reflect management fees charged by Bentley to Belmac.

3. All management fee agreements or other agreements that concern these management fees.

These documents clearly are encompassed by Ethypharm's previous document requests. I understand from our conversations that Bentley has agreed to produce these documents before the close of Phase I discovery (and to identify the relevant Bates numbers in the event that some of these documents already

1201 F Street | Suite 500 | Washington, DC 20004 | 202.833.8900 | 202.466.5738 fax | info@baachrobinson.com



BAACH
ROBINSON
&LEWIS
PLLC

Craig E. Stewart, Esq.
July 17, 2006
Page 2

have been produced) in order to avoid further prejudice to Ethypharm. If you are not in agreement, please let me know immediately so that we can resolve this matter.

Best regards,

Dwight P. Bostwick

**A263**